UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | CASE NO. _____ |
| Plaintiff, | |
| v. | |
| RICHARD F. MOSELEY, SR.; RICHARD F. MOSELEY, JR.; CHRISTOPHER J. RANDAZZO; SSM GROUP, LLC; CMG GROUP, LLC; DJR GROUP, LLC; BCD GROUP, LLC; HYDRA FINANCIAL LIMITED FUND I; HYDRA FINANCIAL LIMITED FUND II; HYDRA FINANCIAL LIMITED FUND III; HYDRA FINANCIAL LIMITED FUND IV; PCMO SERVICES, LLC; PCKS SERVICES, LLC; PIGGYCASH ONLINE HOLDINGS, LLC; CLS SERVICES, INC.; FSR SERVICES, INC.; SJ PARTNERS, LLC; RIVER ELK SERVICES, LLC; OSL MARKETING, INC., a/k/a OSL GROUP, INC.; ROCKY OAK SERVICES, LLC; RM PARTNERS, LLC; PDC VENTURES, LLC; and CORVUS COMPANY, LLC, | |
| Defendants. | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff, the Consumer Financial Protection Bureau (Bureau) alleges the following

against Richard F. Moseley, Sr.; Richard F. Moseley, Jr.; Christopher J. Randazzo; SSM Group,

LLC; CMG Group, LLC; DJR Group, LLC; BCD Group, LLC; Hydra Financial Limited Fund I;

Hydra Financial Limited Fund II; Hydra Financial Limited Fund III; Hydra Financial Limited

Fund IV; PCMO Services, LLC; PCKS Services, LLC; Piggycash Online Holdings, LLC; CLS

Services, Inc.; FSR Services, Inc.; SJ Partners, LLC; River Elk Services, LLC; OSL Marketing,

Inc., a/k/a OSL Group, Inc.; Rocky Oak Services, LLC; RM Partners, LLC; PDC Ventures, LLC; and Corvus Company, LLC (Defendants):

## INTRODUCTION

1.     Defendants, operating through a maze of interrelated companies, use consumer financial information they purchase from third parties to originate online payday loans without consumers' consent.  Defendants deposit the payday loans into consumers' bank accounts without their authorization, and then use misrepresentations and false documents to further convince these consumers that they agreed to these phony online payday loans. Defendants then use these purported loans as a basis to make repeated, unauthorized withdrawals from consumers' bank accounts. In some cases, Defendants have bilked consumers out of thousands of dollars in "finance charges" for a $200 or $300 loan that the consumer never agreed to.

2.     The Bureau brings this action under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a); the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1666j; and the Electronic Fund Transfer Act (EFTA), 15 U.S.C. §§ 1693-1693r. This action seeks temporary, preliminary, and permanent injunctive relief; rescission or reformation of contracts; restitution, the refund of monies paid, and disgorgement of ill-gotten monies; the appointment of a receiver; other equitable relief; and civil money penalties for Defendants' violations of the CFPA, TILA and its implementing Regulation Z, 12 C.F.R. Part 1026, and EFTA and its implementing Regulation E, 12 C.F.R. Part 1005.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1); presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

4.     This Court has personal jurisdiction over Defendants because the causes of action arise from Defendants' transacting business in this District or have caused injury in this District through acts or omissions occurring outside of this District.

5.     Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred here and Defendants do business here. 28 U.S.C. § 1391(b)(2); 12 U.S.C.  5564(f).

## PLAINTIFF

6.     The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products or services under Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority to enforce the CFPA.  12 U.S.C. §§ 5564(a) and (b). Unfair, deceptive, and abusive acts or practices in violation of the CFPA are prohibited. 12 U.S.C. §§ 5531(a) and 5536(a)(1). The Bureau is authorized to take appropriate enforcement action to address violations of Federal consumer financial law.  *See* 12 U.S.C. §§ 5511(c)(4); 5512(a); 5564(a).

## DEFENDANTS

7.     Defendant **Richard F. Moseley, Sr.** is an individual who, acting alone or in concert with others, and through his interrelated companies described below, has engaged in an unlawful payday lending scheme designed to obtain unauthorized access to consumers' bank accounts and deceive consumers concerning the true terms  of their payday loans. Defendant Moseley, Sr.'s businesses include all of the corporate defendants listed below. At all times material to this complaint, acting alone or in concert with others, Defendant Moseley, Sr. has directly participated in the acts and practices set forth in this complaint. At all times material to this complaint, Moseley, Sr. transacts or has transacted business in the Western District of Missouri.

3

8.      Defendant **Richard F. Moseley, Jr.** is an individual who, acting alone or in concert with others, and through his interrelated companies described below, has engaged in an unlawful payday lending scheme designed to obtain unauthorized access to consumers' bank accounts and deceive consumers concerning the true terms of their payday loans. Defendant Moseley, Jr.'s businesses include Defendants SSM Group, CMG Group, DJR Group, BCD Group, PiggyCash Online Holdings, PCMO Services, PCKS Services, PDC Ventures, SJ Partners, River Elk Services, Rocky Oak Services, and RM Partners. At all times material to this complaint, acting alone or in concert with others, Defendant Moseley, Jr. has directly participated in the acts and practices set forth in this complaint. At all times material to this complaint, Moseley, Jr. transacts or has transacted business in the Western District of Missouri.

9.      Defendant **Christopher J. Randazzo** an individual who, acting alone or in concert with others, and through his interrelated companies described below, has engaged in an unlawful payday lending scheme designed to obtain unauthorized access to consumers' bank accounts and deceive consumers concerning the true terms of their payday loans. Defendant Randazzo's businesses include Defendants Hydra Financial Limited Fund I, Hydra Financial Limited Fund II, Hydra Financial Limited Fund III, Hydra Financial Limited Fund IV, River Elk Services, and Rocky Oak Services. At all times material to this complaint, acting alone or in concert with others, Defendant Randazzo has directly participated in the acts and practices set forth in this complaint. At all times material to this complaint, Randazzo transacts or has transacted business in the Western District of Missouri.

10.     Defendant **SSM Group, LLC** is a limited liability company organized under the laws of the Commonwealth of St. Kitts & Nevis and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by

Defendants Moseley, Sr. and Moseley, Jr. **SSM Group** transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, **SSM Group** has originated and serviced online payday loans throughout the United States.

11.     Defendant **CMG Group, LLC** is a limited liability company organized under the laws of the Commonwealth of St. Kitts & Nevis and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. **CMG Group** transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, **CMG Group** has originated and serviced online payday loans throughout the United States.

12.     Defendant **DJR Group, LLC** is a limited liability company organized under the laws of the Commonwealth of St. Kitts & Nevis and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. **DJR Group** transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, **DJR Group** has originated and serviced online payday loans throughout the United States.

13.     Defendant **BCD Group, LLC** is a limited liability company organized under the laws of the Commonwealth of St. Kitts & Nevis and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. **BCD Group** transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting

alone or in concert with others, **BCD Group** has originated and serviced online payday loans throughout the United States.

14.     Defendant **Hydra Financial Limited Fund I** (Hydra I) is organized as a limited company under the laws of the Commonwealth of New Zealand and has its principal place of business at Level 5, 22 The Terrace, Wellington, 6011, New Zealand. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Randazzo. **Hydra I** transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, **Hydra I** has originated and serviced online payday loans throughout the United States.

15.     Defendant **Hydra Financial Limited Fund II** (Hydra II) is organized as a limited company under the laws of the Commonwealth of New Zealand and has its principal place of business at Level 5, 22 The Terrace, Wellington, 6011, New Zealand. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Randazzo. **Hydra II** transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, **Hydra II** has originated and serviced online payday loans throughout the United States.

16.     Defendant **Hydra Financial Limited Fund III** (Hydra III) is organized as a limited company under the laws of the Commonwealth of New Zealand and has its principal place of business at Level 5, 22 The Terrace, Wellington, 6011, New Zealand. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Randazzo. **Hydra III** transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, **Hydra III** has originated and serviced online payday loans throughout the United States.

17. Defendant **Hydra Financial Limited Fund IV** (Hydra IV) is organized as a limited company under the laws of the Commonwealth of New Zealand and had its principal place of business at Level 5, 22 The Terrace, Wellington, 6011, New Zealand. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Randazzo. **Hydra IV** transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, **Hydra IV** has originated and serviced online payday loans throughout the United States.

18. Defendant **PCMO Services, LLC** is a Missouri limited liability company and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. The company transacts or has transacted business in this district and throughout the United States.

19. Defendant **PCKS Services, LLC** is a Kansas limited liability company and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. The company transacts or has transacted business in this district and throughout the United States.

20. Defendant **Piggycash Online Holdings, LLC** is a Kansas limited liability company and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. The company transacts or has transacted business in this district and throughout the United States.

21. Defendant **CLS Services, Inc.** is a Missouri corporation and has no known physical address. It maintains P.O. Box 7082 in Kansas City, MO 64113. The company is owned, directed, or controlled by Defendant Moseley, Sr. The company transacts or has transacted business in this district and throughout the United States.

22.     Defendant **FSR Services, Inc.** is incorporated in both Kansas and Missouri and has its principal place of business at 3901 W. 56th St., Fairway, KS 66205. The company is owned, directed, or controlled by Defendant Moseley, Sr. The company transacts or has transacted business in this district and throughout the United States.

23.     Defendant **SJ Partners, LLC** is a Missouri limited liability company and has its principal place of business at 438 W. 56th St., Kansas City, MO 64113. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. The company transacts or has transacted business in this district and throughout the United States.

24.     Defendant **River Elk Services, LLC** is a Missouri limited liability company with no known physical address. It maintains P.O. Box 7082 in Kansas City, MO 64113. The company is owned, directed, or controlled by Defendants Moseley, Sr., Moseley, Jr., and Randazzo. The company transacts or has transacted business in this district and throughout the United States.

25.     Defendant **OSL Marketing, Inc.** (a/k/a OSL Group, Inc.) is a Missouri corporation and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendant Moseley, Sr. The company transacts or has transacted business in this district and throughout the United States.

26.     Defendant **Rocky Oak Services, LLC** is a Kansas limited liability company and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr., Moseley, Jr., and Randazzo. The company transacts or has transacted business in this district and throughout the United States.

27.     Defendant **RM Partners, LLC** is a Kansas limited liability company and has its principal place of business at 3901 W. 56th St., Fairway, KS 66205. The company is owned,

directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. The company transacts or has transacted business in this district and throughout the United States.

28.     Defendant **PDC Ventures, LLC** is a Missouri limited liability company and has its principal place of business at 2 E. Gregory Boulevard, Kansas City, MO 64114. The company is owned, directed, or controlled by Defendants Moseley, Sr. and Moseley, Jr. The company transacts or has transacted business in this district and throughout the United States.

29.     Defendant **Corvus Company, LLC** is a limited liability company organized under the laws of the Commonwealth of St. Kitts & Nevis and has no known physical address. It maintains P.O. Box 7082 in Kansas City, MO 64113. The company is owned, directed, or controlled by Defendant Moseley, Sr. The company transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

30.     Defendants SSM Group, LLC; CMG Group, LLC; DJR Group, LLC; BCD Group, LLC; Hydra Financial Limited Fund I; Hydra Financial Limited Fund II; Hydra Financial Limited Fund III; Hydra Financial Limited Fund IV; PCMO Services, LLC; PCKS Services, LLC; Piggycash Online Holdings, LLC;  CLS Services, Inc.; FSR Services, Inc.; SJ Partners, LLC; River Elk Services, LLC; OSL Marketing, Inc. a/k/a OSL Group, Inc.; Rocky Oak Services, LLC; RM Partners, LLC; PDC Ventures, LLC; and Corvus Company, LLC (collectively, Corporate Defendants) operate as a common enterprise through an interrelated network of companies that share common control, addresses, and office space; commingle funds; and interact with consumers, payment processors, and other third parties from common locations. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Moseley, Sr., Moseley, Jr., and Randazzo have formulated, directed, controlled, had the authority to control,

or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

<u>**DEFENDANTS' BUSINESS ACTIVITIES**</u>

31.     Since at least 2011, Defendants have purported to be in the business of originating and servicing online "payday loans" across the country. "Payday loans" are high-cost, short-term, unsecured loans, often made to consumers to provide funds in anticipation of an upcoming paycheck.

32.     Many consumers have not consented to or authorized Defendants' purported payday loans.

33.     Defendants purchase consumers' sensitive personal and financial information from online lead generators or data brokers, and use that information to deposit payday loans into consumers' bank accounts without their consent. Defendants then make repeated unauthorized withdrawals of the purported "finance charges" for these loans from consumers' accounts. Often, consumers must close their bank accounts to put an end to these unauthorized withdrawals.

34.     For a typical consumer, Defendants' scheme works like this:  First, they deposit $200 to $300 into the consumer's checking accounts. Then they withdraw a $60 to $90 "finance charge" from the consumer's account every two weeks indefinitely. Finally, when a consumer (or the consumer's bank or credit union) contacts Defendants to inquire about the charges, Defendants use bogus documentation to justify the unauthorized transactions.

**Defendants Obtain Unauthorized Access to Consumers' Bank Accounts**

35.     Consumers often seek online loans through websites controlled and operated by third-party "lead generators." Consumers must enter sensitive personal and financial information, including social security and checking account numbers, into the website to apply

for the loan. Lead generators then auction off consumers' sensitive personal and financial information to firms who make the loans or to intermediary data brokers, who then re-sell the leads to lenders.

36. In numerous instances, Defendants have purchased consumer leads from lead generators or data brokers, and then deposited purported payday loans into these consumers' bank accounts.

37. In numerous instances, consumers did not authorize these loans or authorize these deposits.

38. Some consumers report that after submitting their application on a lead-generator website, they received a denial notification or obtained a loan from a different lender. Nevertheless, they received a deposit into their account from Defendants without ever having seen or consented to any loan terms.

39. Other consumers complain that they never actually completed a loan application online or had not applied for a loan near the time of the unauthorized deposit, but still received unauthorized funds from Defendants.

40. Then, in numerous instances, Defendants have made withdrawals from consumers' accounts every two weeks for the purported finance charge for the loan.

41. In numerous instances, consumers did not authorize these withdrawals.

42. Consumers attempt to contact Defendants to complain about the unauthorized loans and have them reversed but are unable to reach Defendants.

43. When consumers are actually able to contact Defendants to complain about the unauthorized loans and have them reversed, Defendants respond by providing them with copies of bogus loan applications, electronic transfer authorizations, or other loan documents that purport to establish earlier consent to the loan.

11

44.     When consumers report to their bank that Defendants' deposits and withdrawals are unauthorized, the bank will contact Defendants to verify the transaction. Defendants, directly or through their payment processors, often misrepresent to these institutions that consumers authorized the debits.

45.     Then, when banks demand additional proof of consumer authorization, Defendants bolster their deception by providing, or causing others to provide, the banks with copies of the same bogus applications, electronic transfer applications, or other loan documents that purport to establish earlier consent to the loan.

46.     As a result, in numerous instances, consumers' banks deny their requests to reverse Defendants' unauthorized deposits or withdrawals.

47.     Defendants often continue to make withdrawals until consumers can obtain a stop-payment hold or close their accounts. As a result, some consumers may end up paying hundreds or even thousands of dollars for loans they never authorized.

48.     Even when consumers successfully close their deposit accounts, in numerous instances Defendants sell or assign the bogus debt to third-party debt brokers or debt collectors.

49.     By selling or assigning these debts, Defendants represent to third-party debt brokers or debt collectors that these consumers authorized the loans. In fact, in numerous instances these consumers had not authorized the loans and there is no legitimate basis for the debt.

## **Defendants Misrepresent the Terms of the Loans**

50.     Consumers typically receive loans from Defendants without having seen the loan terms—such as the finance charge, annual percentage rate, total of payments, and payment schedule—or without having consented to the transaction at all.  For these consumers,

Defendants do not provide required disclosures before consummating the loan transaction and depositing the principal into consumers' bank accounts.

51.     But, in some instances, consumers may receive Defendants' loan terms in advance and consent to the payday loan.  Even where consumers did consent to Defendants' loans, however, Defendants misrepresent their price terms and repayment obligations.

52.     In particular, Defendants represent to consumers that the total payment for satisfying the payday loan is the sum of the principal borrowed plus a one-time stated finance charge.

53.     In reality, Defendants assess and collect bi-weekly finance charges from consumers indefinitely and do not apply those payments towards reducing loan principal.

54.     Defendants' "Loan Note and Disclosure" (Loan Disclosure) says that the consumer's "**Total of Payments**" will be "[t]he amount you will have paid after you have made the scheduled payment," and constitutes the sum of a stated "**FINANCE CHARGE**" and the "**Amount Financed**." It also provides the purported "**ANNUAL PERCENTAGE RATE**" (APR) for the loan. This information appears in bold and prominent text in a box set apart from the rest of the text of the Loan Disclosure.

55.     Then, in smaller and less conspicuous text, there are additional disclosures that contradict these terms. The purported disclosure provides that the disclosed payment schedule only applies when you "decline* the option of refinancing." Then, further down in this small text, it explains that, "*To decline the option of refinancing you must sign the Account Summary page and fax it back to the office at least three business days before your loan is due."

56.     This inadequate disclosure is demonstrated in the following excerpt from one of Defendants' loan notes for a $300 loan with a $90 finance charge and 995.45% APR:

DISCLOSURE OF CREDIT TERMS:                    The information in the following disclosure box is part of this Note.

| ANNUAL PERCENTAGE RATE<br>The cost of the your credit as a yearly rate (e)<br><br>995.45% | FINANCE CHARGE<br>The dollar amount the credit will cost you<br><br>$90 | AMOUNT FINANCED<br>The amount of credit provided to you<br><br>$300 | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made the scheduled payment<br><br>$390 |
|---|---|---|---|

Your Payment Schedule will be: 1 payment of _____ $390 _____ due on _____ 8/1/2011 _____ , if you decline* the option of refinancing your loan. If refinancing is accepted you will pay the finance charge of _____ $90 _____ only, on _____ 8/1/2011 _____ . You will accrue new finance charges with every refinance of your loan. You have the option of paying down the loan. This means your account will be debited the finance charge plus $50.00 pay down.
This does not mean your loan will automatically pay down.

*To decline the option of refinancing you must sign the Account Summary page and fax it back to our office at least three business days before your loan is due.

Security: The loan is unsecured.

Prepayment: If you prepay your loan in advance, you will not receive a refund of any Finance Charge.

(e) The Annual Percentage Rate is estimated based on the anticipated date the proceeds will be deposited to or paid on your account, which is 7/21/2011

See below and your other contract documents for any additional information about prepayment, nonpayment and default.

57.     In some instances, Defendants also send consumers an "Account Summary" with information about the loan. Defendants represent that the "Pay Off Amount Due" is a one-time payment of the principal plus one finance charge (for example, $390) and that the consumer has authorized Defendants "to debit the payoff amount due $390.00 from your account named above on your current due date."

58.     In fact, Defendants withdraw only a finance charge on the due date – and will continue to withdraw a finance charge indefinitely unless consumers take affirmative action to stop the automatic renewal of the loan.

59.     For example, instead of paying $390 for a $300 loan, some consumers have paid Defendants more than $1,000 in bi-weekly debits before finally managing to cut off access to their bank accounts.

60.     Defendants do not adequately disclose the terms of the loan as actually structured, i.e., that it contemplates consumers will pay bi-weekly finance charges indefinitely, without any of those payments reducing the principal balance of their loan.

61.     As a result, in numerous instances, Defendants extract significantly higher payments from consumers than they represent in the prominent terms of their Loan Disclosures or in other written or oral communications to consumers.

**Defendants' Loans Require Pre-Authorized Electronic Transfers**

62.     Consumers typically receive loans from Defendants without having consented to the transaction. As a result, Defendants do not obtain these consumers' written authorization to initiate electronic fund transfers from their depository accounts and do not provide consumers with copies of these authorizations.

63.     But, in some instances, consumers may consent to Defendants' transactions. Even where consumers consent, however, Defendants unlawfully condition the extension of credit on pre-authorized electronic fund transfers (EFTs) from the consumers' bank accounts. These preauthorized EFTs are for a series of recurring debits from consumers' accounts every two weeks.

64.     For example, the ACH authorization in some of Defendants' loan agreements provides that the consumer authorizes Defendants "to initiate one or more ACH debit entries … for the payments that come due each pay period and/or each due date concerning every refinance, with regard to the loan for which you are applying."

65.     The ACH authorization in some of Defendants' other loan agreements provides that the consumer authorizes Defendants "to initiate an ACH debit entry to your Bank Account: (a) for the Total of Payments plus any accrued fees on the Payment Due Date, or on any subsequent Renewal Payment Due Date, if you **do not** contact us and select Payment in Full . . . ."

## ROLE OF INDIVIDUAL DEFENDANT RICHARD F. MOSELEY, SR.

66.     Defendant Richard F. Moseley, Sr. is a primary participant in the affairs of the interrelated maze of entities through which Defendants carry out the unlawful lending activities described in this complaint. Moseley, Sr. is owner, principal, managing member, and registered agent of Defendants SSM Group, CMG Group, DJR Group, BCD Group, PCMO Services, PCKS Services, Piggycash Online Holdings, CLS Services, FSR Services, PDC Ventures, RM Partners, SJ Partners, River Elk Services, OSL Marketing, Rocky Oak Services, and Corvus Company, and is involved in the operations of Hydra Financial Limited Funds I-IV. In his roles as owner, principal, managing member, and registered agent for these companies, Moseley, Sr., acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in these companies' unlawful lending operations. Moseley, Sr. has access to all of the businesses' bank accounts, and directs the flow of monies between these bank accounts.

## ROLE OF INDIVIDUAL DEFENDANT RICHARD F. MOSELEY, JR.

67.     Defendant Richard F. Moseley, Jr. is also a primary participant in the affairs of the interrelated maze of entities through which Defendants carry out the unlawful lending activities described in this complaint.  He is the owner and principal of Defendants SSM Group, CMG Group, DJR Group, BCD Group, Piggy Cash Online Holdings, PDC Ventures, SJ Partners, River Elk Services, Rocky Oak Services, and RM Partners. In his roles as owner and principal for these companies, Moseley, Jr., acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in these companies' unlawful lending operations. Moseley, Jr has access to all of the businesses' bank accounts, and directs the flow of monies between these bank accounts.

## ROLE OF INDIVIDUAL DEFENDANT CHRISTOPHER J. RANDAZZO

68.     Defendant Christopher J. Randazzo is also a primary participant in the affairs of the interrelated maze of entities through which Defendants carry out the unlawful lending activities described in this complaint.  He is the principal and senior manager of Defendants Hydra Financial Limited Funds I-IV. In his roles as principal and senior manager for these companies, Randazzo, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in these companies' unlawful lending operations. Randazzo is also registered agent for Defendants River Elk Services and Rocky Oak Services.

## THE CONSUMER FINANCIAL PROTECTION ACT

69.     Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B), prohibit covered persons from engaging "in any unfair, deceptive, or abusive act or practice."

70.     Section 1036(a)(1)(A) of the CFPA provides that it is "unlawful for any covered person to offer or provide to a consumer any financial product or service not in conformity with Federal consumer law, or otherwise commit any act or omission in violation of a Federal consumer financial law."  Section 1054(a) of the CFPA grants the Bureau authority to commence a civil action against any person who violates a Federal consumer financial law.  The CFPA is a Federal consumer financial law.  12 U.S.C. § 5481(14).

71.     The corporate Defendants are "covered person[s]" within the meaning of the CFPA, 12 U.S.C. § 5481(6).

72.     Defendants Richard F. Moseley, Sr., Richard F. Moseley, Jr., and Christopher J. Randazzo are "covered person[s]" in their capacity as "related person[s]" who are deemed covered persons as "director[s], officer[s], [or] employee[s] charged within managerial

responsibility for, or controlling shareholder of, or agent for, such covered person." 12 U.S.C. §
5481(25).

## VIOLATIONS OF THE CFPA

## COUNT I

### Misrepresentations That Consumers Authorized the Loans and are Bound by their Terms

73.     In numerous instances, in connection with the origination and servicing of purported payday loans, Defendants have represented, directly or indirectly, expressly or by implication, that consumers authorized the payday loan or authorized Defendants to make withdrawals from their bank accounts, and therefore were obligated to pay the finance charges associated with the purported loan.

74.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 70 of this Complaint, consumers had not authorized the payday loans, had not authorized Defendants to make withdrawals from their bank accounts, and therefore were not obligated to pay the finance charges associated with the purported loans.

75.     Therefore, Defendants' representations as set forth in Paragraph 70 of this Complaint are false and misleading and constitute a deceptive act or practice in violation of Sections 1031(a) and 1036(a) of the CFPA, 12 U.S.C §§ 5531(a) and 5536(a).

## COUNT II

### Misrepresentations about Loan Terms

76.     In numerous instances, in connection with origination and servicing of purported payday loans, Defendants have represented, directly or indirectly, expressly or by implication,

that a consumer's total of payments will be equal to the amount financed plus a stated finance charge.

77.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 73 of this Complaint, the consumer's total of payments has been greater than the amount financed plus the stated finance charge.

78.     Therefore, Defendants' representations as set forth in Paragraph 73 of this Complaint are false and misleading and constitute a deceptive act or practice in violation of Sections 1031(a) and 1036(a) of the CFPA, 12 U.S.C §§ 5531(a) and 5536(a).

## COUNT III

### Unfair Billing Practices

79.     Section 1036(a)(1)(B) of the CFPA prohibits "unfair" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury, which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition.

80.     In numerous instances, in connection with the origination and servicing of purported payday loans, Defendants have caused consumers' bank accounts to be debited without the consumers' express, informed consent.

81.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

82.     Therefore, Defendants' acts or practices as set forth in Paragraph 77 of this Complaint are unfair and violate Section 1036(a)(1)(B) of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

19

## VIOLATIONS OF TILA AND REGULATION Z

83.     Under TILA, 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. § 1026, creditors who extend "closed-end credit," as defined in 12 C.F.R. § 1026.2(a)(10), must comply with the applicable disclosure provisions of TILA and Regulation Z, including, but not limited to, Sections 1026.17 and 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

84.     "Creditor" means a person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no contract.  12 C.F.R. § 1026.2 (a)(17). Defendants are creditors under TILA and Regulation Z because they extend consumer credit subject to a finance charge and the obligation is initially payable to them.

85.     "Closed-end credit" means consumer credit other than open-end credit, and "[o]pen-end credit" is defined as "consumer credit extended by a creditor under a plan in which: (i) the creditor reasonably contemplates repeated transactions; (ii) the creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) the amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. §§ 1026.2(a)(10) and (a)(20).  Defendants extend closed-end credit (as opposed to open-end credit) to consumers under TILA and Regulation Z because the loans do not meet all three criteria for open-end credit.

86.     Sections 121(a) and 128(b)(1) of TILA, 15 U.S.C. §§ 1631(a) and 1638(b), and Sections 1026.17(a) and (b) and Section 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17(a) and (b) and 1026.18, require creditors of closed-end consumer credit transactions to disclose, before the credit is extended, among other things, the following about the loan:  finance

charge; annual percentage rate; number, amount, and due dates or period of payments scheduled to repay the total of payments (i.e., the "scheduled payment(s)"); and total of payments. These disclosures must reflect the terms of the legal obligation between the parties. 12 C.F.R. § 1026.17(c).

**COUNT IV**

**Inaccurate Loan Term Disclosures**

87.     In numerous instances Defendants have violated the requirements of TILA and Regulation Z by not disclosing in writing before extending credit the following information in a manner reflecting the terms of the legal obligation between the parties:

        a.     the finance charge;

        b.     the annual percentage rate;

        c.     the payment schedule; and

        d.     the total of payments.

88.     Therefore, Defendants' practices as described in Paragraph 84 of this Complaint constitute violations of Sections 121 and 128 of TILA, 15 U.S.C. §§ 1631, 1638, and Sections 1026.17 and 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

**VIOLATIONS OF EFTA AND REGULATION E**

89.     Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

90.     Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

91.     The Official Interpretation of Regulation E, Section 1005.10(b), 12 C.F.R. Part 1005 Supp. I at ¶ 10(b), cmt. 5, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."

92.     Defendants are "persons" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

93.     Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

94.     Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

95.     The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R § 1005.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

## COUNT V

### Not Obtaining Authorization for Electronic Fund Transfers

96.     In numerous instances Defendants have debited consumers' bank accounts on a recurring basis without:

     a.     obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from the accounts; or

b.  providing to the consumers a copy of a written authorization signed or similarly authenticated by the consumers for preauthorized electronic fund transfers from the consumers' accounts.

97.  Therefore, Defendants' practices as set forth in Paragraph 93 of this Complaint constitute violations of Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

## COUNT VI

### Conditioning Credit on Preauthorized Electronic Fund Transfers

98.  In numerous instances, in connection with the origination of payday loans with consumers, Defendants have conditioned the extension of credit on recurring preauthorized electronic fund transfers.

99.  Therefore, Defendants' practices as set forth in Paragraph 95 of this Complaint constitute violations of Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 1005.10(e)(1) of Regulation E, 12 C.F.R § 1005.10(e)(1).

## CONSUMER INJURY

100.  Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the CFPA, TILA and its implementing Regulation Z, and EFTA and its implementing Regulation E. Defendants have been unjustly enriched as a result of these unlawful acts or practices. Absent injunctive relief from this Court, Defendants are likely to continue to injure consumers, reap ill-gotten gains, and harm the public.

## THIS COURT'S POWER TO GRANT RELIEF

101.  The CFPA empowers this Court to grant any appropriate legal or equitable relief with respect to violations of Federal consumer financial law, including, without limitation,

23

permanent or temporary injunction, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, and civil money penalties. 12 U.S.C. §§ 5538(a) and 5565(a).

## **PRAYER FOR RELIEF**

The Bureau requests that the Court:

A.     Award preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, and appointment of a receiver;

B.     Permanently enjoin Defendants from committing future violations of the CFPA; TILA and its implementing Regulation Z; and EFTA and its implementing Regulation E;

C.     Grant additional injunctive relief as the Court may deem to be just and proper;

D.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the CFPA, TILA and its implementing Regulation Z, and EFTA and its implementing Regulation E, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten gains;

E.     Award civil money penalties against Defendants; and

F.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: September 8, 2014

Respectfully submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau

ANTHONY ALEXIS
Acting Enforcement Director

CARA PETERSEN
Acting Deputy Enforcement Director For
Litigation

   /s/ John Thompson
John Thompson
E-mail: john.thompson@cfpb.gov
Phone: 202-435-7270
Laura Schneider
E-mail: laura.schneider@cfpb.gov
Phone: 202-435-7311
Michael Favretto
E-mail: michael.favretto@cfpb.gov
Phone: 202-435-7785
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

And

Local Counsel
TAMMY DICKINSON
United States Attorney

   /s/  Thomas Larson
Thomas M. Larson, Bar No. 21957
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, MO 64106
Phone: 816-426-3130
Facsimile: 816-426-3165
E-mail: tom.larson@usdoj.gov