UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD F. MOSELEY, SR., et al.,<br><br>    Defendants. | **CASE NO. 4:14-00789-CV-W-DW** |

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENTS AND AUTHORITIES ...........................................................................1

   A.  Federal Rule 12(f) Authorizes This Court to Strike Affirmative Defenses that are Legally Insufficient or Inadequately Pleaded..............................................1

   B.  Affirmative Defense No. 3 (Third-Party Acts/Omissions) Must be Struck Because It's Inadequately Pleaded and Because the Individual Defendants are Directly Liable for the Unlawful Acts or Omissions of Third-Party Service Providers Under the Consumer Financial Protection Act...................4

      1.  The third affirmative defense doesn't satisfy the *Twombly/Iqbal* pleading standard....................................................................................................4

      2.  The third affirmative defense is legally insufficient because the Individual Defendants are directly liable for the unlawful acts or omissions of its third-party service providers ........................................................................5

   C.  Affirmative Defense No. 4 (Good Faith) Must be Struck Because None of the Bureau's Legal Claims Require it to Prove Intent to Harm .............................5

   D.  Affirmative Defense No. 9 (Mootness) Must be Struck Because Voluntary Cessation of Unlawful Conduct Doesn't Deprive This Court of the Power to Grant Permanent Injunctive Relief ..................................................................7

   E.  Affirmative Defense No. 11 (Abuse of Discretion) Must be Struck Because it Doesn't Satisfy the Pleading Standard Set Forth in Twombly/Iqbal ..............9

   F.  Affirmative Defense No. 13 (Waiver) Must be Struck Because the Bureau Didn't Intentionally Relinquish Its Right to Prosecute Its Claims and Non-Party Consumers Can't Waive the Bureau's Right to Prosecute Its Claims ....9

   G.  Affirmative Defense No. 14 (Laches) Must be Struck Because the Defense is Unavailable in Actions to Enforce Public Rights and Protect the Public Interest................................................................................................. 11

CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**
*Accord NLRB v. Bell Aerospace Corp.*, 416 U.S. 267 (1974) ................................. 9
*Accord United States v. Wurdemann*, 663 F.2d 50 (8th Cir. 1981). .................... 12
*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) .................................. 7
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................. 2
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007) .......................................... 2
*Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285 (8th Cir. 1990) .......... 11
*CFTC v. Yu*, 2012 WL 3283430 (N.D. Cal. Aug. 10, 2012) ..................................... 8
*EEOC v. Karenkim, Inc.*, 698 F.3d 92 (2d Cir. 2012) ............................................. 8
*FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282 (D. Minn. 1985) ......................... 8
*FTC v. Payday Financial LLC*, 989 F. Supp. 2d 799 (D.S.D. 2013) ........................ 5
*Lucas v. Jerusalem Café, LLC*, 2011 WL 1364075 (W.D. Mo. April 11, 2011) ........ 2
*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) ......................... 6
*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ......................................................... 9
*United States v. Cherokee Nation of Oklahoma*, 480 U.S. 700 (1987) ................ 10
*United States v. NHC Health Care Corp.*, 2000 WL 33146581 (W.D. Mo. Dec. 29, 2000) ................................................................................................................. 2
*United States v. Summerlin*, 310 U.S. 414 (1940) .............................................. 12
*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ....................................... 7, 8
*Utah Power & Light Co. v. United States*, 243 U.S. 389 (1917) ........................... 11

**Statutes**
12 U.S.C. § 5481 .................................................................................................... 4
12 U.S.C. § 5536 .................................................................................................... 4
15 U.S.C. § 1693e .................................................................................................. 6
15 U.S.C. §§ 1631 .................................................................................................. 6
15 U.S.C. §§ 1638 .................................................................................................. 6

**Rules**
Fed. R. Civ. P. 12(f). ............................................................................................... 1

**Regulations**
12 C.F.R. § 1005 .................................................................................................... 6
12 C.F.R. §§ 1026 .................................................................................................. 6

# PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND SUGGESTIONS IN SUPPORT

The Consumer Financial Protection Bureau (Bureau) moves this Court for an order striking several of the Individual Defendants' affirmative defenses under Federal Rule 12(f) and respectfully shows the Court as follows:

## PRELIMINARY STATEMENT

This motion to strike narrowly targets a handful of the Individual Defendants' affirmative defenses, each of which is either legally insufficient, inadequately pleaded, or both. If allowed to survive, they would add needless clutter to the case and produce open-ended discovery into irrelevant matters. These defenses must therefore be struck for all of the reasons set forth below.

## ARGUMENTS & AUTHORITIES

**A. Federal Rule 12(f) Authorizes This Court to Strike Affirmative Defenses that are Legally Insufficient or Inadequately Pleaded.**

Federal Rule 12(f) authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[1] While striking a party's pleadings is disfavored as an extreme remedy, district courts in this Circuit enjoy broad discretion to strike affirmative defenses that are either legally insufficient or inadequately pleaded.[2]

---

[1] Fed. R. Civ. P. 12(f).

[2] *See, e.g., School of the Ozarks, Inc. v. Greatest Generations Foundation, Inc.*, 2011 WL 1337406, at *1 (W.D. Mo. April 7, 2011); *Openmethods, LLC v. Mediu, LLC*, 2011 WL 2292149, at *2 (W.D. Mo. June 8, 2011).

1

An affirmative defense is legally insufficient where it can't succeed under any set of facts that may be inferred from the allegations of the pleading. In this light, a motion to strike "closely resembles a motion to dismiss in that all well plead allegations in the affirmative defense must be accepted as true and the Court must find that the defense at issue is legally insufficient."[3]

Affirmative defenses must also be struck if they're inadequately pleaded. A majority of federal courts, including multiple courts in this District, have held that the heightened pleading standard articulated in *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*[5] is also applicable to affirmative defenses.[6] The *Twombly/Iqbal* decisions reiterate that "the purpose of the pleading requirements is to provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion and not simply a suggestion of possibility that it may apply to the case."[7]

Several of the Individual Defendants' affirmative defenses are either legally insufficient or inadequately pleaded and must therefore be struck.

---

[3] *United States v. NHC Health Care Corp.*, 2000 WL 33146581, at *1 (W.D. Mo. Dec. 29, 2000).

[4] 550 U.S. 554 (2007).

[5] 556 U.S. 662 (2009).

[6] *See, e.g., Lucas v. Jerusalem Café, LLC*, 2011 WL 1364075, at *2 (W.D. Mo. April 11, 2011) (enunciating accord with majority view that affirmative defenses should be held to same standard as ordinary pleadings) (Kays, J.); *School of the Ozarks, Inc. v. Greatest Generations Foundation, Inc.*, 2011 WL 1337406, at *1 (W.D. Mo. April 7, 2011) (same) (Smith, J.); *Openmethods, LLC v. Mediu, LLC*, 2011 WL 2292149, at *2 (W.D. Mo. June 8, 2011) (same) (Gaitan, Jr., C.J.).

[7] *Lucas*, 2011 WL 1364075, at *2 (citing *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. Dec. 22, 2009)).

**B. Affirmative Defense No. 3 (Third-Party Acts/Omissions) Must be Struck Because It's Inadequately Pleaded and Because the Individual Defendants are Directly Liable for the Unlawful Acts or Omissions of Third-Party Service Providers Under the Consumer Financial Protection Act.**

**1. The third affirmative defense doesn't satisfy the *Twombly/Iqbal* pleading standard.**

The Individual Defendants' third affirmative defense states: "To the extent that the Complaint sets forth any unlawful, deceptive or unfair acts and/or omissions, such acts and/or omissions were committed by third parties over whom the Individuals do not exercise authority or control, and without the knowledge or consent of the Individual Defendants."[8]

This is insufficient under the *Twombly/Iqbal* pleading standard. At a minimum, to satisfy this standard, the defense must identify the third parties who were responsible for violating the law and describe in sufficient detail the acts or omissions for which they're responsible. If the Individual Defendants know enough about other supposed bad actors to blame them for the legal violations that give rise to the Bureau's Complaint, they must also know enough to identify those third parties by name. As currently pleaded, the Bureau lacks sufficient notice to determine whom else it should investigate for violating the law during discovery in this case.[9] The defense must therefore be struck.

---

[8] Dkt. No. 57 at 14, ¶ 3.

[9] *See School of the Ozarks*, 2011 WL 1337406, at *2 (striking affirmative defense that vaguely referred to the misconduct of a party representative without alleging any additional facts).

## 2. The third affirmative defense is legally insufficient because the Individual Defendants are directly liable for the unlawful acts or omissions of its third-party service providers.

The Consumer Financial Protection Act imposes direct liability on the Individual Defendants for the unlawful acts or omissions of their third-party service providers. The Act defines a service provider as "any person that provides a material service to a Covered Person[10] in connection with the offering or provision by such Covered person of a consumer financial product or service...."[11]

The Act further states, "it shall be unlawful for any Covered Person or Service Provider to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law."[12] This language means that the covered person is liable if, in the course of providing a consumer financial product or service, it violated the Federal consumer financial law. This liability attaches no matter how it provides the product or service, whether on its own or through a service provider.

Insofar as any third-party service provider the Individual Defendants used for lead generation, loan underwriting, loan disclosure, or any other purposes engaged in unlawful acts or practices, liability for those acts or practices also

---

[10] There is no question the Individual Defendants are "covered person[s]" under the Act, 12 U.S.C. § 5481(6), which defines the term as "any person that engages in offering or providing a consumer financial product or service...."

[11] 12 U.S.C. § 5481(26).

[12] 12 U.S.C. § 5536.

4

attaches to the Individual Defendants. As a result, the Individual Defendants' third affirmative defense must be struck as legally insufficient.

### C. Affirmative Defense No. 4 (Good Faith) Must be Struck Because None of the Bureau's Legal Claims Require it to Prove Intent to Harm.

The Individual Defendants' fourth affirmative defense states: "At all times relevant to the allegations in Plaintiff's Complaint, the Individual Defendants acted fairly, reasonably, in good faith, and without intent to harm."[13] There is no set of facts under which this defense would allow the Individual Defendants to prevail on the Bureau's claims. Even assuming that they ran their lending business in good faith, none of the Bureau's claims require it to prove that the Individual Defendants intended to harm consumers.

The Bureau's deception claims (Counts I and II) require it to prove that the Individual Defendants made representations that misled, or were likely to mislead, reasonable consumers, and that those representations were material.[14] The Defendants' mental state is immaterial. The Bureau's unfairness claim (Count III) requires it to prove that the Individual Defendants engaged in acts or practices that caused, or were likely to cause, substantial injury to consumers, and that the injury was neither reasonably avoidable nor outweighed by countervailing benefits to consumers or competition.[15] As with the deception

---

[13] Dkt. No. 57 at 14, ¶ 4.

[14] *E.g., FTC v. Payday Financial LLC*, 989 F. Supp. 2d 799, 816 (D.S.D. 2013)

[15] *E.g., Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1364 (11th Cir. 1988).

5

claim, the focus of the unfairness claim is on the harmful effects of the conduct at issue, not the mental state of the wrongdoers.[16]

Similarly, none of the Bureau's other statutory claims require proof of intent to harm. The Bureau's claim under TILA/Regulation Z (Count IV) requires it to demonstrate that the Individual Defendants' loan disclosures didn't accurately disclose the loans' finance charge; annual percentage rate; number, amount, and due dates or period of payments scheduled to repay the total of payments; and the total of payments.[17] The Individual Defendants' good faith and subjective intentions have nothing to do with whether their loans were TILA/Regulation Z-compliant.

The Bureau's claims under EFTA/Regulation E (Counts V-VI) require it to demonstrate that the Individual Defendants (a) didn't provide consumers with a copy of required electronic fund transfer authorizations, and (b) conditioned their extension of credit on consumers' repayment by preauthorized recurring electronic fund transfers.[18] Again, the Individual Defendants' purported intentions have nothing to do with whether their loans were EFTA/Regulation E-compliant.

---

[16] *Id.* at 1368 ("The unfairness standard, focusing as it does upon consumer injury, does not take into account the mental state of the party accused of a section 5 violation.").

[17] 15 U.S.C. §§ 1631(a), 1638(b); 12 C.F.R. §§ 1026.17, 1026.18.

[18] 15 U.S.C. § 1693e, 1693k(1); 12 C.F.R. § 1005.10(b), 1005.10(e)(1).

6

Whether or not the Individual Defendants acted "in good faith" and "without intent to harm" is irrelevant. Their fourth affirmative defense must therefore be struck.

### D. Affirmative Defense No. 9 (Mootness) Must be Struck Because Voluntary Cessation of Unlawful Conduct Doesn't Deprive This Court of the Power to Grant Permanent Injunctive Relief.

The Individual Defendants' ninth affirmative defense states: "Plaintiff's claim for injunctive relief is moot and, therefore, barred in that the activities complained of were no longer occurring at the time Plaintiff filed its Complaint."[19] This defense is legally insufficient. Federal courts universally hold that their "power to grant injunctive relief survives discontinuance of the illegal conduct."[20] Voluntary cessation of unlawful conduct moots a claim for injunctive relief "only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur."[21] The Individual Defendants' Answer doesn't contain any claims about whether their illegal conduct may reoccur. It offers no such assurance. This is probably because the only reason they ever ceased unlawful operations in the first place was because they lost access to the ACH system they had hitherto relied upon to plunder consumers' bank accounts.

Even if the Individual Defendants had offered such assurances, however, it wouldn't moot the Bureau's request for a permanent injunction. To determine

---

[19] Dkt. No. 57 at 14, ¶ 9.

[20] *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

[21] *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (emphasis in original) (internal citation and quotation omitted).

7

whether injunctive relief is appropriate under such circumstances, courts must weigh "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations."[22] A party seeking to show that such relief is moot must demonstrate that "there is no reasonable expectation that the wrong will be repeated. The burden is a heavy one."[23] Conversely, a party seeking an injunction against demonstrably illegal conduct "need[s] show only that there is some reasonable likelihood of future violations."[24] Both the "egregious nature of past violations"[25] and the fact that those violations were widespread, rather than isolated, are indicative that future violations are likely.[26]

Given the Defendants' failure to demonstrate that future violations are absolutely certain not to occur; the egregious nature of the Individual Defendants' plunder; the fact that unauthorized access harmed numerous consumers; and the fact that the only reason they ceased operations was because they lost access to the ACH system – access that could just as easily be restored –

---

[22] *W.T. Grant*, 345 U.S. at 633.

[23] *Id.*

[24] *CFTC v. Yu*, 2012 WL 3283430, at *4 (N.D. Cal. Aug. 10, 2012).

[25] *See FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1296 (D. Minn. 1985) (concluding egregious nature of past violations is a factor weighing in favor of broad, permanent injunctive relief).

[26] *See EEOC v. Karenkim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) (noting that, where conduct has apparently ceased, whether past violations were isolated or widespread is relevant to consideration whether an injunction is proper).

8

there is no question that the Bureau's request for injunction is justiciable. The Individual Defendants' mootness defense must therefore be struck.

E.  **Affirmative Defense No. 11 (Abuse of Discretion) Must be Struck Because it Doesn't Satisfy the Pleading Standard Set Forth in *Twombly/Iqbal.***

The Individual Defendants' eleventh affirmative states: "Plaintiff abused its discretion in bringing this action because it should have proceeded by rulemaking, in that it seeks to change the law and establish rules of widespread application."[27] The defense falls well short of the *Twombly/Iqbal* pleading standard. It doesn't identify the discretionary power the Bureau abused, how this case would change the law, what law it would change, and what new rules of widespread application this case would establish. The Bureau can only speculate about each of these factual details, so the defense that the Bureau abused its discretion must be struck.[28]

---

[27] Dkt. No. 57 at 14, ¶ 11.

[28] Even assuming, for the sake of argument, that this defense challenges the Bureau's decision to proceed via adjudication rather than rulemaking, the defense would still be legally insufficient. This is so because courts owe administrative agencies broad deference when reviewing the agency's decision to address a particular issue through either adjudication or rulemaking. In *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court concluded that "the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." *Id.* at 203. *Accord NLRB v. Bell Aerospace Corp.*, 416 U.S. 267, 294 (1974) (recognizing that "[T]he [National Labor Relations] Board is not precluded from announcing new principles in an adjudicative proceeding and that the choice between rulemaking and adjudication lies in the first instance within the Board's discretion.").

9

### F. Affirmative Defense No. 13 (Waiver) Must be Struck Because the Bureau Didn't Intentionally Relinquish Its Right to Prosecute Its Claims and Non-Party Consumers Can't Waive the Bureau's Right to Prosecute Its Claims.

The Individual Defendants' thirteenth affirmative defense states: "Plaintiff's claims are barred by the doctrine of waiver. The consumers for whom the Plaintiff purports to act knew or reasonably should have known the terms of the loans they were securing."[29] This defense is legally insufficient.

Courts don't lightly infer that the government has waived its sovereign prerogative to enforce its laws. The Supreme Court has clearly stated, "a waiver of sovereign authority will not be implied, but instead must be surrendered in unmistakable terms."[30] The Individual Defendants allege no facts to support a finding that the Bureau intentionally and unmistakably relinquished its right to prosecute this action.

Instead, as currently pleaded, the defense is a bizarre non sequitur. The Bureau doesn't "purport[] to act" for any of the Individual Defendants' consumer victims; the Bureau prosecutes this case under its statutory authority to enforce federal consumer financial laws. Whatever individual consumers "knew or should have reasonably known" about the terms of their bogus loans has no bearing on the Bureau's authority to pursue its claims.

---

[29] Dkt. No. 57 at 15, ¶ 13.

[30] *United States v. Cherokee Nation of Oklahoma*, 480 U.S. 700, 707 (1987) (internal citation omitted).

Moreover, even if non-party consumers could waive the Bureau's right to prosecute this case, it's not clear how their subjective knowledge of the loan terms would result in a waiver of claims that are predicated, in part, on the contention that those terms were deceptive. And even if their subjective knowledge had some bearing on whether the Bureau waived its right to prosecute, this wouldn't change the fact that a substantial number of purported borrowers *never consented to any loan terms in the first place.* For all of these reasons, the Individual Defendants' waiver defense must be struck.

## G. Affirmative Defense No. 14 (Laches) Must be Struck Because the Defense is Unavailable in Actions to Enforce Public Rights and Protect the Public Interest.

The Individual Defendants' fourteenth affirmative defense states: "Plaintiff's claims are barred, in whole or in part, by the doctrine of laches. Plaintiff's delay in asserting its claims, coupled with the delay of the consumers it purports to represent, bar these claims, especially in light of the prejudice to the Individual Defendants as a result of the unreasonable delay in filing suit."[31] This defense is legally insufficient.

Eighth Circuit courts "have recognized the long-standing rule that laches does not apply in actions brought by the United States."[32] The Supreme Court has similarly held that the equitable defense of laches doesn't prevent a government

---

[31] Dkt. No. 57 at 15, ¶ 14.

[32] *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285, 1291 (8th Cir. 1990).

agency from vindicating public rights and protecting the public interest.[33] There is no question here that the Bureau's enforcement action seeks to vindicate public rights and protect the public interest. The Individual Defendants' fourteenth affirmative defense must therefore be struck.

## CONCLUSION

For all of the foregoing reasons, the Bureau requests that the Court strike the Individual Defendants' third, fourth, ninth, eleventh, thirteenth, and fourteenth affirmative defenses under Federal Rule 12(f).

Dated: December 11, 2014

Respectfully submitted,

ANTHONY ALEXIS
Acting Enforcement Director

  /s/ John Thompson
John Thompson
  E-mail: john.thompson@cfpb.gov
  Phone: 202-435-7270
Laura Schneider
  E-mail: laura.schneider@cfpb.gov
  Phone: 202-435-7311
Michael Favretto
  E-mail: michael.favretto@cfpb.gov
  Phone: 202-435-7785
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

---

[33] *See, e.g., Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917) ("As a general rule, laches or neglect of duty on the part of officers of the government is no defense to suit by it to enforce a public right or protect a public interest."); *United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not ... subject to the defense of laches in enforcing its rights."). *Accord United States v. Wurdemann*, 663 F.2d 50, 51 (8th Cir. 1981).

12

Attorneys for Plaintiff
Consumer Financial Protection
Bureau

And

Local Counsel
TAMMY DICKINSON
United States Attorney

# CERTIFICATE OF SERVICE

On December 11, 2014, a copy of the foregoing document was filed with the

Court's ECF system which electronically served the following counsel:

Consumer Financial Protection
Bureau
John Thompson
Laura Schneider
Michael Favretto
Office of Enforcement
1700 G Street, NW
Washington, DC 20552
Phone: 202-435-7270
John.Thompson@cfpb.gov
laura.schneider@cfpb.gov
michael.favretto@cfpb.gov

Thomas M. Larson
Assistant United States Attorney
CharlesEvans Whittaker Courthouse
400 East Ninth Street, Room5510
Kansas City, Missouri 64106
tom.larson@usdoj.gov

Stinson Leonard Street LLP
John C. Aisenbrey
Sean W. Colligan
Matthew J. Salzman
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Phone: (816) 842-8600
john.aisenbrev@stinsonleonard.com
sean.colligan@stinsonleonard.com
matt.salzman@stinsonleonard.com

Thomas W. McNamara
Daniel M. Benjamin
Andrew W. Robertson
Ballard Spahr, LLP
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
(619) 696-9200
mcnamarat@ballardspahr.com
benjamind@ballardspahr.com
robertsona@ballardspahr.com

Matthew T. Geiger
Benjamin R. Prell
Geiger Prell, LLC
10000 College Boulevard, Suite 100
Overland Park, Kansas 66210
913-661-2430 (telephone)
mgeiger@geigerprell.com
bprell@geigerprell.com
Attorneys for the Receiver

/s/ Laura Schneider
Attorney for Plaintiff
Consumer Financial Protection
Bureau

14