**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-cv-00789-SRB |
| | ) | |
| RICHARD F. MOSELEY, SR., et al., | ) | |
| | ) | |
| Defendant. | ) | |

**RECEIVER'S SUGGESTIONS IN SUPPORT OF HIS**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**


INTRODUCTION .......... 2

STATEMENT OF UNCONTROVERTED MATERIAL FACTS .......... 3

ARGUMENT AND AUTHORITIES .......... 9

1. Blevins' fraudulent transfer claims have been extinguished .......... 9

2. Even if Blevins' constructive fraud claims have not been extinguished, she cannot establish any of the transfers were constructively fraudulent .......... 17

3. By her own admission, Blevins was not a "present creditor" until January 2014 .......... 19

CONCLUSION .......... 20



GEIGER PRELL
BUSINESS DISPUTES

Matthew T. Geiger MO # 50071
Benjamin R. Prell MO # 55654
10000 College Blvd., Suite 100
Overland Park, Kansas 66210
913-661-2430 (telephone)
913-362-6729 (facsimile)
mgeiger@geigerprell.com
bprell@geigerprell.com

ATTORNEYS FOR THE RECEIVER

Thomas W. McNamara, in his capacity as Court-appointed Receiver (the "Receiver"), respectfully submits the following Suggestions in Support of his Motion for Summary Judgment (Doc. 280) (the "Motion"). For the following reasons, the Receiver's Motion should be granted.

## INTRODUCTION

Kendal Blevins ("Blevins") has asserted claims against the Receiver under Missouri's Uniform Fraudulent Transfer Act ("MUFTA"), R.S. Mo. § 428.005, *et seq.* in an attempt to collect an April 27, 2016 default judgment against her former employer, Worldwide Wireless, LLC ("WWW"), and Scott Fodor, her supervisor. SJ Partners, LLC ("SJ"), a Receivership Defendant that held a 14.55% minority membership interest in WWW, was not a party to Blevins' employment lawsuit and is not a judgment debtor. SJ invested $640,000 in WWW for its ownership interest, and only received $274,260 in distributions or transfers from WWW as a result of its investment. There is no evidence SJ was aware of Blevins' claim or employment case, and her lawsuit was not even filed until over three months ***after*** SJ received its final transfer from WWW on October 27, 2014.

MUFTA provides strict time periods in which creditors may bring claims against debtors before they are extinguished. Despite suspicions from her employment counsel that there might have been a fraudulent transfer from WWW to one or more third parties, Blevins did not utilize any post-judgment discovery or collection methods in an attempt to execute on her judgment for over two years. She did not file her Exceptions and Claims against the Receiver in this case until over five years after the final transfer from WWW to SJ. All her fraudulent transfer claims have been extinguished under MUFTA.

Even if her claims to the allegedly fraudulent transfers have not been extinguished, Blevins cannot establish either constructive fraud with respect to any of the transfers, as explained more

fully below. The undisputed fact is that SJ transferred far more funds ***into*** WWW than WWW distributed back to SJ, thereby eliminating any constructive fraud claims. For the reasons explained more fully below, the Court should enter summary judgment dismissing all of Blevins' fraudulent transfer claims.

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1. On or about April 25, 2014, Kendal Blevins ("Blevins") entered into a Contract for Legal Services with the law firm of Ensz & Jester, P.C. "to prosecute [Blevins'] claim for compensation and/or damages against Worldwide Wireless, LLC and all other persons or entities considered liable as a result of an occurrence . . . ." *See* Contract for Legal Services (Exhibit R1), KB-E&J-00001194.

2. The Contract for Legal Services described the "occurrence" as "inappropriate conduct directed toward Kendal Blevins by Scott Fodor and Worldwide Wireless employees as part of Blevins' employment with Worldwide Wireless." *Id.*

3. On or about May 5, 2014, Blevins filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging harassment by Scott Fodor, who she stated was a regional manager for Worldwide Wireless, LLC ("WWW") and her supervisor. *See* EEOC Charge of Discrimination (Exhibit R2), KB-E&J-000022-23.

4. On September 9, 2014, the Court entered its Temporary Restraining Order with Asset Freeze (Doc. 8) preliminarily appointing Thomas McNamara as Receiver in this case.

5. On October 3, 2014, the Court entered its Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver, Expedited Discovery and Other Equitable Relief (the "Injunction") (Doc. 40), which confirmed McNamara's appointment as Receiver.

6. SJ Partners, LLC ("SJ") is a defendant covered by the Injunction. *See* Injunction (Doc. 40, page 4).

7. Beginning on or about December 29, 2011, SJ had purchased and held a minority ownership interest in Worldwide Wireless, LLC. *See* relevant pages of 2011 Partnership Tax Return filed by SJ (Exhibit R7), Federal Statements, Statement 3, REC 195, REC 0203; Missouri Bank account statements (Exhibit R8), REC 0001, REC 0023 - 25 *and* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory Nos. 1 and 2, pgs. 4-5.

8. The following funds were transferred between SJ and WWW between SJ's initial investment on December 29, 2011 and the final transfer from WWW to SJ on October 27, 2014:

| **Date** | **Event** | **Transfer from SJ to WWW** | **Transfer from WWW to SJ** |
|---|---|---|---|
| 12/29/2011 | Check from SJ to WWW | $440,000.00 | |
| 1/13/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 2/16/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 3/15/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 4/17/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 5/15/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 6/19/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 6/28/2012 | Check to Raizada Group, LP to increase investment to 14.55% | $200,000.00 | |
| 7/12/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 8/14/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 9/14/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 10/16/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 11/16/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 12/17/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 1/17/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 2/15/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 3/14/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 4/12/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 5/21/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 6/24/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 7/17/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 8/15/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 9/18/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 10/17/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 11/21/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 12/18/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 1/22/2014 | Deposit from WWW to SJ | | $5,820.00 |
| 4/11/2014 | Deposit from WWW to SJ | | $5,820.00 |

| Date | Event | Transfer from SJ to WWW | Transfer from WWW to SJ |
|---|---|---|---|
| 5/16/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 6/24/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 7/23/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 8/19/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 9/24/2014 | Deposit from WWW to SJ | | $5,820.00 |
| 10/27/2014 | Deposit from WWW to SJ | | $116,400.00 |
| | **TRANSFER TOTALS:** | **$640,000.00** | **$274,260.00** |

*See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* Missouri Bank account statements and email (Exhibit R8), REC 0001 – 0081, 0659 – 0660.

9. SJ invested a total of $640,000 in WWW. *See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* relevant pages of Missouri Bank account statements (Exhibit R8), REC 0001, REC 0023 – 25, REC 0034 – 36.

10. In exchange for its capital contributions, SJ received a total membership interest of 14.55% in WWW as of 2014. *See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 2, pg. 5 *and* 2014 Schedule K-1 issued by WWW to SJ (Exhibit R10), REC_70463-70469.

11. SJ only received a total of $274,260 in funds transferred from WWW as return on its investment. *See* Receiver/Garnishee's Amended Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* Missouri Bank account statements and email (Exhibit R8), REC 0001 – 2, 0023 – 81, 0659 – 0660. Two of those distributions or transfers of funds from WWW were received shortly after the Receiver's appointment: (1) $5,820 on or about September 24, 2014, and (2) $116,400 on or about October 27, 2014. *See* Missouri Bank email (Exhibit R8), REC 0659 – 0660.

12. The Receiver has not received any other transfers, assets, or other items of any value from WWW since the final transfer from WWW on or about October 27, 2014. *See* Receiver/Garnishee's Amended Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-6, Missouri Bank account statements (Exhibit R8), REC 0001 – 2, 0023 - 81, 0659 - 0660, *and* Receiver's Answers and Objections to Garnishor's First Requests for Admission (Exhibit R11), Responses Nos. 19-21, 23, and 31.

13. Blevins filed her Petition in Johnson County District Court on February 12, 2015 alleging employment discrimination against Worldwide Wireless, LLC and Scott Fodor (the "Johnson County Case"). *See* Petition (Exhibit R12) *and* Docket Sheet, Johnson County Case (Exhibit R13). Her Petition was never amended. *Id.*

14. SJ Partners, LLC was not a defendant in the Johnson County Case and was not mentioned in Blevins' Petition. *See* Docket Sheet, Johnson County Case (Exhibit R13), Petition (Exhibit R12), *and* Default Judgment Entry (Doc. 223-1).

15. Blevins served WWW a copy of the Summons and Petition in the Johnson County Case through the Kansas Secretary of State. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Default Judgment Entry (Doc. 223-1).

16. On August 6, 2015, Blevins' employment counsel, James Ensz of Ensz & Jester, sent her an email advising her that they would have difficulty in collecting any judgment against WWW and Fodor. *See* 8-6-15 email from Ensz to Blevins (Exhibit R3), KB-E&J-0000921. Blevins' counsel believed WWW was "out of business," and had "no reason to believe [Fodor had] assets of any significance justifying the expense necessary" to serve him, prosecute the case, and collect on any judgment against him. *Id.*

17. Ensz & Jester recommended to Blevins that she obtain a default judgment against WWW and notify an allegedly affiliated or related entity named Spectrum Business Ventures, "which seems to have more than a passing interest in protecting Worldwide's assets." *See* Exhibit R3.

18. Blevins' counsel further advised her "[t]here very well could have been a fraudulent transfer of assets from Worldwide to Spectrum and/or its wealthy owner Amit Razahda [sic] that the latter will want to protect from a potential fraudulent conveyance action following a potential judgment against Worldwide in this case." *See* Exhibit R3.

19. On or about April 1, 2016, Blevins' employment counsel sent her a letter and memorandum summarizing some efforts undertaken by the firm to locate Amit Raizada. *See* 4-1-16 letter and memorandum from Ensz to Blevins (Exhibit R4), KB-E&J-00009-11.

20. On or about the same day, Blevins' employment counsel sent a letter to WWW, care of Angela M. Correll, Controller for Spectrum Business Ventures, Inc. *See* 4-1-16 letter from Ensz to Correll (Exhibit R5), KB-E&J-000014. The letter referenced Blevins' lawsuit against WWW and enclosed copies of the Petition, Blevins' Motion for Default Judgment, and Notice of Hearing. *Id.*

21. On April 27, 2016, Blevins obtained an uncontested default judgment against Worldwide Wireless, LLC and Scott Fodor for alleged employment discrimination (the "Default Judgment"). *See* Default Judgment Entry (Doc. 223-1). The Default Judgment included actual damages in the amount of $150,000, punitive damages in the amount of $150,000 and attorneys' fees in the amount of $120,000. (Doc. 223-1). No judgment was sought or entered against SJ Partners, LLC in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Default Judgment (Doc. 223-1).

22. On or about May 3, 2016, Ensz & Jester sent a letter to Blevins enclosing a copy of the Default Judgment. *See* 5-3-16 letter from Ensz to Blevins (Exhibit R6), KB-E&J-00001 – 5. The letter informed her that Ensz & Jester's "ongoing, active participation in this matter" was ending with the delivery of the Default Judgment. *Id.*

23. Despite obtaining the Default Judgment, Blevins took no action to utilize any post-judgment discovery methods or processes through Johnson County District Court, or any other court, until she filed a Motion for Order for Hearing in Aid of Execution on May 14, 2018 in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Kendal Blevins' Responses to Receiver's First Requests for Admission to Garnishor, Response No. 3 (Exhibit R14).

24. Despite obtaining the Default Judgment, Blevins took no action through, or otherwise attempted to utilize, any court process to attempt to execute, levy, or otherwise collect on the Default Judgment until she filed a Motion for Order for Hearing in Aid of Execution on May 14, 2018 in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Kendal Blevins' Responses to Receiver's First Requests for Admission to Garnishor, Response No. 4 (Exhibit R14).

25. Blevins made no mention of any potentially or allegedly fraudulent transfers related to the Default Judgment in any pleading or other document filed with any court until she filed her Redacted Motion for Garnishment and Suggestions in Support Thereof on December 31, 2018 in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13); Kendal Blevins' Responses to Receiver's First Requests for Admission to Garnishor, Response No. 5 (Exhibit R14); *and* Redacted Motion for Garnishment and Suggestions in Support Thereof (Exhibit R15).

26. Blevins filed her Motion for Clarification of Stay Order Included in the Stipulated Asset Freeze Between the Parties and/or to Lift the Stay for Purpose of Allowing Garnishment of the Court Appointed Receiver Over the Assets of SJ Partners, LLC in this case on March 28, 2019. *See* Motion for Clarification of Stay Order (Doc. 223).

27. Blevins filed her Exceptions and Claims in this case, which was the first pleading stating her claim for relief or cause of action under the Missouri Uniform Fraudulent Transfer Act ("MUFTA"), R.S. Mo. § 428.005, *et seq.*, in this case on November 14, 2019. *See* Garnishor's Exceptions and Claims (Doc. 259).

**ARGUMENT AND AUTHORITIES**

**1. <u>Blevins' fraudulent transfer claims have been extinguished</u>**

Blevins has filed her Exceptions and Claims in an attempt to recover $140,200 in funds transfers made by WWW to SJ under Missouri's Uniform Fraudulent Transfer Act ("MUFTA"). *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 4 and pg. 4. Blevins asserts all four theories under MUFTA in a shotgun attempt to recover the transfers:

(1) R.S. Mo. § 428.024.1(1) – they were made with the actual intent to hinder, delay, or defraud any creditor;

(2) R.S. Mo. § 428.024.1(2) – they were made without WWW receiving a reasonably equivalent value in exchange, and WWW:
   a. was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
   b. intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due;

(3) R.S. Mo. § 428.029.1 – they were made without receiving a reasonably equivalent value in exchange, and WWW was insolvent at that time or WWW became insolvent as a result of the transfer or obligation; and

(4) R.S. Mo. § 428.029.2 – they were made to an insider for an antecedent debt, WWW was insolvent at that time, and the insider had reasonable cause to believe that WWW was insolvent.

*See* Garnishor's Exceptions and Claims (Doc. 259), pgs. 2-3 *and* R.S. Mo. §§ 428.024 and 428.029.

Regardless of the basis for her asserted recovery, Blevins claims have been extinguished by operation of MUFTA's extinguishment section. R.S. Mo. § 428.049. MUFTA provides that

> [a] claim for relief or cause of action with respect to a fraudulent transfer . . . is extinguished unless action is brought:
>
> (1) Under [R.S. Mo. § 428.024.1(1)], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under [R.S. Mo. § 428.024.1(2) or § 428.029.1], within four years after the transfer was made or the obligation was incurred; or
>
> (3) Under [R.S. Mo. § 428.029.2], within one year after the transfer was made or the obligation was incurred.

R.S. Mo. § 428.049.

Missouri courts have noted the subtle, but important, distinctions between ordinary statutes of limitation, and "statutes creating a right with a special limitation appended to the exercise of the right on the ground the special limitation extinguishes the right rather than extinguishing the remedy." *Wentz v. Price Candy Co.*, 352 Mo. 1, 4, 175 S.W.2d 852, 854 (1943). "In other words, where time is made the essence of the right created, the limitation is an inherent part of the statute out of which the particular right arises, so that there is no right of action whatsoever independent of the limitation, and a lapse of the statutory period operates to extinguish the right altogether." *Id.* (citations omitted). The purpose of the Uniform Fraudulent Transfer Act's extinguishment provision "is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy." Unif. Fraudulent Transfer Act § 9, cmt. (1) (citation omitted).

Thus, MUFTA's extinguishment provision provides a strict bar to any claims falling outside the proscribed time periods.

The relevant dates establish that Blevins' MUFTA claims were extinguished long before she brought her claim for relief. The transfers between WWW and SJ began in 2011, with the final transfer from WWW to SJ taking place on October 27, 2014. SOF, ¶ 8. Meanwhile, Blevins filed her Petition for her employment claim against WWW and Scott Fodor on February 12, 2015. SOF, ¶ 13. Blevins' employment counsel researched WWW, its potential assets, and its owner Amit Raizada. SOF, ¶¶ 16-17. Her attorneys informed her they believed there might have been a fraudulent transfer from WWW to Raizada or other parties. SOF, ¶ 18. Her counsel also sent a copy of the Petition and Blevins' motion for entry of a default judgment to Angela Correll, Controller for Spectrum Business Ventures, Inc., another business entity they believed was affiliated in some way with WWW or Amit Raizada. SOF, ¶ 20. They proceeded to obtain the entry of the Default Judgment against WWW and Fodor on April 27, 2016. SOF, ¶ 21.

Soon after getting the Default Judgment, Blevins' employment counsel forwarded a copy of it to Blevins and informed her that their "ongoing, active participation" in the matter had ended. SOF, ¶ 22. Despite having the Default Judgment, neither Blevins, her employment counsel, nor anyone else on her behalf made any effort to utilize any post-judgment discovery methods or processes in an attempt to force WWW to provide information or documents regarding its assets or any potential fraudulent transfers. SOF, ¶ 23. Blevins took no action through, or otherwise attempted to utilize, any court process to attempt to execute, levy, or otherwise collect on the Default Judgment with WWW until she filed a Motion for Order for Hearing in Aid of Execution on May 14, 2018. SOF, ¶ 24. Over two years had passed from the time she obtained the Default Judgment until that Motion was filed in the Johnson County Case. *Id.*

Blevins made no mention of any potentially or allegedly fraudulent transfers related to the Default Judgment in any pleading or other document filed with any court until she filed her Redacted Motion for Garnishment and Suggestions in Support Thereof on December 31, 2018 in the Johnson County Case. SOF, ¶ 25. She did not move to clarify or lift the stay as to SJ until March 28, 2019, and did not bring her action to avoid the allegedly fraudulent transfers until she filed her Exceptions and Claims on November 14, 2019. *See* Motion for Clarification of Stay Order Included in the Stipulated Asset Freeze Between the Parties and/or to Lift the Stay for Purpose of Allowing Garnishment of the Court Appointed Receiver Over the Assets of SJ Partners, LLC (Doc. 223) *and* Garnishor's Exceptions and Claims (Doc. 259).

For ease of reference, a timeline summarizing the relevant dates follows:

| **Date** | **Event** |
|---|---|
| 10/27/2014 | Final transfer from WWW to SJ |
| 2/12/2015 | Blevins files the Petition alleging her employment claim against WWW in Johnson County District Court |
| 8/6/2015 | Blevins' employment counsel advises her of "possible fraudulent transfer" from WWW to one or more third parties |
| 4/1/2016 | Blevins' employment counsel sends her a letter and memorandum summarizing their efforts to locate WWW assets and Amit Raizada; Blevins' employment counsel also sends a letter to Angela Correll as Controller of Spectrum Business Partners regarding Blevins' lawsuit and motion for entry of a default judgment |
| 4/27/2016 | Blevins obtains Default Judgment against WWW and Scott Fodor |
| 5/3/2016 | Blevins' employment counsel forwards a copy of the Default Judgment and advises her that their "ongoing, active participation" in the matter has ended |
| 5/14/2018 | Blevins files her Motion for Order for Hearing in Aid of Execution in the Johnson County Case |
| 12/31/2018 | Blevins files her Redacted Motion for Garnishment and Suggestions in Support Thereof in the Johnson County Case |
| 3/28/2019 | Blevins files her motion to clarify or lift the stay in this case |
| 11/14/2019 | Blevins files her Exceptions and Claims document in this case, stating her MUFTA claim against SJ for the first time |

The timeline shows Blevins' MUFTA claims, regardless of her particular theory of recovery, were extinguished long before she filed her Exceptions and Claims. The most recent allegedly fraudulent transfer took place on October 27, 2014. SOF, ¶ 8. Blevins' theory of an "insider transfer" under R.S. Mo. § 428.029.2 had a strict one-year period (i.e. no discovery rule

exception) before it was extinguished. *See* R.S. Mo. § 428.049(3). Blevins claim under this section to the last transfer at issue was extinguished on October 27, 2015.

Her remaining claims had a window of four years from the date of the transfer in which the claim could have been asserted. *See* R.S. Mo. §§ 428.024.1, 428.029.1 *and* 428.049. Therefore, Blevins was required to bring her MUFTA action no later than October 27, 2018 as to any claims regarding that latest possible transfer. All the other transfers at issue took place prior to October 27, 2014, which means any claims to those prior transfers were asserted even further past the time of their extinguishment. No matter the MUFTA theory, Blevins is too late, and the Court should enter summary judgment for the Receiver.

The basis for each claim, the applicable time period for extinguishment of the claim, and the date each claim was extinguished (as to the latest possible transfer) is summarized in the following chart:

| **MUFTA Section** | **Basis of Claim** | **Extinguishment Period** | **Date Claim Extinguished (as to latest possible transfer)** |
|---|---|---|---|
| § 428.024.1(1) | Actual intent to hinder, delay, or defraud any creditor of WWW | Within four years after the transfer was made, ***or, if later***<br><br>Within one year after the transfer was or could reasonably have been discovered by the claimant | October 27, 2018<br><br>April 27, 2017 (latest possible date under discovery rule; not later than four-year period above) |

| MUFTA Section | Basis of Claim | Extinguishment Period | Date Claim Extinguished (as to latest possible transfer) |
|---|---|---|---|
| § 428.024.1(2) | Without WWW receiving a reasonably equivalent value in exchange for the transfer, ***and***<br><br>WWW was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, ***or***<br><br>WWW intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due | Within four years after the transfer was made | October 27, 2018 |
| § 428.029.1 | WWW made the transfer without receiving a reasonably equivalent value in exchange, ***and***<br><br>WWW was insolvent at the time of the transfer, or became insolvent as a result of the transfer | Within four years after the transfer was made | October 27, 2018 |
| § 428.029.2 | Transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent | Within one year after the transfer was made | October 27, 2015 |

Blevins might argue that her actual fraud claim under R.S. Mo. § 428.024.1(1) should be subject to the one-year discovery exception under R.S. Mo. § 429.049(1). That exception only applies, however, if action is brought within one year after the transfer was or could reasonably have been discovered by Blevins. R.S. Mo. § 428.049(1). As demonstrated by the timeline of events, Blevins' employment counsel had investigated WWW, Amit Raizada, possibly related entities, and their potential assets in 2014 and 2015. SOF, ¶¶ 16-19. On August 6, 2015, they expressed their concerns about one or more possibly fraudulent transfers from WWW to Amit Raizada or other parties. SOF, ¶ 16. Blevins' Petition was never amended to assert fraudulent transfer claims against WWW. SOF, ¶ 13 Blevins obtained her Default Judgment against WWW and Scott Fodor on April 27, 2016, but her counsel informed her they would not be taking any

further action to collect on the judgment. SOF, ¶ 22. Despite having the Default Judgment in hand, no further action was taken on Blevins' behalf to engage in any post-judgment discovery or utilize any other formal collection methods through the court until May 14, 2018. SOF, ¶¶ 23-24. Blevins sat on her rights, and her MUFTA claims are extinguished as a result.

Plaintiffs with fraud claims under Missouri law have "the duty to make inquiry to discover the facts surrounding the fraud." *Graf v. Michaels*, 900 S.W.2d 659, 661 (Mo. App. S.D. 1995). "Where the means of discovery exist, the plaintiff will be deemed to have known of the fraud so as to begin the running of the statute." *Id.* (citation omitted). Through her pending employment claim, and certainly after obtaining the Default Judgment, there is no question Blevins had the means of discovering the facts regarding any allegedly fraudulent transfers. Those means existed long before a belated effort was made over two years after the judgment was entered, and almost three years after her employment counsel discussed their suspicions as to possibly fraudulent transfers. SOF, ¶¶ 21, 24-25. Even more glaring, Blevins already had a judgment—she had the ability to use the power of the court to enforce very particular and effective means of pre- and post-judgment discovery. The fact those means were never even attempted well beyond the one-year extinguishment period demonstrates Blevins did not satisfy her duty of inquiry so as to trigger the discovery exception in R.S. Mo. 428.049(1).

Blevins' belated efforts also highlight the triggering language for the discovery exception and its relation to the four-year extinguishment period. The statute provides that actual fraud claims under R.S. Mo. § 428.024.1(1) "within four years of the date of the transfer . . . or, ***if later***, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." R.S. Mo. § 428.049(1) (emphasis added). As noted above, the last possible allegedly fraudulent transfer occurred on October 27, 2014, which means the four-year claim

window ended on October 27, 2018. SOF, ¶ 8. Blevins and her counsel were made aware of, and were concerned with, suspected fraudulent transfers no later than August 6, 2015. SOF, ¶ 16. The latest possible date on which the time period for the discovery exception began to run was April 27, 2016, the date Blevins obtained the Default Judgment. SOF, ¶ 21. One year from that date was April 27, 2017, which is not later than October 27, 2018. Thus, the one-year discovery exception was not actually triggered by the statutory language.

Blevins might also assert that some prior pleading filed in the Johnson County Case should be considered the "action" brought under MUFTA for purposes of determining the extinguishment of her claims. R.S. Mo. § 428.049. MUFTA's extinguishment statute provides that "[a] claim for relief or cause of action with respect to a fraudulent transfer [under MUFTA] is extinguished unless ***action is brought*** [within the time periods for each theory of recovery]." *Id.* (emphasis added).

No Missouri courts have ruled on the meaning of "action is brought" under the Uniform Fraudulent Transfer Act, but they have held that "[t]he interpretation of other courts can provide guidance in analyzing an act based upon a uniform act." *Curtis v. James*, 459 S.W.3d 471, 475 (Mo. App. E.D. 2015) (citation omitted). In *Shelcon Constr. Group, LLC v. Haymond*, 187 Wash. App. 1038 (Wash. Ct. App. May 27, 2015), the Washington Court of Appeals found that the "cause of action" is "the set of facts arguably demonstrating a fraudulent transfer," while the "'action' that must be brought is the legal proceeding to set aside the fraudulent transfers." *Id.* at 6. "The legal proceeding, or 'action,' the statute refers to is an action ***under the UFTA***," and not an underlying lawsuit. *Id.*

Blevins filed certain pleadings in the Johnson County Case related to post-judgment discovery and collection matters, but none of those documents could be considered an "action" under MUFTA. SOF, ¶¶ 23-25. First, she admits that none of these pleadings even mentioned the

possibility of fraudulent transfers until her Redacted Motion for Garnishment and Suggestions in Support Thereof on December 31, 2018. SOF, ¶ 25. Even if this filing could be construed as an "action" under MUFTA, which the Court should not, it did not state a "cause of action" as to SJ Partners, LLC. *Id.* Second, these filings were made in a state court case to which SJ Partners, LLC was never a party, either prior to or after it was made a Receivership Defendant. There can be no legitimate argument that an "action" can be brought under MUFTA in a state court employment case where the alleged transferee (SJ) was not impleaded, and never had the opportunity answer the action or otherwise assert any defenses. Finally, even if the Court were to somehow interpret the Redacted Motion for Garnishment against WWW in the Johnson County Case to be an "action" against SJ under MUFTA, it was still filed too late. Blevins' MUFTA claims against SJ had already been completely extinguished on October 27, 2018.

Blevins has simply waited far too long to assert her fraudulent transfer claims against SJ. Those claims only exist pursuant to the provisions of MUFTA, and the statute provides strict time periods for the ability to assert such claims. Blevins' MUFTA claims have been extinguished, and the Court should enter summary judgment for the Receiver disposing of them.

**2. <u>Even if Blevins' constructive fraud claims have not been extinguished, she cannot establish any of the transfers were constructively fraudulent</u>**

Blevins claims have been completely extinguished. However, if the Court nonetheless allows Blevins to proceed with some or all of her claims, the Receiver is still entitled to summary judgment as to all her constructive fraud claims. Blevins must establish, as a vital element of each of those theories of recovery, that WWW did not receive "a reasonably equivalent value in exchange" for the transfers see seeks to avoid and recover. *See* R.S. Mo. §§ 428.024.1(2), 428.029.2. As explained below, WWW actually received ***more*** than reasonably equivalent value

for the transfers Blevins seeks to recover, and her constructive fraud claims should be denied on that basis alone.

"Reasonably equivalent value" is not defined in MUFTA. *See* R.S. Mo. § 428.009 *and* *Higgins v. Ferrari*, 474 S.W.3d 630, 640 (Mo. App. W.D. 2015). Generally speaking, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." R.S. Mo. § R.S. Mo. § 428.019.1. "[C]onstructive fraud is concerned with the underlying economic realities of the situation." *Higgins*, 474 S.W.3d at 642. The fundamental determination is "whether a transaction effectively undermined the position of creditors." *Id.* at 641. "If the debtor's net worth is maintained, creditors cannot challenge a transfer as constructively fraudulent." *Id.* (citations omitted).

Unlike some situations where there are questions regarding the value of assets or property exchanged, or the nature of and intent behind the transactions in question, the only transfers at issue in this case involve the payment of well-documented funds. The extensive history and economic reality of the transfers from SJ to WWW, and from WWW to SJ, are straightforward and undisputed. On or about December 29, 2011, SJ made a large, initial cash contribution to WWW with a $440,000 payment. SOF, ¶¶ 7-8. It subsequently made an additional cash investment in WWW of $200,000 on or about June 28, 2012. SOF, ¶ 8. In exchange for this influx of capital, SJ received a 14.55% membership interest in WWW. SOF, ¶¶ 9-10. As a member of WWW, SJ began receiving regular, monthly distributions—initially in the amount of $4,000 each month, which were then increased to $5,820 per month after its additional investment in June 2012. SOF, ¶ 8. These distributions continued until late 2014, when it received a final transfer of $116,400. *Id.*

SJ invested a total of $640,000 in WWW, and only received a total of $274,260 in exchange for the value it provided to WWW. SOF, ¶ 8. When looking at the substance of the financial transactions at issue, as noted in *Higgins*, this is far from a situation where funds were transferred from WWW to SJ without consideration. *Higgins*, 474 S.W.3d at 641. While intent to defraud is not necessary in establishing a constructive fraud claim, "the intent of the parties is relevant as it bears on the underlying question of whether reasonably equivalent value was exchanged." *Id.* (citation omitted). There is no evidence the investment by SJ into WWW and the subsequent distributions made by WWW to SJ were made for anything other legitimate business purposes. SOF, ¶¶ 8-11 *and Higgins*, 474 S.W.3d at 641. There is no evidence any of these transfers were made with the specific purpose to avoid creditors. Furthermore, the final transfer was made on October 27, 2014, over three months prior to the filing of Blevins' Petition asserting her employment claim. SOF, ¶¶ 8, 13. There is no evidence SJ, as a minority member of WWW, was even aware of Blevins or her employment claim at the time of any transfers from WWW.

Even considering the final transfer, SJ provided ***far more*** than reasonably equivalent value to WWW in exchange for the distributions it received from WWW. To establish a constructive fraud claim, Blevins bears the burden to prove that WWW made the transfers at issue "without receiving a reasonably equivalent value in exchange." R.S. Mo. §§ 428.024.1 *and* 428.029.1. Rather than being able to meet such a burden, the evidence demonstrates quite the opposite. For these reasons, the Court should enter summary judgment against Blevins and in the Receiver's favor as to all of Blevins' constructive fraud claims under R.S. Mo. §§ 428.024.1(2) and 428.029.1.

**3. <u>By her own admission, Blevins was not a "present creditor" until January 2014</u>**

Two of the theories asserted by Blevins for avoiding the transfers from WWW to SJ require her to show she was a "present creditor." *See* Garnishor's Exceptions and Claims (Doc. 259), pg.

3, ¶¶ 6, 7 *and* R.S. Mo. § 428.029. Each subsection of § 428.029 allows for a transfer to be avoided only for a "creditor whose ***claim arose before*** the transfer was made . . . ." R.S. Mo. § 428.029. Blevins alleges her "claim against WWW arose in approximately January, 2014." *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 4. Thus, at a minimum, Blevins has admitted she cannot recover any transfers prior to January 2014 under either theory in § 428.029. The Court should enter summary judgment limiting her potential recovery pursuant to that section's theories to only those transfers made after January 2014.

## CONCLUSION

The last transfer at issue in this case was received by SJ on October 27, 2014. Any fraudulent transfer claims were extinguished by October 27, 2018. Blevins had suspicions regarding WWW, Amit Raizada, and one or more potentially fraudulent transfers no later than August 2015. Even after obtaining a judgment against WWW in April 2016, Blevins waited over two years to discover more information or otherwise enforce her Default Judgment. Her claims were extinguished long before she filed her Exceptions and Claims in this case on November 14, 2019.

Even if Blevins' MUFTA claims had not been extinguished, she cannot establish any constructive fraud claims. SJ contributed almost $400,000 more in value to WWW than it ever received in return. The "reasonably equivalent value" equation is backwards in this case. SH took the transfers in good faith as an investor in and minority member of WWW, and the Receiver should not be forced to turn over any funds transferred from WWW given the evidence and timeline of events.

Based on the foregoing arguments and authorities, the Receiver respectfully requests that the Court grants its Motion for Summary Judgment and dismiss Blevins' fraudulent transfer claims against SJ Partners, LLC in their entirety.

Dated: January 31, 2020

Respectfully submitted,

GEIGER PRELL
BUSINESS DISPUTES

By *_/s/ Benjamin Prell__________*

Matthew T. Geiger MO # 50071
Benjamin R. Prell MO # 55654
10000 College Blvd., Suite 100
Overland Park, Kansas 66210
913-661-2430 (telephone)
913-362-6729 (facsimile)
mgeiger@geigerprell.com
bprell@geigerprell.com

ATTORNEYS FOR THE RECEIVER

**CERTIFICATE OF SERVICE**

I certify that I electronically filed these Suggestions in Support of the Receiver's Motion for Summary Judgment with the Clerk of the Court on January 31, 2020 using the CM/ECF system, which will serve a copy by electronic means on all counsel of record.

*/s/ Benjamin Prell*
Attorney for the Receiver