**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, Plaintiff, | ) | |
| v. | ) | Case No. 4:14-cv-00789-SRB |
| RICHARD F. MOSELEY, SR., et al, Defendants. | ) | |

**KENDAL BLEVINS' MOTION FOR SUMMARY JUDGMENT WITH SUGGESTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Kendal Blevins ("Blevins" or "Movant"), the Movant herein, by and through her counsel, Kenneth N. Caldwell, of Caldwell Law Firm, P.C. and moves this court for Summary Judgment pursuant to Fed. R. Civ. P. 56. This Motion is based on the following undisputed facts:

## A. FACTS

1. That SJ Partners, LLC ("SJ") is a Missouri limited liability company. [Undisputed; The court may take judicial notice of this fact from these receivership proceedings.]

2. That Thomas McNamara was appointed as Temporary Receiver for SJ on September 9, 2014 in Case No. 4:14-00789-CV-W-DW. [See Response to Request for Admissions ("RRFA"), **Ex. A**, No. 1].

3. That Thomas McNamara is still, as of this date, the Receiver for SJ. [Undisputed; The court may take judicial notice of this fact from these receivership proceedings.]

4. The Receiver created a balance sheet for SJ as of September 13, 2014. Said document is identified as [REC_0151 ("**Ex. B**") and was attached to the Preliminary Report of Temporary Receiver that he filed with the court on October 2, 2014 [Doc. No. 37-1, p. 31 of 98 and RRFA, **Ex. A**, No. 2].

5. REC_0151 contained a line item current asset for "WWW" of $558,808.00. [See RRFA, **Ex. A**, No. 3, and Ex. B.]

6. "WWW" is an acronym for Worldwide Wireless, LLC, a Kansas limited liability company. [Undisputed. The court may take judicial notice of this fact from these receivership proceedings.]

7. **Ex. C** is a K-1 from WWW to SJ for the year 2014. [See RRFA, **Ex. A**, No. 12 and 13, and **Ex. C**.]

8. As reported in WWW's **Ex. C** K-1, SJ was an "other LLC member" of WWW. [See **Ex. C**.]

9. That the Receiver for SJ did not transfer any SJ funds from the Receivership Estate to WWW after the Receiver's appointment in September, 2014. [The court may take judicial notice of this fact because it would have had to have approved the transfer and no such transfer was ever reported by the Receiver or approved by the Court.]

10. SJ's bank statements show that it received at least $145,500 from WWW in 2014. [See RRFA, **Ex. A**, No. 15].

11. That Blevins made a Charge of Discrimination against WWW on May 2, 2014 for acts of discrimination that occurred between Dec. 2013 and May, 2014 during which such time she was employed by WWW. [Undisputed, see **Ex. D**.][The court may also take judicial notice of the case in which Blevins obtained her Judgment against WWW in the District Court of Johnson County, Kansas Case No. 15C00911. [See **Ex. E**.][1]

12. That SJ by and through its Receiver admitted in its Answer to Blevins Garnishment Interrogatories admitted $274,260.00 was transferred from WWW to SJ. [See **Ex. F,** pgs 4-5].

[1] The Judgment was subsequently registered in Jackson County, Missouri as a Foreign Judgment in Case No. **1916-CV05622**

## B. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc*., 838 F.2d 268, 273 (8th Cir.1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc*., 853 F.2d 616, 618 (8th Cir.1988).

## C. ARGUMENTS

This is a garnishment in aid of execution proceeding accompanied by a separate claim for a remedy under Missouri's Uniform Fraudulent Transfer Act ("UFTA"). As a result, there are at least three (3) separate paths to recovery for Blevins. The first path is based on the Missouri garnishment statutes. The second path relates to Blevin's right to assert WWW's hypothetical rights against SJ. The

third path relates to the assertion of Blevin's own rights against SJ as allowed under the UFTA. Each is analyzed independently below.

### *1. APPLICATION OF MISSOURI'S GARNISHMENT STATUTES*

The first path comes from the straightforward application of Missouri's garnishment statutes. The Receiver admitted in his Answer to Garnishor's Interrogatories that SJ was in receipt of $274,260.00 that had been transferred from WWW. [See Statement of Undisputed Fact No. 12 above.] R.S. Mo. 525.200 governs what happens when "property, effects or money … are found in the hands of the garnishee …" In such circumstances, "the court or jury shall find what property or effects, and the value thereof, or what money are in his hands, and unless he discharge himself, as provided in section 525.070, by paying over or delivering the same to the sheriff, or unless he shall, within such time as the court shall direct, as provided in section 525.080, pay or deliver up such property, effects or money, or shall execute his bond for the payment or delivery thereof, then the court shall enter up judgment against the garnishee for the proper amount or value as found in money, and execution may issue forthwith to enforce such judgment."

Based on the above-referenced statute, SJ can discharge itself by paying over the funds or executing a bond, which it has not done, or alternatively "the court shall enter judgment against the garnishee for the proper amount or value as found in

money and execution may issue forthwith to enforce such judgment." R.S. Mo. 525.200.

R.S. Mo. 525.080 has consistent language and provides as follows: "1. If it appear that a garnishee, at or after his or her garnishment, was possessed of any property of the defendant, or was indebted to him or her, the court, or judge in vacation, may order the delivery of such property, or the payment of the amount owing by the garnishee, to the sheriff, into court, or to the attorney for the party on whose behalf the order of garnishment was issued, at such time as the court may direct; or may permit the garnishee to retain the same, upon his or her executing a bond to the plaintiff, with security, approved by the court, to the effect that the property shall be forthcoming, or the amount paid, as the court may direct. Upon a breach of the obligation of such bond, the plaintiff may proceed against the obligors therein, in the manner prescribed in the case of a delivery bond given to the sheriff."

Since the Receiver for SJ has admitted that SJ has received $274,260.00 since 2012, and given that it holds funds in at least that amount now, the court should enter judgment in Blevins' favor for said amount.

The Receiver notes on page 5 of his Answers to Garnishee Interrogatories that SJ issued a check to Raizada Group, LP for $200,000.00 in June, 2012 to increase its investment in WWW to 14.55%. Although that is an interesting side note, SJ is

not entitled to offset the amounts that it paid to third parties against the $276,260.00 it received from WWW.

Furthermore, an argument that past investments constituting giving value has been deemed "specious" by at least one bankruptcy court. See *In re James River Coal Co*., 360 B.R. 139 (Bankr. E.D. Va. 2007) citing *O'Donnell v. Royal Bus. Group, Inc*. (In Re: *Oxford Homes, Inc*., 180. B.R. 1, 11 (Bankr D. Me 1995)("[D]efendants' claim that Royal 'gave value' when it invested in Oxford years before the LBO is specious. To accept the argument would be to license any liquidation of investment at any time, creditors be damned.") The holding in those cases is that value is to be measured at the time of the transaction at issue and not with reference to past events. *Id.* at 166.

2. ***BLEVINS IS SUBROGATED TO WWW'S RIGHTS AGAINST SJ***

Chapter 525, Mo. Rev. Stat, and Rule 90 of the Missouri Rules of Civil Procedure govern garnishment proceedings. *Moore Auto. Group, Inc. v. Goffstein*, 301 S.W.3d 49, 53 (Mo. banc 2009). The judgment creditor ("Blevins") is said to be allowed to stand in the shoes of the judgment debtor, in this case WWW. *Wenneker v. Physicians Multispecialty*, 814 SW 2d 294, 296 (Mo. 1991). A garnishment proceeding is, in essence, an action by the judgment debtor ("WWW") for the benefit of the judgment creditor ("Blevins") which is brought against a third party, the garnishee ("SJ"), who holds the assets of the judgment debtor. *Id*. at 296. Blevins,

an attaching judgment creditor, is subrogated to the rights of WWW and can recover to the same extent that the judgment debtor might recover. *Id* at 296; *Parkville Fed. Sav. Bank v. Md. Nat'l Bank*, 343 Md. 412, 418 (1996); *Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am.*, 368 Md. 608, 623 (2002); *Transpacific Tire & Wheel Inc. v. Orteck Int'l, Inc*. (D. Md. 2012). Garnishment in aid of execution is an incidental remedy by which a judgment creditor may collect [upon an existing] judgment by reaching the judgment debtor's property in the hands of a third party. *Allen v. Bryers* (Mo. Ct. App. 2015) citing *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 112 (Mo. Ct. App. 2012).

Blevins carries the initial burden to prove that SJ was indebted to the judgment debtor ("WWW"), either at the time the writ was served, or at some time thereafter before the return date of the writ. *Mississippi Valley Trust Co. v. Francis*, 186 S.W.2d 39, 41 (Mo. Ct. App. 1945). Blevins must merely point out the facts which would enable the judgment debtor to maintain a suit against the garnishee. *South Central Securities Co. v. Vernon et al*., 54 S.W.2d 416, 420 (Mo. Ct. App. 1932). If the garnishee holds no money or property of the defendant and owes him nothing recoverable by action, the garnishee is under no liability to the garnishment creditor." *Cusick v. Cusick*, 201 S.W.2d 437 (Mo. Ct. App. 1947).

Even viewing the facts most favorably to SJ, Blevins is entitled to judgment against SJ as a matter of Missouri law. The facts in this case show that WWW would

have had a valid unjust enrichment claim against SJ. The essential elements of an unjust enrichment claim are: (1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit.'" *Cent. Parking Sys. of Mo., LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 498 (Mo. Ct. App. 2017), quoting *Holliday Inv., Inc. v. Hawthorn Bank*, 476 S.W.3d 291, 295 (Mo. Ct. App. 2015). *Roberts v. Robert*s (Mo. Ct. App. 2019); See *Transpacific Tire & Wheel Inc. v. Orteck Int'l, Inc*. (D. Md. 2012) ("Thus, if Orteck International were to sue the Garnishees to get those items back, its likely action would be in the nature of unjust enrichment").

In this case, the facts support a claim for unjust enrichment for the $274,260.00 transferred from WWW to SJ. (See Undisputed Fact No. 12). SJ has knowledge of and has admitted the receipt of the funds. (See Stipulated Fact No. 12).

SJ will likely argue that it "gave value" to WWW for the funds it received from 2012-2014, by transferring funds in the past to the Raizada Group, L.P. to purchase an interest in WWW. In other words, they argue that some amount of "past consideration" given to a third party constitutes giving value WWW. Even if SJ had transferred funds to WWW instead of a third party, the argument would have no merit. At least two bankruptcy courts have rejected that argument and deemed it

specious. See *In re James River Coal Co*., 360 B.R. 139 (Bankr. E.D. Va. 2007) citing *O'Donnell v. Royal Bus. Group, Inc*. (In Re: *Oxford Homes, Inc*., 180. B.R. 1, 11 (Bankr D. Me 1995)("[D]efendants' claim that Royal 'gave value' when it invested in Oxford years before the LBO is specious. To accept the argument would be to license any liquidation of investment at any time, creditors be damned.") The holding in those cases is that value is to be measured at the time of the transaction at issue and not with reference to past events. *Id.* at 166.

With the holding in the above two bankruptcy cases in mind, Blevins, standing in the shoes of WWW, satisfies all of requirements of an unjust enrichment claim, i.e. SJ gave no value for the transfers it received regardless of the reason that the transfers took place. As a result, it would be inequitable to allow SJ to retain the funds and they must be returned to WWW and turned over to Blevins pursuant to her writ of garnishment.

It should also be noted that with respect to this path to recovery, only the unjust enrichment claim need be analyzed and not at what point in time that Blevins made her legal claim or received a judgment against WWW. Blevins garnished SJ, SJ has funds that rightfully belonged to WWW, and Blevins has a valid Judgment against WWW.

The record before this Court demonstrates that no genuine issue of fact is in dispute, and Missouri law entitles Blevins to judgment against SJ on the funds it received from WWW.

### *3. <u>BLEVINS FRAUDULENT TRANSFER CLAIM</u>.*

The third path to recovery is based on Missouri's version of the UFTA. Pursuant to the UFTA § 428.024 Mo. Rev. Stat.:

> 1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
> 2. In determining actual intent under subdivision (1) of subsection 1 of this section, consideration may be given, among other factors, to whether:
> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

The UFTA dictates the use of an inferential `badges of fraud' approach to determine whether a debtor acted with "intent to hinder, delay, or defraud." *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 861, 113 U.S.P.Q.2d 2116 (8th Cir. 2015) citing *In re Addison,* 540 F.3d 805, 811-12 (8th Cir. 2008) (applying Minnesota's statutory badges of fraud to both state and federal fraudulent transfer claims). The UFTA provides a list of factors or "badges of fraud" which a court may look to for help in determining actual intent." Id. at 861 citing *In re Sholdan*, 217 F.3d 1006, 1008 (8th Cir. 2000). Once a claimant establishes several badges of fraud, the claimant is entitled to a presumption of fraudulent intent. *Cole v. Strauss,* Case No. 2:13-cv-04200-NKL (W.D. Mo. 2014). The burden then shifts to the transferee to prove some legitimate supervening purpose for the transfers at issue. *Id.* at p.13 citing *Kelly v. Armstrong,* 141 F.3d 799, 802 (8th Cir. 1998). The burden which shifts...is not a burden of going forward with the evidence requiring the [transferee] to explain away natural inferences, but a burden of proving that he has not committed the objectionable acts with which he has been charged." *Cole v. Strauss,* Case No. 2:13-cv-04200-NKL, p.13 (W.D. Mo. 2014) citing *In re Northgate Computer Systems, Inc*., 240 B.R. 328, 360 (Bankr. D. Minn. 1999); accord *In re Eubanks*, 444 B.R. 415, 424-25 (Bankr. E.D. Ark. 2010).

In this matter, Blevins can establish most of the badges of fraud related to the transactions at issue. First and foremost, the transfers were from WWW to SJ, one of its Members. [See Statement of Undisputed Fact No. 8.] A "member" is generally considered an insider of an LLC. *In re Aluminum*, 657 F.3d 507, 66 Collier Bankr. Cas.2d 577, 55 Bankr. Ct. Dec. 111 (7th Cir. 2011); *The Bur-Cam Group LLC v. Pearson,* 1:10-bk-00946MDF (Bankr. M.D. Pa. 2010). And in this case, the reason SJ was involved in a Receivership to start with is because it was part of a criminal enterprise controlled by Defendant Moseley who was a Member of SJ.

Second, before the transfer was made or obligation was incurred, the judgment debtor had been sued or threatened with suit based on an EEOC claim filed by Blevins. [See Undisputed Fact No. 11]. This is apparent because Blevins' claims arose from her employment between December, 2013 and May, 2014. [See Undisputed Fact No. 11].

Third, the transfers, along with transfers to other members, was of substantially all of WWW's assets. This may be deduced from a review of the Receivership reports for SJ in which the Receiver never reported the discovery of the actual "current assets" reported in SJ's balance sheet from September 14, 2014. The Receiver for SJ first reported the "current asset"[2] value of WWW to be

1. [2] WWW was classified as a "Current Asset" on SJ's 2014 balance sheet which is generally considered to mean cash and other assets that are expected to be converted to cash within a year.

$558,808.00. [See Undisputed Fact No. 5] Since the Receiver never reported the discovery of those assets or the liquidation of those assets to be reported to the court from September, 2014 to January, 2020, one can surmise that the funds distributed to SJ in 2014, was the final distribution of any of WWW's assets. Otherwise, the Receiver would have discovered and reported to the court the subsequent discovery of assets belonging to SJ.

Fourth, SJ cannot establish that it gave any value for the monetary transfers that it received. As a matter of law, value is to be measured at the time of the transaction at issue and not with reference to past events. *In re James River Coal Co*., 360 B.R. 139 (Bankr. E.D. Va. 2007) citing *O'Donnell v. Royal Bus. Group, Inc*. (In Re: *Oxford Homes, Inc*., 180. B.R. 1, 11 (Bankr D. Me 1995)("[D]efendants' claim that Royal 'gave value' when it invested in Oxford years before the LBO is specious. To accept the argument would be to license any liquidation of investment at any time, creditors be damned.") So, unless the Receiver/SJ can introduce admissible evidence that it gave value to WWW without reference to events that may or may not have occurred years earlier, there is no evidence before the court that it gave any value whatsoever for the funds received by it from WWW. [See Statement of Fact No. 12].

Fifth, there is evidence that WWW was insolvent or became insolvent shortly after the transfer was made or the Blevin's claim was incurred. This may also be deduced as a matter of logical reasoning from the fact that the Receiver never located and/or liquidated the WWW asset reported on SJ's balance sheet even though he has had over five (5) years to do so. Alternatively, as it is apparent from the criminal conviction of a Member of SJ, the Members of SJ had reason to siphon what funds they could from WWW through SJ before the Receiver was appointed.

Sixth, the transfer(s) occurred during a time that WWW's Members and SJ's Members were being pursued for both civil and criminal infractions. The Blevins claim arose during the same time frame. [See undisputed Fact No. 11]. There were several reasons for the Defendants to try to abscond without paying creditors.

Blevins' having established many of the badges of fraud under the Missouri UFTA is therefore entitled to a presumption of fraudulent intent, thereby shifting to SJ, the heavy burden to prove that the transfers were received in good faith and for value. SJ can't prove either. Since SJ was part of a criminal enterprise (which is undisputed) SJ can't prove that it received the funds in good faith. (This is not a test of the good faith or good intentions of the Receiver but a test of the good faith of SJ that was controlled by the Defendant who has been criminally convicted and put in prison.) Moreover, SJ cannot prove that it gave value, which as a matter of law, must be measured at the time of the transfers from WWW to SJ.

It would be difficult for anyone to negate the inference of fraud created by the badges of fraud pointed out by Blevins. It is even more difficult for the Receiver to do so being only an outsider looking in and as further evidenced by the Receiver's lack of any personal knowledge of events that may have occurred prior to his appointment. He was merely appointed as a neutral party to gather the assets of SJ for later distribution to creditors not to investigate the business conducted, or actions taken, by SJ prior to or after his appointment. As a result, Blevins has established her claim under the UFTA.

**D. CONCLUSION**

Blevins has provided three paths to recovery on her garnishment and fraudulent transfer claims. There is no genuine issue of material fact that would preclude the entry of Judgment in her favor and Blevins respectfully requests that Judgment be entered accordingly.

DATED this 31st day of January, 2020.

Respectfully submitted,

/s/ Kenneth N. Caldwell
KENNETH N. CALDWELL, ESQ.
MO Bar # 65443; NV Bar #3692
CALDWELL LAW FIRM, P.C.
1201 NW Briarcliff Pkwy, 2nd Floor
Kansas City, MO 64116
Phone: (816) 535-1001
Fax: (702) 548-9796

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this document with the Clerk of the Court on January 31, 2020 using the CM/ECF system.

/s/ Kenneth N. Caldwell
Kenneth N. Caldwell