**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-cv-00789-SRB |
| | ) | |
| RICHARD F. MOSELEY, SR., et al., | ) | |
| | ) | |
| Defendant. | ) | |

**RECEIVER'S REDACTED SUGGESTIONS IN OPPOSITION TO**
**KENDAL BLEVINS' MOTION FOR SUMMARY JUDGMENT**


GEIGER PRELL
BUSINESS DISPUTES
Matthew T. Geiger MO # 50071
Benjamin R. Prell MO # 55654
10000 College Blvd., Suite 100
Overland Park, Kansas 66210
913-661-2430 (telephone)
913-362-6729 (facsimile)
mgeiger@geigerprell.com
bprell@geigerprell.com

ATTORNEYS FOR THE RECEIVER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... 3

INTRODUCTION .......... 5

RESPONSE TO BLEVINS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS .. 5

STATEMENT OF ADDITIONAL MATERIAL FACTS .......... 8

ARGUMENT AND AUTHORITIES .......... 15

1. Blevins cannot garnish any entity other than the sole judgment debtor in her underlying employment case: Worldwide Wireless, LLC .......... 15

2. Blevins has never asserted an "unjust enrichment" claim—it is procedurally-deficient, time-barred, and fatally flawed .......... 18

3. Summary judgment on Blevins' MUFTA claims should be denied because (a) they have been completely extinguished; (b) SJ gave *more* than reasonably equivalent value in exchange for the transfers it received; (c) there are, at the very least, significant factual disputes regarding Blevins' alleged "badges of fraud"; and (d) SJ took the transfers in good faith and for (more than) a reasonably equivalent value .......... 24

a. Blevins' MUFTA claims have been completely extinguished .......... 24

b. SJ gave *more* than reasonably equivalent value in exchange for the transfers it received 32

c. Blevins' cannot establish her asserted "badges of fraud," or, at the very least, there are substantial, genuine issues of material fact regarding the asserted badges .......... 34

d. SJ took the transfers in good faith and for a reasonably equivalent value, rendering the transfers not voidable under R.S. Mo. § 428.044.1 .......... 44

CONCLUSION .......... 45

## TABLE OF AUTHORITIES

**CASES**


*Allison v. Tyson*, 123 S.W.3d 196, 200 (Mo. App. W.D. 2003) .................................................. 18

*Baisch & Skinner, Inc. v. Bair*, 507 S.W.3d 627, 629 (Mo. App. E.D. 2016) .............................. 16

*Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389 (Mo. App. E.D. 2010) ............... 35

*Bueneman v. Zykan*, 52 S.W.3d 49, 54 (Mo. App. E.D. 2001) ............................................. 34, 35

*Central Parking System of Missouri, LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 498 (Mo. App. E.D. 2017) ........................................................................................................ 22

*Cole v. Strauss*, Case No. 2:13-cv-04200-NKL, 2014 WL 4055787 (W.D. Mo. Aug. 15, 2014) 35

*Curtis v. James*, 459 S.W.3d 471, 475 (Mo. App. E.D. 2015) .................................................... 30

*Dearborn Street Bldg. Assocs., LLC v. D & T Land Holdings, LLC*, Case No. 1:07-cv-1056, 2009 WL 3011245 (W.D. Mich. Sept. 16, 2009) ........................................................................... 37

*Graf v. Michaels*, 900 S.W.2d 659, 661 (Mo. App. S.D. 1995) .................................................. 29

*Higgins v. Ferrari*, 474 S.W.3d 630, 640 (Mo. App. W.D. 2015) ....................... 32, 33, 34, 35, 40

*In re Acequia*, 34 F.3d 800, 806 (9th Cir. 1994) ......................................................................... 35

*In re Longview Aluminum*, 657 F.3d 507, 509-10 (7th Cir. 2011) .............................................. 37

*Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998) .............................................................. 35

*Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949, 953 (Mo. App. E.D. 1984) 18

*Miller v. North American Ins. Co.*, 195 S.W.3d 529, 531 (Mo. App. W.D. 2006) ................. 18, 19

*O'Donnell v. Royal Bus. Group, Inc. (In re Oxford Homes, Inc.*), 180 B.R. 1, 11 (Bankr. D. Me. 1995) ............................................................................................................................. 22, 23

*Painters Dist. Council No. 2 v. Sustainable Constr. Group, LLC*, Case No. 4:12-cv-00492 ERW, 2016 WL 4124110 (E.D. Mo. Aug. 3, 2016) ............................................................................. 17

*Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015) ....................................... 35

*Royal Forest Condo. Owners' Ass'n v. Kilgore*, 416 S.W.3d 370, 373 (Mo. App. E.D. 2013) ... 20

*Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 166 (Bankr. E.D. Va. 2007) ............................................................................................................................. 22, 23

*Scott v. King*, 510 S.W.3d 887, 893 (Mo. App. E.D. 2017) ........................................................ 20

*Shelcon Constr. Group, LLC v. Haymond*, 187 Wash. App. 1038 (Wash. Ct. App. May 27, 2015) ..................................................................................................................................... 31

*Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000) ............................................ 39

*Target Corp. v. Amerson*, 326 Ga. App. 734, 755 S.E.2d 333 (Ga. Ct. App. 2014) .............. 41, 44

*The Bur-Cam Group, LLC v. Pearson (In re Pearson)*, Case No. 1:10-bk-00946MDF, 2010 WL 3956762, *2-3 (Bankr. M.D. Pa. Oct. 7, 2010) .......................................................................... 37

*Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1317-18 (M.D. Fla. 2015) .................. 36

*Wenneker v. Physicians Multispecialty Group, Inc.*, 814 S.W.2d 294, 296 (Mo. banc 1991) ..... 19

*Wentz v. Price Candy Co.*, 352 Mo. 1, 4, 175 S.W.2d 852, 854 (1943) ...................................... 25

**STATUTES**

11 U.S.C. § 101(31)(B) ............................................................................................ 37

11 U.S.C. § 523 ......................................................................................................... 37

11 U.S.C. § 548 ......................................................................................................... 22, 35

K.S.A. § 17-76,102 ................................................................................................... 22

R.S. Mo. § 428.009 ................................................................................................... 32, 36

R.S. Mo. § 428.014 ................................................................................................... 44

R.S. Mo. § 428.019 ................................................................................................... 32

R.S. Mo. § 428.024 ............................................................ 24, 27, 28, 30, 32, 34, 38, 40, 44

R.S. Mo. § 428.029 ........................................................................... 24, 25, 27, 28, 32, 34

R.S. Mo. § 428.044 ................................................................................................... 44

R.S. Mo. § 428.049 ........................................................................... 24, 25, 27, 28, 29, 30

R.S. Mo. § 516.100 ................................................................................................... 20

R.S. Mo. § 516.120(1) .............................................................................................. 20, 21

R.S. Mo. § 525.200 ................................................................................................... 16

**OTHER AUTHORITIES**

Black's Law Dict., "abscond" (11th ed. 2019) ............................................................ 42

Unif. Fraudulent Transfer Act § 9, cmt. (1) ................................................................ 25

**RULES**

Fed. R. Civ. P. 15 ..................................................................................................... 19, 20

Mo. R. Civ. P. 90.07(c) ............................................................................................. 18, 19

Mo. R. Civ. P. 90.10(b) ............................................................................................. 18, 19

Thomas W. McNamara, in his capacity as Court-appointed Receiver (the "Receiver"), respectfully submits the following Suggestions in Opposition to Kendal Blevins' Motion for Summary Judgment (Doc. 282) ("Blevins' Motion"). For the following reasons, Blevins' Motion should be denied in all respects.

## INTRODUCTION

Kendal Blevins ("Blevins") has asked the Court to enter summary judgment in her favor (1) for an order of garnishment that would directly garnish funds from Receivership Defendant SJ Partners, LLC ("SJ"), who is not a judgment debtor and was never even a party to her underlying employment claim, (2) awarding her a judgment on a procedurally inappropriate, time-barred, and factually unsupported unjust enrichment claim she asserted against SJ for the first time in her Motion, and (3) awarding a judgment on her claims under Missouri's Uniform Fraudulent Transfer Act ("MUFTA"), R.S. Mo. § 428.005, *et seq.*, which were long ago extinguished, and for which she provides little, if any, supporting evidence to meet her high burden under MUFTA. There are numerous, significant, and ultimately fatal legal and factual flaws to each of Blevins' argued bases for summary judgment. For the reasons explained below, the Court should deny summary judgment on all grounds asserted by Blevins, and enter summary judgment disposing of her MUFTA claims as explained in the Receiver's Motion for Summary Judgment (Doc. 280) and Suggestions in Support thereof (Doc. 281).

## RESPONSE TO BLEVINS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted.

4. Controverted as unsupported by the evidence cited. As the Receiver stated in his response to Blevins' Request for Admission No. 3, the date September 13, 2014 does not appear on the document referenced (REC_0151). *See* Blevins' Motion, Exhibit A, pgs. 2-3. That document was generated on or about July 25, 2019 from QuickBooks data obtained by the Receiver from SJ Partners, LLC, which the Receiver understands was, to the best of his knowledge, current as of March 31, 2014. *Id.* While the SJ Balance Sheet at page 31 of the Preliminary Financial Report (Doc. 37-1) was dated September 13, 2014, it was generated from the same QuickBooks data that had not been updated since March 31, 2014. *See* Preliminary Financial Report and Initial Accounting Records Review (Doc. 37-1), pg. 7. Furthermore, the Receiver has no personal knowledge as to any of the underlying information or numbers entered into SJ's QuickBooks files, and cannot confirm or deny the accuracy, completeness, and/or basis for any such information or numbers. Thus, the Receiver has never "created a balance sheet for SJ," as Blevins asserts. Blevins has provided the Court with no admissible evidence as to any of the underlying information or numbers in REC_0151 or page 31 of the Preliminary Financial Report (Doc. 37-1), which Blevins seeks to establish as undisputed fact.

5. Controverted as unsupported by the evidence cited. REC_0151 was generated on or about July 25, 2019 from QuickBooks data obtained by the Receiver from SJ Partners, LLC, which the Receiver understands was, to the best of his knowledge, current as of March 31, 2014. *Id.* Furthermore, the Receiver has no personal knowledge as to any of the underlying information or numbers entered into SJ's QuickBooks files, and cannot confirm or deny the accuracy, completeness, and/or basis for any such information or numbers. While the document speaks for itself, Blevins assertion that a "current asset" for "WWW" was SJ's ownership interest in WWW valued at $558,000, or any explanation or basis for such an alleged valuation, is not supported by

any admissible evidence. Blevins has not provided the Court with any admissible evidence as to any of the underlying information or numbers in REC_0151 that she seeks to establish as undisputed fact.

6. Uncontroverted that various parties have referred to the entity Worldwide Wireless, LLC at various times as "WWW."

7. Controverted as unsupported by the evidence cited. Contrary to Blevins' assertion and citation, the Receiver did not admit that the document attached to her Motion as Exhibit C (WW 0033) is a true, accurate, and complete copy of a 2014 Schedule K-1 issued by WWW to SJ and received by the Receiver. *See* Blevins' Motion, Exhibit A, pg. 5, Response No. 12. Instead, the Receiver identified REC_70463 – 70469 as a true, accurate, and complete copy of the 2014 Schedule K-1 issued by WWW to SJ and received by the Receiver. *See* Receiver's Exhibit R10.

8. Controverted as unsupported by the evidenced cited for the reasons cited in the Receiver's response to Blevins' Statement of Fact No. 7 above. Uncontroverted that the box for "Limited partner other LLC member" is checked on REC_70464. *See* Receiver's Exhibit R10.

9. Uncontroverted.

10. Uncontroverted that the Missouri Bank statements for SJ Partners, LLC's account (ending in -29) and an email from Missouri Bank dated November 8, 2014 show the receipt of $145,500 from January 22, 2014 until November 8, 2014 when the account was frozen. Controverted as unsupported by the evidence cited the implication that SJ received anything more than $145,500 from WWW in 2014.

11. Controverted as unsupported by the evidence cited that Blevins' Charge of Discrimination "made" prior to the point at which it was received by the Equal Employment Opportunity Commission. *See* Receiver's Statement of Additional Material Facts, ¶ 3, Exhibit R2.

The EEOC did not receive Blevins' Charge of Discrimination until May 5, 2014. *Id.* Furthermore, to the extent Blevins' asserts that she "made" her Charge of Discrimination such that WWW had actual or constructive knowledge of the Charge as of May 2 or May 5, 2014, such an assertion is unsupported by the evidence cited. Uncontroverted that Blevins' Charge of Discrimination speaks for itself.

12. Uncontroverted.

**STATEMENT OF ADDITIONAL MATERIAL FACTS**

1. On or about April 25, 2014, Kendal Blevins ("Blevins") entered into a Contract for Legal Services with the law firm of Ensz & Jester, P.C. "to prosecute [Blevins'] claim for compensation and/or damages against Worldwide Wireless, LLC and all other persons or entities considered liable as a result of an occurrence . . . ." *See* Contract for Legal Services (Exhibit R1), KB-E&J-00001194.

2. The Contract for Legal Services described the "occurrence" as "inappropriate conduct directed toward Kendal Blevins by Scott Fodor and Worldwide Wireless employees as part of Blevins' employment with Worldwide Wireless." *Id.*

3. On or about May 5, 2014, Blevins filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging harassment by Scott Fodor, who she stated was a regional manager for Worldwide Wireless, LLC ("WWW") and her supervisor. *See* EEOC Charge of Discrimination (Exhibit R2), KB-E&J-000022-23.

4. On September 9, 2014, the Court entered its Temporary Restraining Order with Asset Freeze (Doc. 8) temporarily appointing Thomas McNamara as Receiver in this case.

5. On October 3, 2014, the Court entered its Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver, Expedited Discovery and Other Equitable Relief (the "Injunction") (Doc. 40), which confirmed McNamara's appointment as Receiver.

6. SJ Partners, LLC ("SJ") is a defendant covered by the Injunction. *See* Injunction (Doc. 40, page 4).

7. Beginning on or about December 29, 2011, SJ had purchased and held a minority ownership interest in Worldwide Wireless, LLC. *See* relevant pages of 2011 Partnership Tax Return filed by SJ (Exhibit R7), Federal Statements, Statement 3, REC 195, REC 0203; Missouri Bank account statements (Exhibit R8), REC 0001, REC 0023 - 25 *and* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory Nos. 1 and 2, pgs. 4-5.

8. The following funds were transferred between SJ and WWW between SJ's initial investment on December 29, 2011 and the final transfer from WWW to SJ on October 27, 2014:

| Date | Event | Transfer from SJ to WWW | Transfer from WWW to SJ |
|---|---|---|---|
| 12/29/2011 | Check from SJ to WWW | $440,000.00 | |
| 1/13/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 2/16/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 3/15/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 4/17/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 5/15/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 6/19/2012 | Deposit from WWW to SJ | | $4,000.00 |
| 6/28/2012 | Check to Raizada Group, LP to increase investment to 14.55% | $200,000.00 | |
| 7/12/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 8/14/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 9/14/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 10/16/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 11/16/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 12/17/2012 | Deposit from WWW to SJ | | $5,820.00 |
| 1/17/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 2/15/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 3/14/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 4/12/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 5/21/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 6/24/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 7/17/2013 | Deposit from WWW to SJ | | $5,820.00 |

| Date | Event | Transfer from SJ to WWW | Transfer from WWW to SJ |
|---|---|---|---|
| 8/15/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 9/18/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 10/17/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 11/21/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 12/18/2013 | Deposit from WWW to SJ | | $5,820.00 |
| 1/22/2014 | Deposit from WWW to SJ | | $5,820.00 |
| 4/11/2014 | Deposit from WWW to SJ | | $5,820.00 |
| 5/16/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 6/24/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 7/23/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 8/19/2014 | Deposit from WWW to SJ | | $2,910.00 |
| 9/24/2014 | Deposit from WWW to SJ | | $5,820.00 |
| 10/27/2014 | Deposit from WWW to SJ | | $116,400.00 |
| | **TRANSFER TOTALS:** | **$640,000.00** | **$274,260.00** |

*See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* Missouri Bank account statements and email (Exhibit R8), REC 0001 – 0081, 0659 – 0660.

9. SJ invested a total of $640,000 in WWW. *See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* relevant pages of Missouri Bank account statements (Exhibit R8), REC 0001, REC 0023 – 25, REC 0034 – 36.

10. SJ provided a payment of $440,000 to Worldwide Wireless, LLC on or about December 29, 2011. *See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* relevant pages of Missouri Bank account statements (Exhibit R8), REC 0001. Pursuant a Unit Purchase Agreement between Worldwide Wireless, LLC, Raizada Group, LP, and SJ Partners, LLC and dated July 1, 2012, it subsequently acquired an additional 4.55% in WWW. *See* Unit Purchase Agreement (Exhibit R16).

11. In exchange for its capital contribution and payment, SJ received a total membership interest of 14.55% in WWW as of 2014. *See* Receiver/Garnishee's Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 2, pg. 5 *and* 2014

Schedule K-1 issued by WWW to SJ (Exhibit R10), REC_70463-70469. The Raizada Group, LLC still retained its overwhelming majority interest of [redacted] of the company. *See* Relevant pages of WWW's 2014 federal tax return (Exhibit R18), WW 0013.

12. SJ only received a total of $274,260 in funds transferred from WWW as return on its investment. *See* Receiver/Garnishee's Amended Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-5 *and* Missouri Bank account statements and email (Exhibit R8), REC 0001 – 2, 0023 – 81, 0659 – 0660. Two of those distributions or transfers of funds from WWW were received shortly after the Receiver's appointment: (1) $5,820 on or about September 24, 2014, and (2) $116,400 on or about October 27, 2014. *See* Missouri Bank email (Exhibit R8), REC 0659 – 0660.

13. According to its 2014 federal tax return, WWW provided total distributions in the amount of [redacted] to its members in 2014. *See* Relevant pages of WWW's 2014 federal tax return (Exhibit R18), WW 0010. Consistent with its ownership interest in the company, SJ received $145,500 of those distributions. *See* 2014 Schedule K-1 issued by WWW to SJ (Exhibit R10), REC_70464.

14. On October 2, 2014, the Receiver filed his Preliminary Report of Temporary Receiver (Doc. 37), with its Preliminary Financial Report attached as Exhibit A. *See* Preliminary Report of Temporary Receiver (Docs. 37 and 37-1). The Preliminary Financial Report noted the SJ accounting records available for review "start 8/31/11 with the last entry made 3/31/14." *See* Preliminary Financial Report (Doc. 37-1), pg. 7. SJ's Balance Sheet and Profit & Loss Statement contained in the report were generated with SJ's QuickBooks data current as of March 31, 2014 entered by person(s) other than Receiver. *See* Preliminary Financial Report (Doc. 37-1), pgs. 31-

32 *and* Receiver's Answers and Objections to Garnishor's First Requests for Admission (Exhibit R11), pgs. 2-4, Responses Nos. 2-9.

15. The Receiver has not received any other transfers, assets, or other items of any value from WWW since the final transfer from WWW on or about October 27, 2014. *See* Receiver/Garnishee's Amended Answers to Judgment Creditor's Interrogatories (Exhibit R9), Answer to Interrogatory No. 1, pgs. 4-6, Missouri Bank account statements (Exhibit R8), REC 0001 – 2, 0023 - 81, 0659 - 0660, *and* Receiver's Answers and Objections to Garnishor's First Requests for Admission (Exhibit R11), Responses Nos. 19-21, 23, and 31.

16. On January 5, 2015, an EEOC investigator wrote a letter to Blevins informing her that the EEOC's "review of the evidence in [her] file indicates that it is insufficient to conclude that an EEOC statute was violated." *See* Relevant pages from Blevins' EEOC file (Exhibit R17), KB-E&J-000031, 000057. The letter further advised her that if the EEOC did not hear from her or she did not provide "any additional information that would change its determination . . . , then [her] charge will be closed" and she would be issued a right to sue notice. *Id.*

17. On January 19, 2015, the EEOC issued a Notice of Right to Sue to Blevins. *See* Relevant pages from Blevins' EEOC file (Exhibit R17), KB-E&J-000031-34.

18. Blevins filed her Petition in Johnson County District Court on February 12, 2015 alleging employment discrimination against Worldwide Wireless, LLC and Scott Fodor (the "Johnson County Case"). *See* Petition (Exhibit R12) *and* Docket Sheet, Johnson County Case (Exhibit R13). Her Petition was never amended. *Id.*

19. SJ Partners, LLC was not a defendant in the Johnson County Case and was not mentioned in Blevins' Petition. *See* Docket Sheet, Johnson County Case (Exhibit R13), Petition (Exhibit R12), *and* Default Judgment Entry (Doc. 223-1).

20. Blevins served WWW a copy of the Summons and Petition in the Johnson County Case through the Kansas Secretary of State. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Default Judgment Entry (Doc. 223-1).

21. On August 6, 2015, Blevins' employment counsel, James Ensz of Ensz & Jester, sent her an email advising her that they would have difficulty in collecting any judgment against WWW and Fodor. *See* 8-6-15 email from Ensz to Blevins (Exhibit R3), KB-E&J-0000921. Blevins' counsel believed WWW was "out of business," and had "no reason to believe [Fodor had] assets of any significance justifying the expense necessary" to serve him, prosecute the case, and collect on any judgment against him. *Id.*

22. Ensz & Jester recommended to Blevins that she obtain a default judgment against WWW and notify an allegedly affiliated or related entity named Spectrum Business Ventures, "which seems to have more than a passing interest in protecting Worldwide's assets." *See* Exhibit R3.

23. Blevins' counsel further advised her "[t]here very well could have been a fraudulent transfer of assets from Worldwide to Spectrum and/or its wealthy owner Amit Razahda [sic] that the latter will want to protect from a potential fraudulent conveyance action following a potential judgment against Worldwide in this case." *See* Exhibit R3.

24. On or about April 1, 2016, Blevins' employment counsel sent her a letter and memorandum summarizing some efforts undertaken by the firm to locate Amit Raizada. *See* 4-1-16 letter and memorandum from Ensz to Blevins (Exhibit R4), KB-E&J-00009-11.

25. On or about the same day, Blevins' employment counsel sent a letter to WWW, care of Angela M. Correll, Controller for Spectrum Business Ventures, Inc. *See* 4-1-16 letter from Ensz to Correll (Exhibit R5), KB-E&J-000014. The letter referenced Blevins' lawsuit against

WWW and enclosed copies of the Petition, Blevins' Motion for Default Judgment, and Notice of Hearing. *Id.*

26. On April 27, 2016, Blevins obtained an uncontested default judgment against Worldwide Wireless, LLC for alleged employment discrimination (the "Default Judgment"). *See* Default Judgment Entry (Doc. 223-1). The Default Judgment included actual damages in the amount of $150,000, punitive damages in the amount of $150,000 and attorneys' fees in the amount of $120,000. (Doc. 223-1). No judgment was sought or entered against SJ Partners, LLC in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Default Judgment (Doc. 223-1).

27. On or about May 3, 2016, Ensz & Jester sent a letter to Blevins enclosing a copy of the Default Judgment. *See* 5-3-16 letter from Ensz to Blevins (Exhibit R6), KB-E&J-00001 – 5. The letter informed her that Ensz & Jester's "ongoing, active participation in this matter" was ending with the delivery of the Default Judgment. *Id.*

28. Despite obtaining the Default Judgment, Blevins took no action to utilize any post-judgment discovery methods or processes through Johnson County District Court, or any other court, until she filed a Motion for Order for Hearing in Aid of Execution on May 14, 2018 in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13) *and* Kendal Blevins' Responses to Receiver's First Requests for Admission to Garnishor, Response No. 3 (Exhibit R14).

29. Despite obtaining the Default Judgment, Blevins took no action through, or otherwise attempted to utilize, any court process to attempt to execute, levy, or otherwise collect on the Default Judgment until she filed a Motion for Order for Hearing in Aid of Execution on May 14, 2018 in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13)

*and* Kendal Blevins' Responses to Receiver's First Requests for Admission to Garnishor, Response No. 4 (Exhibit R14).

30. Blevins made no mention of any potentially or allegedly fraudulent transfers related to the Default Judgment in any pleading or other document filed with any court until she filed her Redacted Motion for Garnishment and Suggestions in Support Thereof on December 31, 2018 in the Johnson County Case. *See* Docket Sheet, Johnson County Case (Exhibit R13); Kendal Blevins' Responses to Receiver's First Requests for Admission to Garnishor, Response No. 5 (Exhibit R14); *and* Redacted Motion for Garnishment and Suggestions in Support Thereof (Exhibit R15).

31. Blevins filed her Motion for Clarification of Stay Order Included in the Stipulated Asset Freeze Between the Parties and/or to Lift the Stay for Purpose of Allowing Garnishment of the Court Appointed Receiver Over the Assets of SJ Partners, LLC in this case on March 28, 2019. *See* Motion for Clarification of Stay Order (Doc. 223).

32. Blevins filed her Exceptions and Claims in this case, which was the first pleading stating her claim for relief or cause of action under the Missouri Uniform Fraudulent Transfer Act ("MUFTA"), R.S. Mo. § 428.005, *et seq.*, on November 14, 2019. *See* Garnishor's Exceptions and Claims (Doc. 259).

## ARGUMENT AND AUTHORITIES

### 1. <u>Blevins cannot garnish any entity other than the sole judgment debtor in her underlying employment case: Worldwide Wireless, LLC</u>

Blevins begins her Motion by making the outlandish claim that "the straightforward application of Missouri's garnishment statutes" somehow allows her to directly garnish SJ Partners, LLC for a judgment entered against a different, separate entity: Worldwide Wireless, LLC. *See* Blevins Motion, pg. 5. Blevins was never employed by SJ, never made any allegations

against SJ, never made SJ a party to her employment lawsuit, and did not obtain a judgment against SJ. *See* Receiver's Statement of Additional Material Facts, ("SAMF"), ¶¶ 1-2, 18, 26. Missouri garnishment law cannot be applied, in a purportedly "straightforward" manner or otherwise, to ignore the reality of her lawsuit, the parties, and the judgment she managed to obtain against WWW, and only WWW.

Blevins' argument begins with, and seems to be entirely founded upon, a selective quotation from R.S. Mo. § 525.200 regarding the "property, effects or money . . . found in the hands of the garnishee . . . ." *See* Blevins' Motion, pg. 5 (quoting selected language from R.S. Mo. § 525.200). The language Blevins chose to replace with her first ellipsis demonstrates the fundamental flaw in her argument: "If, upon such trial, it shall appear that property, effects or money ***of the defendant*** are found in the hands of the garnishee . . . ." R.S. Mo. § 525.200 (emphasis added). Thus, Blevins asks the Court to ignore or simply skip over the integral portion of Missouri garnishment law that requires the property being garnished to be that of the person or entity against whom she has obtained a judgment. *See, e.g., Baisch & Skinner, Inc. v. Bair*, 507 S.W.3d 627, 629 (Mo. App. E.D. 2016) (citations omitted) (recognizing that "garnishment is a statutory remedy which enables a judgment creditor (the garnishor) to collect the amount of the judgment by seizing ***the judgment debtor's property*** when it is in the hands of a third party (the garnishee).")

Blevins sued and obtained her Default Judgment against Worldwide Wireless, LLC, not SJ Partners, LLC. SAMF, ¶¶ 18, 26. Blevins does not argue that SJ Partners, LLC was a defendant in her employment lawsuit, that she obtained a judgment against it, or that it should somehow be considered a defendant or judgment debtor by the Court. There is no support in the evidence or Missouri law for such arguments.

There is also no evidence that SJ was simply "holding" or in possession of property that actually belonged to WWW. SJ was a 14.55% member of WWW. SAMF, ¶ 11. SJ invested a total of $640,000 to obtain this interest. SAMF, ¶ 9-11. There is no evidence that the transfers from WWW to SJ were anything other than distributions to which SJ was entitled as a member of WWW. SAMF, ¶ 8, 13. These transfers became SJ's property as soon as each transfer was completed, and WWW had no claim to or interest in the funds it had distributed to one of its members. SAMF, ¶ 13.

Blevins cannot simply ignore this reality and proceed directly to garnishing SJ's (now the Receivership's) funds. Allowing a judgment creditor to reach out and garnish funds transferred to any third parties would obviate the need for Missouri's Uniform Fraudulent Transfer Act, and the necessary elements and proof for piercing the corporate veil under Missouri law. *See, e.g., Painters Dist. Council No. 2 v. Sustainable Constr. Group, LLC,* Case No. 4:12-cv-00492 ERW, 2016 WL 4124110 (E.D. Mo. Aug. 3, 2016) (discussing need to establish fraudulent conveyance and corporate veil piercing remedies after garnishment against judgment debtor has failed). These legal principles would be rendered completely meaningless if the Court were to grant Blevins a judgment that permitted her to garnish SJ's funds without establishing any of their necessary prerequisites. Blevins acknowledged this reality herself when she asserted her MUFTA claims through her Exceptions and Claims against SJ. *See* Garnishor's Exceptions and Claims (Doc. 259). The Court should deny her Motion on her completely unsupported "direct garnishment" theory, and rule that Blevins must establish by clear and convincing evidence all the necessary elements of her MUFTA claims.

## 2. **<u>Blevins has never asserted an "unjust enrichment" claim—it is procedurally-deficient, time-barred, and fatally flawed</u>**

Blevins second ground for summary judgment is based on an unjust enrichment claim that the Court must reject for three reasons: (1) the claim is procedurally deficient because Blevins has never asserted an unjust enrichment claim; (2) even if the claim had been asserted appropriately, it is time-barred by the applicable statute of limitations; and (3) even if Blevins could bring such a claim, it fails on its legal and factual merits. For any, or all, of these reasons, the Court should prevent Blevins from bringing a belated, improper, and unsupported claim, and deny entry of summary judgment on an "unjust enrichment" claim she seeks to assert on WWW's behalf for her own benefit.

"A garnishment action is a creature of statute in derogation of common law." *Allison v. Tyson*, 123 S.W.3d 196, 200 (Mo. App. W.D. 2003). "Chapter 525 of the Revised Missouri Statutes and Rule 90 of the Missouri Rules of Civil Procedure govern garnishment proceedings." *Miller v. North American Ins. Co.*, 195 S.W.3d 529, 531 (Mo. App. W.D. 2006). "Strict compliance with the statutes and rules governing such actions is, therefore, essential to confer and support jurisdiction." *Id.* Rule 90.07(c) required Blevins to file exceptions in response to the Receiver's interrogatory answers "asserting any objections to the answers and ***asserting all grounds upon which recovery is sought*** against the garnishee." Mo. R. Civ. P. 90.07(c) (emphasis added) *and Miller*, 195 S.W.3d at 531. These exceptions stand "in place of the petition and like any other pleading must contain the grounds upon which recovery is sought." *Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949, 953 (Mo. App. E.D. 1984) (citation omitted). If exceptions are filed, "the court or jury shall determine all controverted issues ***raised by the garnishor's exceptions*** to the garnishee's answers to interrogatories . . . ." Mo. R. Civ. P. 90.10(b) (emphasis added).

The only ground upon which Blevins seeks recovery is a single count pursuant to Missouri's Uniform Fraudulent Transfer Act. *See* Garnishor's Exceptions and Claims (Doc. 259). Blevins did not assert any other claims in her Exceptions. *Id.* She never sought leave to amend her Exceptions pursuant to Fed. R. Civ. P. 15 or Missouri garnishment procedure. Instead, for the first time in this litigation, she attempts to assert an unjust enrichment claim against SJ on behalf of WWW through a motion for summary judgment. *See* Blevins' Motion, pgs. 7-11. Such an effort is procedurally inappropriate, belated, and prohibited by Missouri garnishment law. If Blevins sought to assert an unjust enrichment claim, she was required to state the grounds for such a claim in her Exceptions. Mo. R. Civ. P. 90.07(c) *and Miller*, 195 S.W.3d at 531. She did not do so, and did not make any effort to amend her Exceptions. Thus, the Court cannot and should not determine any controverted issues under such a theory of recovery. Mo. R. Civ. P. 90.10(b). It should deny Blevins summary judgment on her unjust enrichment theory for this reason alone.

Blevins argues that, as judgment creditor, she "stands in the shoes of the judgment debtor," WWW, for purposes of asserting an unjust enrichment claim against SJ. *See* Blevins' Motion, pg. 7 (citing *Wenneker v. Physicians Multispecialty Group, Inc.*, 814 S.W.2d 294, 296 (Mo. banc 1991)). As *Wenneker* makes clear, however, a judgment creditor acquires no rights against the garnishee in excess of what the judgment debtor might have had, and the Receiver may assert the same defenses against Blevins as it could have against WWW. *Wenneker*, 814 S.W.2d at 296 (citation omitted). Had Blevins actually asserted an unjust enrichment claim on behalf of WWW in her Exceptions, the Receiver would have asserted an affirmative defense of the applicable statute of limitations (among others).

"[A]n action for unjust enrichment is based on an implied or quasi-contractual obligation." *Scott v. King*, 510 S.W.3d 887, 893 (Mo. App. E.D. 2017) (citing *Royal Forest Condo. Owners'*

*Ass'n v. Kilgore*, 416 S.W.3d 370, 373 (Mo. App. E.D. 2013)). Section 516.120(1) provides a five-year statute of limitations for all actions "upon contracts, obligations or liabilities, express or implied . . . ." R.S. Mo. § 516.120(1). An unjust enrichment claim accrues "when the damage resulting therefrom is sustained and is capable of ascertainment." *Royal Forest,* 416 S.W.3d at 373-74 (quoting R.S. Mo. § 516.100). Blevins is standing in the shoes of WWW, and there is no question WWW knew of the "damage" it was "sustaining" at the same time it made each allegedly "unjust" transfer. Thus, under Missouri law Blevins had five years from the date of each of the transfers she claims unjustly enriched SJ at the expense of WWW to bring such a claim. *See id. and Scott*, 510 S.W.3d at 893.

Blevins never sought leave to amend her Exceptions to properly assert an unjust enrichment claim. If the Court were to somehow allow and give effect to such an amendment through the filing of Blevins' Motion for Summary Judgment, her unjust enrichment claim would be time-barred by operation of R.S. Mo. § 516.120(1). The undisputed facts demonstrate the final transfer at issue took place on October 27, 2014. SAMF, ¶ 8. Blevins filed her Motion on January 31, 2020, more than five years after the final transfer, and even longer for each of the previous transfers she seeks to recover. SAMF, ¶ 8. Even if the Court were to consider Blevins' Motion a proper amendment under Fed. R. Civ. P. 15, and further find that such an amendment related back to her original pleading, the limitations period would still bar her unjust enrichment claim. *See* Fed. R. Civ. P. 15(c). Blevins filed her Exceptions on November 14, 2019, which was also after the five-year limitations period for the final transfer at issue, and even further beyond the period for the previous transfers from WWW to SJ. *See* Garnishor's Exceptions and Claims (Doc. 259) and SAMF, ¶ 8. Whatever interpretation or treatment the Court gives to Blevins' belated and inappropriately asserted unjust enrichment claim, it should deny her summary judgment and enter

judgment in favor of the Receiver on the ground that such a claim is barred by operation of R.S. Mo. § 516.120(1).

Even if the Court were to ignore these substantial procedural and timeliness issues, Blevins' unjust enrichment claim also fails on its legal and factual merits. Blevins argues that the "facts in this case show that WWW would have had a valid unjust enrichment claim against SJ." *See* Blevins' Motion, pg. 9. Contrary to Blevins' assertion, to be entitled to summary judgment she does not simply have to demonstrate there was a "valid," cognizable, or colorable claim. As she recognized earlier in her Motion, Blevins bears the burden of proof in establishing such a claim, and summary judgment is only appropriate when there is no genuine issue of material fact and she is entitled to judgment as a matter of law. *Id.* at pg. 4. The minimal evidence presented by Blevins falls far short of meeting the requisite standard.

As Blevins notes, an unjust enrichment claim under Missouri law requires her to establish that the enrichment was at the expense of WWW, and that it would be unjust to allow SJ to retain the benefit. *See* Blevins' Motion, pg. 9 (citations omitted). In this case, the only "benefits" SJ received were the transfers made by WWW. SAMF, ¶ 8. As demonstrated by WWW's tax return, in 2014 SJ received $145,500 in distributions. SAMF, ¶ 13. During 2014, WWW made a total of [redacted] in distributions. SAMF, ¶ 13. Thus, as is apparent on the face of the tax return, and far from being "unjust," SJ received 14.55% of the distributions from WWW in 2014 because it had a 14.55% ownership interest in WWW.

In asserting her claim, Blevins asks the Court to ignore the reality that SJ was a member of WWW, and was therefore entitled to its appropriate share of any distributions made by the company. *See, e.g.,* K.S.A. § 17-76,102 (governing the allocation of distributions for Kansas

limited liability companies[1]). Furthermore, Missouri law is clear that recovery for an unjust enrichment claim "is not the actual amount of the enrichment, but the amount of the enrichment which . . . would be unjust for one party to retain." *Central Parking System of Missouri, LLC v. Tucker Parking Holdings, LLC,* 519 S.W.3d 485, 498 (Mo. App. E.D. 2017) (citation omitted). Blevins makes no effort to explain how it would be "unjust" to WWW for SJ to retain 14.55% of WWW's 2014 distributions when it owned 14.55% of the company. There is no evidence that SJ received distributions in excess of the amount to which it was entitled. Even if Blevins had claimed SJ received more in distributions than it should have, she would only be able to recover whatever amount she could show SJ had unjustly retained.

Rather than addressing how it would be "unjust" for a member of a limited liability company to receive and retain its rightful percentage of distributions, Blevins appears to apply a "reasonably equivalent value" analysis to SJ's relationship with WWW. *See* Blevins' Motion, pg. 9-10. This kind of analysis is, of course, ***not*** part of the test or elements for an unjust enrichment claim. *See* Blevins' Motion, pg. 9 (citing *Central Parking,* 519 S.W.3d at 498). Nonetheless, she cites two bankruptcy cases examining claims under 11 U.S.C. § 548 for the purported general principle "that value is to be measured at the time of the transaction at issue and not with reference to past events." *Id.* at pg. 10 (citing *Schnelling v. Crawford (In re James River Coal Co.),* 360 B.R. 139, 166 (Bankr. E.D. Va. 2007) *and O'Donnell v. Royal Bus. Group, Inc. (In re Oxford Homes, Inc.*), 180 B.R. 1, 11 (Bankr. D. Me. 1995)).

The *Oxford Homes* case, which the court relied upon in *James River*, featured a leverage buyout ("LBO") situation, which occurs with "the acquisition of a company (target corporation) in which a substantial portion of the purchase price paid for the stock of the target corporation is

[1] Although Blevins has asserted her unjust enrichment claim under Missouri law, WWW was a Kansas limited liability company, and its distributions therefore would have been governed by Kansas law.

borrowed and where the loan is secured by the target corporation's assets." *In re Oxford Homes*, 180 B.R. at 8 (citations omitted). The court summarized the circular nature of an LBO:

> The Oxford LBO bears the hallmarks of a classic fraudulent transfer. Oxford parted with substantial funds. It received nothing in return. Immediately after the transfer, it ran out of cash and, within seven months, filed for bankruptcy protection.

*Id.* at 9. Furthermore, the courts in *Oxford Homes* and *James River* both emphasized "the value of any past consideration" and "[t]he presence or absence of reasonably equivalent value" are questions of fact. *In re James River*, 360 B.R. at 167 *and In re Oxford Homes*, 180 B.R. at 9 ("Whether a transaction is within or without the purview of fraudulent transfer principles is a function of its own facts and the applicable law.")

To the extent the bankruptcy cases cited by Blevins are at all applicable to her unjust enrichment claim, there is no evidence the relationship between WWW and SJ could be considered a leveraged buyout, or a remotely similar transaction. Contrary to Blevins' assertion, SJ's initial investment in WWW was a $440,000 check drawn from its Missouri Bank account and paid directly to "Worldwide Wireless, LLC." SAMF, ¶ 10. Unlike *Oxford Homes,* there is no evidence these funds were loaned to SJ, or that any such loan was secured by WWW's assets. *See In re Oxford Homes*, 180 B.R. at 8.

SJ subsequently increased its ownership percentage from 10% to 14.55% by paying Raizada Group an additional $200,000 for an additional 4.55% of WWW. SAMF, ¶ 10. WWW was a party to the sale of Raizada Group's additional ownership interest to SJ. *Id.* Blevins does not even assert a cognizable argument as to how these facts could possibly show that SJ's "enrichment" in receiving distributions to which it was entitled was "at the expense of [WWW]," or that it would be "unjust" to allow SJ to retain the distributions it had the legal right to enjoy through its investment in the company. She certainly has not met the considerable burden that

would entitle her to summary judgment on the claim. Even if the Court were to allow Blevins to proceed with an unjust enrichment claim in such an inappropriate, belated manner, and even if the Court were to find that Blevins was not time-barred in doing so, it should still deny Blevins summary judgment based on the lack of substantive merit to the claim.

**3. Summary judgment on Blevins' MUFTA claims should be denied because (a) they have been completely extinguished; (b) SJ gave *more* than reasonably equivalent value in exchange for the transfers it received; (c) there are, at the very least, significant factual disputes regarding Blevins' alleged "badges of fraud"; and (d) SJ took the transfers in good faith and for (more than) a reasonably equivalent value**

**a. Blevins' MUFTA claims have been completely extinguished[2]**

Through her Exceptions and Claims, Blevins is attempting to recover $140,200 in funds transfers made by WWW to SJ under Missouri's Uniform Fraudulent Transfer Act ("MUFTA"). *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 4 and pg. 4. Blevins asserts all four theories under MUFTA in a shotgun attempt to recover the transfers. *See* Garnishor's Exceptions and Claims (Doc. 259), pgs. 2-3, R.S. Mo. §§ 428.024 and 428.029, and Blevins' Motion, pgs. 11-12.

Regardless of the basis for her asserted recovery, Blevins' claims have been extinguished by operation of MUFTA's extinguishment section. R.S. Mo. § 428.049. MUFTA provides that

> [a] claim for relief or cause of action with respect to a fraudulent transfer . . . is extinguished unless action is brought:
>
> (1) Under [R.S. Mo. § 428.024.1(1)], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under [R.S. Mo. § 428.024.1(2) or § 428.029.1], within four years after the transfer was made or the obligation was incurred; or
>
> (3) Under [R.S. Mo. § 428.029.2], within one year after the transfer was made or the obligation was incurred.

[2] The following Section 3(a) of the Receiver's Suggestions in Opposition to Blevins' Motion is largely identical to Section 1, pages 9-17, of the Receiver's Suggestions in Support of his Motion for Summary Judgment (Doc. 281).

R.S. Mo. § 428.049.

Missouri courts have noted the subtle, but important, distinctions between ordinary statutes of limitation, and "statutes creating a right with a special limitation appended to the exercise of the right on the ground the special limitation extinguishes the right rather than extinguishing the remedy." *Wentz v. Price Candy Co.,* 352 Mo. 1, 4, 175 S.W.2d 852, 854 (1943). "In other words, where time is made the essence of the right created, the limitation is an inherent part of the statute out of which the particular right arises, so that there is no right of action whatsoever independent of the limitation, and a lapse of the statutory period operates to extinguish the right altogether." *Id.* (citations omitted). The purpose of the Uniform Fraudulent Transfer Act's extinguishment provision "is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy." Unif. Fraudulent Transfer Act § 9, cmt. (1) (citation omitted). Thus, MUFTA's extinguishment provision provides a strict bar to any claims falling outside the proscribed time periods.

The relevant dates establish that Blevins' MUFTA claims were extinguished long before she brought her claim for relief. The transfers between WWW and SJ began in 2011, with the final transfer from WWW to SJ taking place on October 27, 2014. SAMF, ¶ 8. Meanwhile, Blevins filed her Petition for her employment claim against WWW and Scott Fodor on February 12, 2015. SAMF, ¶ 18. Blevins' employment counsel researched WWW, its potential assets, and its owner Amit Raizada. SAMF, ¶¶ 21, 24. Her attorneys informed her they believed there might have been a fraudulent transfer from WWW to Raizada or other parties. SAMF, ¶ 21. Her counsel also sent a copy of the Petition and Blevins' motion for entry of a default judgment to Angela Correll, Controller for Spectrum Business Ventures, Inc., another business entity they believed

was affiliated in some way with WWW or Amit Raizada. SAMF, ¶ 25. They proceeded to obtain the entry of the Default Judgment against WWW and Fodor on April 27, 2016. SAMF, ¶ 26.

Soon after getting the Default Judgment, Blevins' employment counsel forwarded a copy of it to Blevins and informed her that their "ongoing, active participation" in the matter had ended. SAMF, ¶ 27. Despite having the Default Judgment, neither Blevins, her employment counsel, nor anyone else on her behalf made any effort to utilize any post-judgment discovery methods or processes in an attempt to force WWW to provide information or documents regarding its assets or any potential fraudulent transfers. SAMF, ¶ 28. Blevins took no action through, or otherwise attempted to utilize, any court process to attempt to execute, levy, or otherwise collect on the Default Judgment with WWW until she filed a Motion for Order for Hearing in Aid of Execution on May 14, 2018. SAMF, ¶ 29. Over two years had passed from the time she obtained the Default Judgment until that motion was filed in the Johnson County Case. *Id.*

Blevins made no mention of any potentially or allegedly fraudulent transfers related to the Default Judgment in any pleading or other document filed with any court until she filed her Redacted Motion for Garnishment and Suggestions in Support Thereof on December 31, 2018 in the Johnson County Case. SAMF, ¶ 30. She did not move to clarify or lift the stay as to SJ until March 28, 2019, and did not bring her action to avoid the allegedly fraudulent transfers until she filed her Exceptions and Claims on November 14, 2019. *See* Motion for Clarification of Stay Order Included in the Stipulated Asset Freeze Between the Parties and/or to Lift the Stay for Purpose of Allowing Garnishment of the Court Appointed Receiver Over the Assets of SJ Partners, LLC (Doc. 223) *and* Garnishor's Exceptions and Claims (Doc. 259).

For ease of reference, a timeline summarizing the relevant dates follows:

| Date | Event |
|---|---|
| 10/27/2014 | Final transfer from WWW to SJ |
| 2/12/2015 | Blevins files the Petition alleging her employment claim against WWW in Johnson County District Court |
| 8/6/2015 | Blevins' employment counsel advises her of a "possible fraudulent transfer" from WWW to one or more third parties |
| 4/1/2016 | Blevins' employment counsel sends her a letter and memorandum summarizing their efforts to locate WWW assets and Amit Raizada; Blevins' employment counsel also sends a letter to Angela Correll as Controller of Spectrum Business Partners regarding Blevins' lawsuit and motion for entry of a default judgment |
| 4/27/2016 | Blevins obtains Default Judgment against WWW and Scott Fodor |
| 5/3/2016 | Blevins' employment counsel forwards a copy of the Default Judgment and advises her that their "ongoing, active participation" in the matter has ended |
| 5/14/2018 | Blevins files her Motion for Order for Hearing in Aid of Execution in the Johnson County Case |
| 12/31/2018 | Blevins files her Redacted Motion for Garnishment and Suggestions in Support Thereof in the Johnson County Case |
| 3/28/2019 | Blevins files her motion to clarify or lift the stay in this case |
| 11/14/2019 | Blevins files her Exceptions and Claims document in this case, stating her MUFTA claim against SJ for the first time |

The timeline shows Blevins' MUFTA claims, regardless of her particular theory of recovery, were extinguished long before she filed her Exceptions and Claims. The most recent allegedly fraudulent transfer took place on October 27, 2014. SAMF, ¶ 8. Blevins' theory of an "insider transfer" under R.S. Mo. § 428.029.2 had a strict one-year period (i.e. no discovery rule exception) before it was extinguished. *See* R.S. Mo. § 428.049(3). Blevins' claim under this section to the last transfer at issue was extinguished on October 27, 2015.

Her remaining claims had a window of four years from the date of the transfer in which the claim could have been asserted. *See* R.S. Mo. §§ 428.024.1, 428.029.1 *and* 428.049. Therefore, Blevins was required to bring her MUFTA action no later than October 27, 2018 as to any claims regarding that latest possible transfer. All the other transfers at issue took place prior to October 27, 2014, which means any claims to those prior transfers were asserted even further past the time of their extinguishment. No matter the MUFTA theory, Blevins is too late, and the Court should deny summary judgment for Blevins and enter summary judgment for the Receiver.

The basis for each claim, the applicable time period for extinguishment of the claim, and the date each claim was extinguished (as to the latest possible transfer) is summarized in the following chart:

| **MUFTA Section** | **Basis of Claim** | **Extinguishment Period** | **Date Claim Extinguished (as to latest possible transfer)** |
|---|---|---|---|
| § 428.024.1(1) | Actual intent to hinder, delay, or defraud any creditor of WWW | Within four years after the transfer was made, ***or, if later***<br><br>Within one year after the transfer was or could reasonably have been discovered by the claimant | October 27, 2018<br><br>April 27, 2017 (latest possible date under discovery rule; not later than four-year period above) |
| § 428.024.1(2) | Without WWW receiving a reasonably equivalent value in exchange for the transfer, ***and***<br><br>WWW was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, ***or***<br><br>WWW intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due | Within four years after the transfer was made | October 27, 2018 |
| § 428.029.1 | WWW made the transfer without receiving a reasonably equivalent value in exchange, ***and***<br><br>WWW was insolvent at the time of the transfer, or became insolvent as a result of the transfer | Within four years after the transfer was made | October 27, 2018 |
| § 428.029.2 | Transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent | Within one year after the transfer was made | October 27, 2015 |

Blevins might argue that her actual fraud claim under R.S. Mo. § 428.024.1(1) should be subject to the one-year discovery exception under R.S. Mo. § 428.049(1). That exception only

applies, however, if action is brought within one year after the transfer was or could reasonably have been discovered by Blevins. R.S. Mo. § 428.049(1). As demonstrated by the timeline of events, Blevins' employment counsel investigated WWW, Amit Raizada, possibly related entities, and their potential assets in 2014 and 2015. SAMF, ¶¶ 21-24. On August 6, 2015, they expressed their concerns about one or more possibly fraudulent transfers from WWW to Amit Raizada or other parties. SAMF, ¶ 21. Blevins' Petition was never amended to assert fraudulent transfer claims against WWW. SAMF, ¶ 18. Blevins obtained her Default Judgment against WWW on April 27, 2016, but her counsel informed her they would not be taking any further action to collect on the judgment. SAMF, ¶ 27. Despite having the Default Judgment in hand, no further action was taken on Blevins' behalf to engage in any post-judgment discovery or utilize any other formal collection methods through the court until May 14, 2018. SAMF, ¶¶ 28-30. Blevins sat on her rights, and her MUFTA claims are extinguished as a result.

Plaintiffs with fraud claims under Missouri law have "the duty to make inquiry to discover the facts surrounding the fraud." *Graf v. Michaels*, 900 S.W.2d 659, 661 (Mo. App. S.D. 1995). "Where the means of discovery exist, the plaintiff will be deemed to have known of the fraud so as to begin the running of the statute." *Id.* (citation omitted). Through her pending employment claim, and certainly after obtaining the Default Judgment, there is no question Blevins had the means of discovering the facts regarding any allegedly fraudulent transfers. Those means existed long before a belated effort was made over two years after the judgment was entered, and almost three years after her employment counsel discussed their suspicions as to possibly fraudulent transfers. SAMF, ¶¶ 21-22, 28-32. Even more glaring, Blevins already had a judgment—she had the ability to use the power of the court to enforce very particular and effective means of pre- and post-judgment discovery. The fact those means were never even attempted well beyond the one-

year extinguishment period demonstrates Blevins did not satisfy her duty of inquiry so as to trigger the discovery exception in R.S. Mo. § 428.049(1).

Blevins' belated efforts also highlight the triggering language for the discovery exception and its relation to the four-year extinguishment period. The statute provides that actual fraud claims under R.S. Mo. § 428.024.1(1) "within four years of the date of the transfer . . . or, ***if later***, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." R.S. Mo. § 428.049(1) (emphasis added). As noted above, the last possible allegedly fraudulent transfer occurred on October 27, 2014, which means the four-year claim window ended on October 27, 2018. SAMF, ¶ 8. Blevins and her counsel were made aware of, and were concerned with, suspected fraudulent transfers no later than August 6, 2015. SAMF, ¶ 21. The latest possible date on which the time period for the discovery exception began to run was April 27, 2016, the date Blevins obtained the Default Judgment. SAMF, ¶ 26. One year from that date was April 27, 2017, which is not later than October 27, 2018. Thus, the one-year discovery exception was not actually triggered by the statutory language.

Blevins might also assert that some prior pleading filed in the Johnson County Case should be considered the "action" brought under MUFTA for purposes of determining the extinguishment of her claims. R.S. Mo. § 428.049. MUFTA's extinguishment statute provides that "[a] claim for relief or cause of action with respect to a fraudulent transfer [under MUFTA] is extinguished unless ***action is brought*** [within the time periods for each theory of recovery]." *Id.* (emphasis added).

No Missouri courts have ruled on the meaning of "action is brought" under the Uniform Fraudulent Transfer Act, but they have held that "[t]he interpretation of other courts can provide guidance in analyzing an act based upon a uniform act." *Curtis v. James,* 459 S.W.3d 471, 475 (Mo. App. E.D. 2015) (citation omitted). In *Shelcon Constr. Group, LLC v. Haymond*, 187 Wash.

App. 1038 (Wash. Ct. App. May 27, 2015), the Washington Court of Appeals found that the "cause of action" is "the set of facts arguably demonstrating a fraudulent transfer," while the "'action' that must be brought is the legal proceeding to set aside the fraudulent transfers." *Id.* at *6. "The legal proceeding, or 'action,' the statute refers to is an action ***under the UFTA***," and not an underlying lawsuit. *Id.*

Blevins filed certain pleadings in the Johnson County Case related to post-judgment discovery and collection matters, but none of those documents could be considered an "action" under MUFTA. SAMF, ¶¶ 28-30. First, she admits that none of these pleadings even mentioned the possibility of fraudulent transfers until her Redacted Motion for Garnishment and Suggestions in Support Thereof on December 31, 2018. SAMF, ¶ 30. Even if this filing could be construed as an "action" under MUFTA, which it should not be, it did not state a "cause of action" as to SJ Partners, LLC. *Id.* Second, these filings were made in a state court case to which SJ Partners, LLC was never a party, either prior to or after it was made a Receivership Defendant. There can be no legitimate argument that an "action" can be brought under MUFTA in a state court employment case where the alleged transferee (SJ) was not impleaded, and never had the opportunity answer the action or otherwise assert any defenses. Finally, even if the Court were to somehow interpret the Redacted Motion for Garnishment against WWW in the Johnson County Case to be an "action" against SJ under MUFTA, it was still filed too late. Blevins' MUFTA claims against SJ had already been completely extinguished on October 27, 2018.

Blevins has simply waited far too long to assert her fraudulent transfer claims against SJ. Those claims only exist pursuant to the provisions of MUFTA, and the statute provides strict time periods for the ability to assert such claims. Blevins' MUFTA claims have been extinguished, and the Court should deny summary judgment for Blevins and enter judgment for the Receiver.

**b. SJ gave *more* than reasonably equivalent value in exchange for the transfers it received**[3]

Blevins' claims have been completely extinguished. However, if the Court nonetheless considers Blevins' arguments regarding her MUFTA claims, Blevins Motion should still be denied and the Receiver is still entitled to summary judgment as to all her constructive fraud claims. Blevins must establish, as a vital element of each of those theories of recovery, that WWW did not receive "a reasonably equivalent value in exchange" for the transfers see seeks to avoid and recover. *See* R.S. Mo. §§ 428.024.1(2), 428.029.2. As explained below, WWW actually received ***more*** than reasonably equivalent value for the transfers Blevins seeks to recover, and her constructive fraud claims should be denied on that basis alone.

"Reasonably equivalent value" is not defined in MUFTA. *See* R.S. Mo. § 428.009 *and Higgins v. Ferrari*, 474 S.W.3d 630, 640 (Mo. App. W.D. 2015). Generally speaking, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." R.S. Mo. § 428.019.1. "[C]onstructive fraud is concerned with the underlying economic realities of the situation." *Higgins*, 474 S.W.3d at 642. The fundamental determination is "whether a transaction effectively undermined the position of creditors." *Id.* at 641. "If the debtor's net worth is maintained, creditors cannot challenge a transfer as constructively fraudulent." *Id.* (citations omitted).

Unlike some situations where there are questions regarding the value of assets or property exchanged, or the nature of and intent behind the transactions in question, the only transfers at issue in this case involve the payment of well-documented funds. The extensive history and economic reality of the transfers from SJ to WWW, and from WWW to SJ, are straightforward

[3] The following Section 3(b) of the Receiver's Suggestions in Opposition to Blevins' Motion is largely identical to Section 2, pages 17-19 of the Receiver's Suggestions in Support of his Motion for Summary Judgment (Doc. 281).

and undisputed. On or about December 29, 2011, SJ made a large, initial cash contribution directly to WWW with a $440,000 payment. SAMF, ¶ 10. It subsequently increased its ownership interest with the purchase of an additional 4.55% previously held by Raizada Group on or about June 28, 2012. *Id*. In exchange for this influx of capital and subsequent payment, SJ received a 14.55% membership interest in WWW. SAMF, ¶¶ 11. As a member of WWW, SJ began receiving regular, monthly distributions—initially in the amount of $4,000 each month, which were then increased to $5,820 per month after increasing its ownership percentage in June 2012. SAMF, ¶ 8. These distributions continued until late 2014, when it received a final transfer of $116,400. *Id.*

SJ invested a total of $640,000 for its ownership interest in WWW, with $440,000 of those funds going directly to WWW, and only received a total of $274,260 in exchange for the value it provided. SAMF, ¶ 8. When looking at the substance of the financial transactions at issue, as noted in *Higgins*, this is far from a situation where funds were transferred from WWW to SJ without consideration. *Higgins*, 474 S.W.3d at 641. While intent to defraud is not necessary in establishing a constructive fraud claim, "the intent of the parties is relevant as it bears on the underlying question of whether reasonably equivalent value was exchanged." *Id.* (citation omitted). There is no evidence the investment by SJ in WWW, and the subsequent distributions made by WWW to SJ, were made for anything other legitimate business purposes. SAMF, ¶¶ 8-13 *and Higgins*, 474 S.W.3d at 641. There is no evidence any of these transfers were made with the specific purpose to avoid creditors. Furthermore, the final transfer was made on October 27, 2014, over three months prior to the filing of Blevins' Petition asserting her employment claim. SAMF, ¶¶ 8, 18. There is no evidence SJ, as a minority member of WWW, was even aware of Blevins or her employment claim at the time of any transfers from WWW.

Even considering the final transfer, SJ provided ***far more*** than reasonably equivalent value to WWW in exchange for the distributions it received from WWW. To establish a constructive fraud claim, Blevins bears the burden of proving that WWW made the transfers at issue "without receiving a reasonably equivalent value in exchange." R.S. Mo. §§ 428.024.1 *and* 428.029.1. Rather than being able to meet such a burden, the evidence demonstrates quite the opposite. For these reasons, the Court should deny summary judgment as to all of Blevins' constructive fraud claims under R.S. Mo. §§ 428.024.1(2) and 428.029.1.

**c. Blevins' cannot establish her asserted "badges of fraud," or, at the very least, there are substantial, genuine issues of material fact regarding the asserted badges**

As explained above, Blevins' actual fraud claims under R.S. Mo. § 428.024.1(1) were extinguished long before she filed her Exceptions and Claims setting forth her cause of action. *See* Section 3(a), *supra.* Even if the Court rules that her claims have not been extinguished, there are still significant, material fact questions surrounding her actual fraud claims, especially considering Blevins' high burden for proving such claims, and the lack of evidence regarding WWW's actual fraudulent intent in making the transfers to SJ.

The burden of proof in establishing fraudulent intent is on the creditor, and fraud must be shown by clear and convincing evidence. *Higgins,* 474 S.W.3d at 636. Fraud is never presumed when the transaction may be fairly reconciled with honesty. *Bueneman v. Zykan*, 52 S.W.3d 49, 54 (Mo. App. E.D. 2001) (citations omitted). "[I]ntent to defraud is often difficult to prove by direct evidence," so courts look to a number of "badges of fraud" to infer intent to defraud from factual circumstances. *Higgins*, 474 S.W.3d at 636. Blevins has asserted that six of those badges were present in the transfers from WWW to SJ. *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 5. "For a court to find that the transfer was fraudulent, ***several*** badges of fraud" must

be established by the claimant through clear and convincing evidence. *Higgins*, 474 S.W.3d at 637 (emphasis added) (citing *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389 (Mo. App. E.D. 2010)).

Blevins cites several bankruptcy cases for the proposition that once she establishes several badges of fraud, she is entitled to a presumption of fraudulent intent, and that the "burden then shifts to the transferee to prove some legitimate supervening purpose for the transfers at issue." *See* Blevins' Motion, pg. 12 (citing *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015) *and Cole v. Strauss*, Case No. 2:13-cv-04200-NKL, 2014 WL 4055787 (W.D. Mo. Aug. 15, 2014)). These cases do not feature any analysis of fraudulent transfer claims under MUFTA, however, and instead examine the elements and standards for claims pursuant to 11 U.S.C. § 548 of the U.S. Bankruptcy Code. *See Ritchie Capital Mgmt.*, 779 F.3d at 861-62 (referencing actions by a bankruptcy trustee under 11 U.S.C. § 548) *and Cole*, 2014 WL 4055787 at *4-6 (analyzing bankruptcy trustee's claim under 11 U.S.C. § 548). Each case relies upon an earlier Eighth Circuit bankruptcy case interpreting 11 U.S.C. § 548 as providing bankruptcy trustees with a presumption of fraud and a burden-shifting framework in claims made under that section of the Bankruptcy Code. *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998) (citing *In re Acequia*, 34 F.3d 800, 806 (9th Cir. 1994)).

There is no support for such a presumption or burden-shifting under MUFTA. *See Bueneman*, 52 S.W.3d at 54. Instead, as with other fraud claims under Missouri law, Missouri courts place the considerable burden of proof squarely upon the claimant. *Higgins*, 474 S.W.3d at 636. MUFTA does not provide for presumptions of fraud or shifts of the burden of proof to the party defending such claims. *Id.* As explained below, numerous fact questions exist regarding the presence of actual fraud on the part of WWW in making, or in SJ in receiving, the transfers at

issue. The badges of fraud as asserted by Blevins in her Exceptions and Claims are addressed in turn below. *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 5.

**¶ 5(2)(a) – "That the transfer(s) were to insiders;"**

MUFTA provides a specific and detailed definition of an "insider" for purposes of the statute. R.S. Mo. § 428.009(7). It divides the definition by type of "debtor," and lists types of insiders for debtors who are individuals, corporations, or partnerships, but does not specify that limited liability companies or their members are to be considered insiders. *Id.* Instead, the definition provides that "[a]n affiliate" of the debtor is an insider, which seems intended to address limited liability company members, or owners of other types of business entities that are not corporations or partnerships. R.S. Mo. § 428.009(7)(d).

An affiliate is defined, in relevant part, as "[a] person who directly or indirectly owns, controls, or holds with power to vote, ***twenty percent or more*** of the outstanding voting securities of the debtor . . . ." R.S. Mo. § 428.009(1)(a) (emphasis added). A "person" includes an "organization . . . or any other legal or commercial entity," which would encompass limited liability companies. R.S. Mo. § 428.009(9). Therefore, under MUFTA a limited liability company owning less than 20% of a debtor limited liability company, such as the situation in this case with SJ owning only a 14.55% membership interest in WWW, does not render it an "insider."

This definition is in line with fraudulent transfer case law involving alleged "insiders" and limited liability companies. In many of those cases, the individual making the allegedly fraudulent transfer(s) is also the sole member of the transferee LLC. *See, e.g.*, *Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1317-18 (M.D. Fla. 2015). Unlike the present case, other cases where courts have found LLCs or their members to be "insiders" involve situations of common ownership. *See, e.g.*, *Dearborn Street Bldg. Assocs., LLC v. D & T Land Holdings, LLC*, Case No.

1:07-cv-1056, 2009 WL 3011245 (W.D. Mich. Sept. 16, 2009). In *Dearborn*, the court found there was a "close relationship" between the transferor and transferee, and the transaction was "tantamount to an 'insider' deal," because the same individual "was a member of both LLC's, owning 50% of the transferor and 100% of the transferee . . . ." *Id.* at *9. In this case, SJ was not only a minority member of the transferor LLC, there is no evidence the individuals who owned SJ had common ownership with WWW or its other members, Raizada Group and Spectrum Business Ventures. SAMF, ¶¶ 10-11, 13. SJ is not an "insider" under MUFTA, or for purposes of Blevins' claims.

In support of this badge of fraud, Blevins once again ignores the plain language of MUFTA to instead cite bankruptcy case law decided under different law and circumstances. *See* Blevins' Motion, pg. 13. These cases do not examine MUFTA's definition of an "insider," but focus only on the markedly different definition used by bankruptcy courts in determining trustees' claims under the Bankruptcy Code's preferential transfer and nondischargeability sections. *See In re Longview Aluminum*, 657 F.3d 507, 509-10 (7th Cir. 2011) (analyzing definition of "insider" pursuant to 11 U.S.C. § 101(31)(B) and bankruptcy case law in the context of claims under 11 U.S.C. § 547) *and The Bur-Cam Group, LLC v. Pearson (In re Pearson)*, Case No. 1:10-bk-00946MDF, 2010 WL 3956762, *2-3 (Bankr. M.D. Pa. Oct. 7, 2010) (analyzing definition of "insider" pursuant to 11 U.S.C. § 101(31)(B) and Pennsylvania state law in the context of claims under 11 U.S.C. § 523). Neither these cases nor Blevins' incongruous allegation that SJ "was part of a criminal enterprise controlled by Defendant Moseley who was a Member of SJ" have any relevance to SJ's status an alleged "insider" under MUFTA. *See* Blevins' Motion, pg. 13. She has not established that SJ was an insider under MUFTA, and has therefore failed to show this badge of fraud.

**¶ 5(2)(b) – "That the transfer(s) were concealed;"**

Although asserted in her Exceptions, Blevins does not even attempt to argue the concealment badge of fraud in her Motion. *See* Blevins' Motion, pg. 13-15. MUFTA provides that another badge was whether "[t]he transfer or obligation was disclosed or concealed." R.S. Mo. § 428.024.2. It does not explain to whom an alleged transfer must or should be disclosed, or what actions or inactions constitute "concealment" for purposes of the statute. *Id.* A review of UFTA case law does not provide much assistance.

Blevins cannot establish that WWW had any obligation or duty to disclose to her its transfers to SJ. Blevins does not allege she was even employed at WWW while the overwhelming majority of the transfers were made, and she did not file her employment lawsuit until over three months after the final transfer had been made. SAMF, ¶¶ 8, 18. As noted above, Blevins did not bother to make timely and appropriate use of the considerable discovery tools at her disposal to learn of any such transfers. *See* Section 3(a), *supra.* Had the transfers been made after her lawsuit was filed, or if WWW had refused to provide evidence of the transfers during discovery in the case, Blevins might have been able to show WWW had willfully concealed the transfers to SJ from her. Given the undisputed facts and timeline at issue, however, there is no evidence WWW made any effort to hide any information regarding the transfers to its minority member.

**¶ 5(2)(c) – "That before the transfer(s) were made WWW had committed torts against Blevins and had been threatened with suit;"**

The alleged "commission of torts" is not a badge of fraud under R.S. Mo. § 428.024.2. That section states one factor is "***[b]efore*** the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." R.S. Mo. § 428.024.2(4) (emphasis added). Blevins argues that a threat of suit was "apparent" simply because she claims the underlying acts allegedly took place from December 2013 to May 2014. *See* Blevins' Motion, pg. 13. Blevins alleges in her

Exceptions that her underlying employment claim against WWW did not arise until "approximately January 2014." *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 4. While Blevins might believe January 2014 is when Scott Fodor's allegedly improper behavior toward her began, there is no evidence that Blevins threatened WWW with a lawsuit at or around that time.

"In order to initiate a claim under Title VII a party must timely file a charge of discrimination with the [Equal Employment Opportunity Commission] and receive a right-to-sue letter." *Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000) (citation omitted). Thus, receipt of a right-to-sue letter from the EEOC (or the Missouri Commission on Human Rights) was a statutory prerequisite before Blevins could have sued WWW under Title VII, and was a necessary step before she could credibly threaten a lawsuit. *Id.*

Blevins filed her charge of discrimination with the EEOC on May 5, 2014. SAMF, ¶ 3. On January 5, 2015, the EEOC's investigator informed her that its "review of the evidence in [her] file indicates that it is insufficient to conclude that an EEOC statute was violated." SAMF, ¶ 16. The letter further advised her that if the EEOC did not hear from her or she did not provide "any additional information that would change its determination . . . , then [her] charge will be closed" and she would be issued a right to sue notice. *Id.* The EEOC issued a right-to-sue letter on January 19, 2015. SAMF, ¶ 17. Only after receiving that letter could Blevins have actually filed suit against WWW. *See Stuart*, 217 F.3d at 630. Furthermore, there is no evidence that Blevins made, or that WWW received, any demands or threats of an employment lawsuit prior to the actual filing of her Petition on February 12, 2015. SAMF, ¶ 18.

Neither Blevins nor her counsel threatened WWW with a lawsuit until her Petition was actually filed. Even if such a threat had been made, it was not credible unless and until Blevins

had filed her charge of discrimination and received her right-to-sue letter. None of these events were, or could have been, ***before*** the final transfer from WWW to SJ on October 27, 2014. SAMF, ¶ 8. At a minimum, even if the Court were to construe Blevins' charge of discrimination a "threat of suit," WWW would not have been notified of that "threat of suit" until sometime after May 5, 2014. This badge of fraud was not present in this case until after the final transfer at issue was made, or at the earliest sometime after May 5, 2014.

**¶ 5(2)(d) – "That the transfers to SJ Partners and the Raizada Group, LLC. [sic] were transfer(s) of substantially all of WWW's assets;"**

Blevins has the burden of proving each asserted badge of fraud by clear and convincing evidence, and in so doing demonstrating to the Court that there is no genuine issue of material facts on the issue. *Higgins*, 474 S.W.3d at 636 *and* Blevins' Motion, pg. 4. To meet this burden, Blevins simply asks the Court to "deduce" that WWW, which is not even a Receivership Defendant, transferred "substantially all" of its assets to SJ by reviewing the Receiver's monthly reports and "surmising" such a conclusion based on an SJ balance sheet generated from outdated QuickBooks data. *See* Blevins' Motion, pg. 13 *and* SAMF, ¶ 14. Despite Blevins' invitation to the Court to draw a tenuous and unsupported conclusion based on almost no evidence, there are substantial fact questions surrounding WWW's assets, financial condition, and the impact on WWW of one of more of the transfers from WWW to SJ.

There is no evidence the small, regular monthly transfers from WWW to SJ "were transfer(s) of substantially all of WWW's assets." SAMF, ¶ 8 *and* R.S. Mo. § 428.024.2(5). Blevins cites no authority for the proposition that she can somehow reach back and aggregate all, or some other amount, of these monthly transfers over a particular period of time and declare that amount to be "substantially all of WWW's assets." Even if her argument only pertains to the final transfer on October 27, 2014, she has not provided the Court with any evidence relevant to this

alleged badge of fraud, much less undisputed evidence that would entitle her to judgment as a matter of law. WWW is the judgment debtor in this case. The required financial analysis pertains to WWW's financial condition, and the actual impact on WWW of the final transfer from WWW to SJ that she seeks to recover. SJ's purported financial condition almost seven months prior to the time of the final transfer has no bearing on the issue at hand. SAMF, ¶ 14.

Blevins has introduced no evidence of WWW's financial condition at the time of any of the transfers. There is no evidence that any one transfer, or series of transfers to the extent Blevins attempts to aggregate them, constituted "substantially all" of WWW's assets. As in the present case, the judgment creditor in *Target Corp. v. Amerson*, 326 Ga. App. 734, 755 S.E.2d 333 (Ga. Ct. App. 2014) attempted to establish the judgment debtors had transferred substantially all of their assets as a badge of fraud under Georgia's version of the UFTA. Like Blevins, the judgment creditor in *Amerson* presented no evidence regarding the judgment debtors' "remaining assets or income subject to collection" by the creditor. *Id.* at 740. The court held he was therefore unable to establish whether or not the transfer at issue "represented 'substantially all the [debtors'] assets.'" *Id.*

Likewise, Blevins cannot demonstrate this alleged badge of fraud in her own case. She has presented the Court with no evidence regarding WWW's financial condition. There is no evidence in the record regarding WWW's "remaining assets or income" at the time of, or after, any of the transfers at issue. Blevins bears the burden of establishing this badge of fraud, and she has provided no information about WWW's finances, business activities, or income in attempting to do so.

It should also be noted that Blevins claims "the transfers to SJ Partners ***and*** the Raizada Group, LLC were transfer(s) of substantially all of WWW's assets." *See* Garnishor's Exceptions

and Claims (Doc. 259), pg. 2, ¶ 5(2)(d) (emphasis added). The Raizada Group, LLC is not a party to Blevins' MUFTA claims in this case, but it held the majority interest in WWW of [redacted] to SJ's 14.55% as of 2014. SAMF, ¶¶ 11, 13. While the final transfer to SJ might have been larger than the typical monthly distributions it received, there is no evidence ***that*** particular transfer to SJ constituted "substantially all" of WWW's assets. In fact, given the ownership percentages, it is highly unlikely that SJ would have been entitled to, and did in fact receive, a transfer of "substantially all" of WWW's assets. For all these reasons, Blevins has not met her burden of establishing this purported badge of fraud.

**¶ 5(2)(e) – "That WWW absconded;"**

Blevins asserts this badge of fraud in her Exceptions, but appears to have abandoned it as she does not mention it in her Motion. *See* Blevins' Motion, pgs. 13-15. The absence of any arguments about it might be because it simply does not apply, or exist, in this case. MUFTA does not explain what a court should consider when determining whether a debtor "absconded," particularly when the debtor is a business entity. Black's Law Dictionary defines the term as "[t]o depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process," or "[t]o leave a place, usu. hurriedly, with another's money or property." Black's Law Dict., "abscond" (11th ed. 2019). In light of this definition, it is difficult to conceptualize a limited liability company, or in turn, its limited liability company members, being able to "abscond." As explained above, WWW had not been sued or threatened with suit, even by the time of its final transfer to SJ. If WWW was not aware of Blevins' claim, it could not have believed it was somehow "departing" with "money or property" to which Blevins might claim she was entitled.

To the extent Blevins really refers to Amit Raizada or any other individuals associated with the judgment debtor, there is no evidence they "departed secretly or suddenly." That Mr. Raizada

might have resided outside the Kansas City area is not evidence that he "absconded." SAMF, ¶ 24. Blevins was able to serve WWW after her Petition was filed, as she demonstrated to Judge Hauber in the Johnson County Case. SAMF, ¶¶ 20, 26. Furthermore, the funds Blevins seeks to recover are those held and retained by SJ, not WWW. In this case, there is no evidence the transferee of the funds she seeks to recover ever attempted to "abscond" with such funds. Blevins cannot establish that any entity "absconded" as an alleged badge of fraud in this case.

**¶ 5(2)(f) – "That WWW became insolvent as a result of its transfers."**

Once again, rather than actually presenting evidence of WWW's financial condition in an attempt to demonstrate its insolvency, Blevins asks the Court to "deduce as a matter of logical reasoning" such a factual conclusion based on the Receiver's reports. *See* Blevins' Motion, pg. 15. This suggestion does not satisfy her burden of proof. She also advances a completely unsupported insinuation that because one of SJ's members had a "criminal conviction," SJ had a motive to "siphon what funds they could from WWW." *Id.* Blevins offers no explanation as to whether SJ or either of its members had the authority or ability to "siphon" any funds from WWW, how such a scheme was conducted, or what effect this "siphoning" allegedly had on WWW's solvency. It is difficult to understand how an invitation to draw conclusions from SJ's old, unverified balance sheet information, and a speculative theory regarding the motives of SJ's members, demonstrate anything about WWW's financial condition.

Blevins has provided no evidence that any of the alleged transfers from WWW to SJ rendered WWW insolvent. MUFTA provides two general guidelines for the determination of "insolvency" under the statute:

1. A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.

2. A debtor who is generally not paying his debts as they become due is presumed to be insolvent.

R.S. Mo. § 428.014.

There is no evidence that the sum of WWW's debts was greater than all of WWW's assets at any time, much less as a result of a particular transfer or transfers. There is no evidence of an accurate, reliable, and fair valuation of WWW's assets or an assessment of its debts. There is also no evidence that WWW was generally not paying its debts as they came due, whether as a result of one or more transfer(s) or otherwise. When a record is "devoid of any evidence as to the value of the [debtor's] debts or assets, or of any evidence that the [debtor was] not paying [its] debts as they became due," a judgment creditor "cannot make a showing of insolvency within the meaning of the statute." *Amerson*, 326 Ga. App. at 340 (analyzing judgment debtors' insolvency under Georgia's version of the UFTA).

Even if there were any such evidence, Blevins cannot establish that such insolvency was due to any transfers to SJ. In fact, given the reality that SJ still provided more in value to WWW than WWW eventually transferred back to SJ, it is likely that the transfers from SJ to WWW helped to prevent or delay any alleged insolvency on the part of WWW, if it ever actually became "insolvent" at all. SAMF, ¶ 8-12.

**d. SJ took the transfers in good faith and for a reasonably equivalent value, rendering the transfers not voidable under R.S. Mo. § 428.044.1**

Blevins cannot meet her high burden of proof with regard to her actual fraud claim. In addition to requiring claimants to demonstrate several badges of fraud by clear and convincing evidence, MUFTA provides transferees such as SJ with an affirmative defense to actual fraud claims: "A transfer or obligation is not voidable under [R.S. Mo. § 428.024.1(1)] against a person who took in good faith and for a reasonably equivalent value . . . ." R.S. Mo. § 428.044.1.

Although not asserted in her Exceptions, Blevins argues a lack of reasonably equivalent value as another badge of fraud. *See* Garnishor's Exceptions and Claims (Doc. 259), pg. 2, ¶ 5. As demonstrated in Section 3(b) above, SJ actually provided value to WWW far in excess of the value of the transfers it received. SAMF, ¶ 8-12. There is no evidence that SJ engaged in any of its transactions with WWW with anything other than good faith. All of the badges of fraud asserted by Blevins relate only to WWW, not SJ. There is no evidence SJ was even aware of Blevins or her employment by WWW, much less any potential claim on her part, purported "threats" of a suit, or even the fact that she eventually filed her employment lawsuit. Blevins' employment case was filed months after SJ had become a Receivership Defendant in this case. SAMF, ¶¶ 4-6, 18. The evidence only points to SJ making a good faith, arm's length investment deal to become a minority member of WWW, and its receipt of funds transfers from WWW was part of a legitimate business transaction. Its good faith, albeit a poor investment decision, is also exhibited by the evidence it invested $640,000 for its ownership interest in the company—only to receive a total of $274,260 in return. SAMF, ¶ 8-12.

Blevins cannot meet her considerable burden of proof in making an actual fraud claim against SJ. Even if the Court believes she might be able to demonstrate sufficient badges of fraud, which it should not, Blevins still should be prevented from avoiding any transfers under an actual fraud theory due to SJ's good faith and excessive value in taking the transfers it received from WWW. The Could should deny summary judgment for Blevins with regard to her actual fraud claims.

## CONCLUSION

Blevins asks the Court to enter summary judgment allowing her to directly garnish the assets of a third party, SJ Partners, LLC, that is not her judgment debtor. In so doing, she would

require the Court to ignore the substantial requirements and burden of proof for either piercing WWW's corporate veil, or showing one or more of the transfers to SJ was fraudulent under MUFTA. The Court cannot permit Blevins to simply skip over well-established Missouri law, procedure, and fundamental due process to garnish an entity that did not employ Blevins, was never a party to her underlying lawsuit, and is not a judgment debtor.

Blevins' unjust enrichment claim is belatedly and improperly asserted through her Motion, time-barred by the applicable limitations period, and fails on its substantive grounds, as well. She cannot establish how it would be unjust for SJ to have received and retain its appropriate share of distributions based on its ownership percentage in WWW. To the extent the Court even permits Blevins to assert it for the first time through her Motion, it should be disposed of based on any or all of these grounds.

Her fraudulent transfer claims have been completely extinguished. She cannot establish constructive fraud as to any of the transfers because SJ transferred far more value into WWW than it ever received in return. Ultimately, despite having the burden to prove her claims by clear and convincing evidence, she has provided the Court with almost no facts to support her fraudulent transfer claims. Rather than obtain the necessary evidence and demonstrate she is entitled to judgment as a matter of law, she asks the Court to reach "logical conclusions" based on little more than suppositions about SJ and its members, outdated, unreliable, and irrelevant financial information about SJ, and no information regarding WWW's financial condition.

Based on the foregoing arguments and authorities, the Receiver respectfully requests that the Court enter an order denying Blevins' Motion for Summary Judgment in its entirety.

Dated: February 21, 2020

Respectfully submitted,

GEIGER PRELL
BUSINESS DISPUTES

By *<u>/s/ Benjamin Prell</u>*

Matthew T. Geiger MO # 50071
Benjamin R. Prell MO # 55654
10000 College Blvd., Suite 100
Overland Park, Kansas 66210
913-661-2430 (telephone)
913-362-6729 (facsimile)
mgeiger@geigerprell.com
bprell@geigerprell.com

ATTORNEYS FOR THE RECEIVER

## CERTIFICATE OF SERVICE

I certify that I electronically filed these Redacted Suggestions in Opposition to Kendal Blevins' Motion for Summary Judgment with the Clerk of the Court on February 21, 2020 using the CM/ECF system, which will serve a copy by electronic means on all counsel of record.

*/s/ Benjamin Prell*
Attorney for the Receiver