**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-cv-00789-SRB |
| | ) | |
| RICHARD F. MOSELEY, SR., et al., | ) | |
| | ) | |
| Defendant. | ) | |

**RECEIVER'S REPLY SUGGESTIONS IN SUPPORT OF HIS**
**MOTION FOR SUMMARY JUDGMENT**

Thomas W. McNamara, in his capacity as Court-appointed Receiver (the "Receiver"), respectfully submits the following Reply Suggestions in Support of his Motion for Summary Judgment (Doc. 280) (the "Motion"). For the following reasons, the Receiver's Motion should be granted.

**INTRODUCTION**

All of Kendal Blevins ("Blevins") claims under Missouri's Uniform Fraudulent Transfer Act ("MUFTA") have been extinguished. She waited almost three years after being informed of the possibility of fraudulent transfers to use methods of discovery that were readily available to her, and failed to satisfy her duty under Missouri law to inquire about the allegedly fraudulent transfers. In an attempt to save her claims, she argues the stay imposed in this receivership operated to "equitably toll" MUFTA's strict time periods extinguishing her claims. Blevins, however, has previously argued that the stay did not apply to her or her MUFTA claims. Furthermore, the stay did not prevent her from pursuing discovery and collection methods against Worldwide Wireless, LLC, the sole judgment debtor in her state employment case. Finally, no

case law provides support for a stay like the one entered in this case operating to toll any state's UFTA extinguishment provision. The overwhelming weight of authority holds UFTA's extinguishment section is a statute of repose that cannot be tolled. The Court should find that her MUFTA claims have been extinguished in their entirety.

With regard to Blevins' constructive fraud claims, SJ tendered a $440,000 check made payable to "Worldwide Wireless, LLC" for its initial membership interest. It only received $274,260 in distributions after purchasing and increasing its ownership in WWW. Blevins' argument that the subsequent endorsement of that check over to The Raizada Group does not mean SJ did not provide more than reasonably equivalent value for the transfers from WWW—such an action is simply evidence of a separate, potentially fraudulent, transfer from WWW to The Raizada Group. There is no evidence SJ ever intended the funds to go anywhere other than WWW. Blevins has also not provided the Court with any evidence regarding WWW's financial condition that might show a factual dispute regarding the additional elements of her constructive fraud claim. Even if the Court finds Blevins' constructive fraud claims have not been extinguished, which it should, the Receiver is entitled to summary judgment on such claims.

## RESPONSE TO BLEVINS' STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

28. Uncontroverted.

29. Controverted as speculative and unsupported by the evidence cited. Blevins' does not cite to anything other than Exhibit KB-1 (WWW's annual report filed for the 2014 tax year) to support her asserted fact, and does not explain what she refers to as the "Public Records about WWW." As an example, such "Public Records" would have included the Annual Report filed for WWW for the following 2015 tax year, which lists The Raizada Group, LP and SJ Partners, LLC

as members who own 5% or more of capital. *See* Kansas Secretary of State Limited Liability Company Annual Report for Worldwide Wireless, LLC (Exhibit R19).

30. Controverted. Blevins' attorneys recognized the possibility of fraudulent transfers at least as early as August 6, 2015. *See* 8-6-15 email from Ensz to Blevins (Exhibit R3), KB-E&J-0000921. Her attorneys undertook efforts to investigate WWW and Amit Raizada and provided Blevins with a summary of those efforts no later than April 1, 2016. *See* 4-1-16 letter and memorandum from Ensz to Blevins (Exhibit R4), KB-E&J-00009 – 11. WWW, as the sole judgment debtor, was the only entity whose assets could have been garnished to satisfy Blevins' Default Judgment. Blevins has been aware there "might be other viable" defendants for fraudulent transfer claims for over four and a half years.

## ARGUMENT AND AUTHORITIES

### 1. <u>Blevins has argued the stay in this case did not apply to her claims, and there is no support for the proposition it "equitably tolled" any MUFTA claims</u>

Blevins argues that the stay imposed by the Court on October 3, 2014 and the "doctrine of equitable tolling" operate to make her MUFTA claims timely. *See* Blevins' Suggestions in Opposition (Doc. 293), pgs. 17-18. In making such an argument, Blevins ignores her own statements and arguments that the stay did not apply to her claims, her delay in investigating her claims and moving to lift the stay, and the overwhelming weight of authority finding MUFTA's extinguishment provision is a statute of repose that is not subject to equitable tolling.

On March 28, 2019, Blevins filed her Motion for Clarification of Stay Order (Doc. 223), seeking a ruling from the Court that she was not subject to the stay. She pointed to the language of the stay included in the Stipulated Preliminary Injunction with Asset Freeze (Doc. 40), noting that the stay only prevented ***Defendants*** to the receivership action from taking legal action. *See* Blevins' Motion for Clarification (Doc. 223), pgs. 3-4. Blevins declared that since she "is not a

party to or a Defendant in this action, she does not believe that the Stay Order is applicable to her . . . ." *Id.* Blevins cannot argue that the stay only operated to prevent Receivership Defendants from taking legal action and was inapplicable to her and her claims on one hand, but now assert her MUFTA claims were "equitably tolled" by the stay on the other.

This Court agreed with her position, noting that she "has taken the most cautious, conservative route by seeking the Court's leave to file an action in this Court." *See* Order (Doc. 246), pg. 2. The Court noted "[t]he more aggressive path would be just to file an action in a different jurisdiction." *Id.* Blevins did not believe she was subject to the stay, and nothing prevented her from seeking validation for her position long before she filed her Motion for Clarification. Regardless of her position or actions with regard to the stay, nothing prevented her from utilizing the means of discovery and collection at her disposal through the Johnson County Case to continue investigating and pursuing her claims against WWW, and thereby learning more about any allegedly fraudulent transfers and their transferees. She had been aware of these possibilities since at least August 6, 2015, and had obtained her Default Judgment against WWW on April 27, 2016. *See* Blevins' Suggestions in Opposition, pgs. 11, 13, ¶¶ 16, 21. The stay in this litigation had absolutely no effect on her ability, or duty, to inquire into WWW and its affairs through the Johnson County Case.

Even if she had believed the stay prevented her from taking action on her MUFTA claims, there is no authority that a stay like the one entered in this case could "equitably toll" the explicit extinguishment provision of the Uniform Fraudulent Transfer Act. Contrary to Blevins' characterization of the extinguishment section as a "statute of limitation," courts have repeatedly construed the UFTA provision as a statute of repose that is not subject to the principle of tolling. *See, e.g., LaRosa v. LaRosa*, 482 Fed. App'x 750 (4th Cir. 2012) (interpreting West Virginia's

UFTA extinguishment provision as a statute of repose); *U.S. v. Bacon*, 82 F.3d 822, 824 (9th Cir. 1996) (analyzing Washington's version of the UFTA); *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, Case No. 1:11-CV-0843-RWS, 2014 WL 3955642 (N.D. Ga. Aug. 12, 2014) (finding tolling did not apply to Georgia's UFTA extinguishment provision); *Donell v. Keppers*, 835 F. Supp. 2d 871, 878 (S.D. Cal. 2011) (California UFTA's extinguishment provision "cannot be tolled or otherwise extended"); *Klein v. Capitol One Fin. Corp.*, Case No. 4:10-CV-00629-EJL, 2011 WL 3270438, *7-8 (D. Idaho July 29, 2011) (construing same section in Idaho's UFTA as statute of repose not subject to equitable tolling); *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1130 (D. Ariz. 2006) (claim that has been extinguished under Arizona's UFTA "cannot be tolled"); *and State v. Tucci*, 206 A.3d 891, 896 (Me. 2019) (Maine UFTA's extinguishment provision "supersedes the application of a tolling rule based in equity").

Blevins cites *In re Werner*, 386 B.R. 684 (Bankr. N.D. Ill. 2008) in asserting that the general stay order in his case, which she claimed did not apply to her, somehow equitably tolled her MUFTA claims. *See* Blevins' Suggestions in Opposition (Doc. 293), pgs. 17-18 *and* Blevins' Motion for Clarification (Doc. 223), pg. 3-4. The debtor in *Werner* obtained a stay of enforcement regarding a ***particular judgment*** entered against him while he appealed the judgment. *In re Werner*, 386 B.R. at 688-89. Unlike this case, the stay in *Werner* ***specifically prohibited the judgment creditor*** from taking action, including any discovery that might have been necessary for the filing of a fraudulent transfer action, in an effort to enforce the judgment. *Id.* at 690-91. The court found support for the notion that a stay of discovery worked to prohibit the commencement of a fraudulent transfer action, and the time limitation for any such claims was tolled as a result. *Id.* at 692-93.

In light of these circumstances, *Werner* offers little support for the idea that equitable tolling applies to UFTA's extinguishment statute, especially given the terms of the stay in this case. A more recent Illinois bankruptcy court decision noted that a tolling exception to a statute of repose applying to attorney malpractice actions, as discussed by the court in *Werner*, "is not likely to be extended to the UFTA's statute of repose." *In re Sandburg Mall Realty Mgmt. LLC*, 563 B.R. 875, 898 (Bankr. C.D. Ill. 2017). The court recognized the "clear trend among state and federal courts construing" UFTA's extinguishment section as a statute of repose, and predicted the Illinois Supreme Court would not apply any tolling principles to the provision. *Id.* (citations omitted). The clear language of the section, and the overwhelming weight of authority interpreting it, establish that equitable tolling simply does not apply to UFTA's extinguishment section.

In direct contrast to *Werner*, the stay in this case presented no restrictions on Blevins' ability to conduct discovery as to WWW, its financial condition, and any potentially fraudulent transfers. She had obtained her Default Judgment and had considerable means of discovery and collection readily available in the Johnson County Case. She chose not to utilize those methods until over two years after she got her Default Judgment, and almost three years after her prior counsel informed her of their suspicions about possible fraudulent transfers. *See* Blevins' Suggestions in Opposition, pgs. 11-13, ¶¶ 16. 18, 21. Even when she learned of the Receivership and the stay in this case, she believed it did not apply to her or her MUFTA claims. It did not toll her MUFTA claims.

Blevins also asserts that, even if equitable tolling did not apply, her actual fraud claims were not extinguished because of the one-year discovery exception provided by R.S. Mo. § 428.049(1). *See* Blevins' Suggestions in Opposition (Doc. 293), pg. 18. She effectively argues that because Amit Raizada neglected to list SJ Partners, LLC as a 5% or more member on WWW's

2014 Annual Report with the Kansas Secretary of State, she was absolved of any responsibility prior to October 2018 to discover any facts surrounding WWW, its members, its financial condition, and any transfers it might have made. *Id.*

Blevins has consistently ignored her duty under Missouri law to inquire about the facts surrounding her suspected fraud claims, and instead cites an isolated example of WWW's alleged "concealment" of SJ's minority ownership in a single public record. *See Graf v. Michaels*, 900 S.W.2d 659, 661 (Mo. App. S.D. 1995) (holding plaintiffs with fraud claims under Missouri law have "the duty to make inquiry to discover the facts surrounding the fraud"). She admits she made no effort to engage in the discovery methods at her disposal for years. *See* Blevins' Suggestions in Opposition (Doc. 293), pgs. 11-14, ¶¶ 11-14, 23-24. Missouri law is clear that plaintiffs with such means of discovery will be deemed to have known of the alleged fraud so as to begin the running of the discovery exception. *Graf*, 900 S.W.2d at 661 (citation omitted). Blevins highlights the fact that WWW responded to her efforts and produced documents once she finally made the effort to discover such information. *See* Blevins' Suggestions in Opposition, pg. 18. WWW's response demonstrates these facts "could have reasonably been discovered by the claimant" well within the one-year discovery exception had she been responsible enough to do so. R.S. Mo. § 428.049(1). There is nothing about the stay, Missouri law, or any other circumstances that prevented her from undertaking such efforts long ago, and she has allowed her claims to be extinguished under MUFTA as a result.

**2. <u>Blevins asks the Court to simply ignore the reality of SJ's relationship with WWW, and a separate, potentially fraudulent, transfer from WWW to The Raizada Group</u>**

Blevins attempts to graft an additional requirement on the "reasonably equivalent value" analysis that the value given by a transferee must have been contemporaneous enough to the receipt of any subsequent transfers. *See* Blevins' Suggestions in Opposition (Doc. 293), pgs. 18-20. She

would have the Court ignore the reality of SJ's relationship with WWW because the investment it made that entitled it to distributions from WWW was a "past event" that the Court cannot consider. *Id.* at pg. 19. The analysis of "reasonably equivalent value in exchange" under MUFTA, however, does not hinge on the particular timing of the value given and any resulting transfers. *See Higgins v. Ferrari*, 474 S.W.3d 630, 640-41 (Mo. App. W.D. 2015).

As her sole support for her additional "contemporaneous transfer" requirement under MUFTA, Blevins cites two bankruptcy cases examining claims under 11 U.S.C. § 548 for the purported general principle "that value is to be measured at the time of the transaction at issue and not with reference to past events." *Id.* at pg. 19 (citing *Schnelling v. Crawford (In re James River Coal Co.),* 360 B.R. 139, 166 (Bankr. E.D. Va. 2007) *and O'Donnell v. Royal Bus. Group, Inc. (In re Oxford Homes, Inc.*), 180 B.R. 1, 11 (Bankr. D. Me. 1995)). The *Oxford Homes* case, which the court relied upon in *James River*, featured a leverage buyout ("LBO") situation, which occurs with "the acquisition of a company (target corporation) in which a substantial portion of the purchase price paid for the stock of the target corporation is borrowed and where the loan is secured by the target corporation's assets." *In re Oxford Homes*, 180 B.R. at 8 (citations omitted). The court summarized the circular nature of an LBO:

> The Oxford LBO bears the hallmarks of a classic fraudulent transfer. Oxford parted with substantial funds. It received nothing in return. Immediately after the transfer, it ran out of cash and, within seven months, filed for bankruptcy protection.

*Id.* at 9.

There is no evidence the relationship between WWW and SJ could be considered a leveraged buyout, or a remotely similar transaction. Contrary to Blevins' assertion, SJ's initial investment in WWW was not a loan or other convoluted transaction, but was instead $440,000 provided directly to WWW. *See* Receiver's Suggestions in Support (Doc. 281), pg. 5, ¶ 9, Exhibit

R8, REC 0001. Unlike *Oxford Homes*, there is no evidence these funds were loaned to SJ, or that any such loan was secured by WWW's assets. *See In re Oxford Homes*, 180 B.R. at 8.

Blevins also argues that WWW did not receive any of SJ's invested funds, claiming instead that they went to The Raizada Group. SJ tendered Check No. 1002, drawn on its Missouri Bank account in the amount of $440,000 and paid to the order of "Worldwide Wireless, LLC", on or about December 29, 2011. *See* Receiver's Suggestions in Support (Doc. 281), pg. 5, ¶ 9, Exhibit R8, REC 0001. Blevins' suspects that Amit Raizada (or someone on his behalf) took the check, endorsed it on behalf of WWW, then signed it over to The Raizada Group and deposited it in an account for The Raizada Group. *See* Blevins' Suggestions in Opposition (Doc. 293), pgs. 19-20. Even if such facts were actually established, they would only constitute evidence of a separate, and potentially fraudulent, transfer from WWW to The Raizada Group. *See Gass v. Friedman (In re Martec Corp.)*, 168 B.R. 427, 432 (S.D. Fla. 1994) (finding subsequent endorsement of tendered check by president of debtor over to president's new company was a fraudulent transfer). To the extent the position of creditors might have been undermined, it was done through the subsequent actions of Amit Raizada and/or The Raizada Group, not SJ's action in tendering the original check to WWW. *Higgins*, 474 S.W.3d at 641.

While intent to defraud is not necessary in establishing a constructive fraud claim, "the intent of the parties is relevant as it bears on the underlying question of whether reasonably equivalent value was exchanged." *Id.* (citation omitted). That Amit Raizada, or someone else on The Raizada Group's behalf, might have taken that check and endorsed it over to The Raizada Group rather than depositing it directly into WWW's account is relevant to The Raizada Group's intent, not SJ's. There is no evidence that SJ ever intended those funds to go to any entity besides WWW.

SJ's delivery of its $440,000 check to WWW for its initial investment in the company demonstrates that SJ received its $274,260 in distributions from WWW in exchange for ***more*** than reasonably equivalent value. The Raizada Group's later endorsement of that check over to itself demonstrates the possibility of a subsequent, separate fraudulent transfer from WWW to The Raizada Group. It does not change SJ's intent or the reality of its investment in WWW and receipt of distributions. *See Higgins*, 474 S.W.3d at 642. SJ provided more than reasonably equivalent value to WWW in exchange for the distributions it received, and Blevins has refused to determine, or even investigate, the circumstances surrounding The Raizada Group's subsequent treatment of those funds.

**3. The "badges of fraud" under R.S. Mo. § 428.024.2 simply do not apply to constructive fraud claims under R.S. Mo. § 428.024.1(2)**

Blevins conflates the badges of fraud applicable to actual fraud claims with the elements of constructive fraud. The badges of fraud under R.S. Mo. § 428.024.2 only apply to actual fraud claims under R.S. Mo. § 428.024.1(1). *See* R.S. Mo. § 428.024. Her constructive fraud claims require her to prove that WWW made the transfers without receiving a reasonably equivalent value from SJ in exchange, ***and*** that WWW:

> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (b) Intended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due.

R.S. Mo. § 428.024.1(2) (emphasis added). Blevins has provided the Court with no evidence regarding either of these last two elements.

Blevins alleged six of the badges of fraud in her Exceptions and Claims, and the Receiver dispelled each of them in turn in his Suggestions in Opposition to Blevins' Motion for Summary Judgment. *See* Receiver's Redacted Suggestions in Opposition (Doc. 289), pgs. 34-44. The only

"badge of fraud" asserted by Blevins in her Opposition applicable to her constructive fraud claim is her completely unsupported assertion that "[t]he transfers out of WWW left WWW without assets to satisfy the Blevins' claim [sic] that arose as early as 2013." *See* Blevins' Suggestions in Opposition (Doc. 293), pg. 22. Blevins has provided the Court with no evidence regarding WWW's financial condition at any time, much less sufficient evidence to raise an issue of material fact as to (a) whether its assets "were unreasonably small" as a result of any transfer(s), or (b) whether WWW intended to or believed it "would incur debts beyond [its] ability to pay as they became due." *See* R.S. Mo. § 428.024.1(2). Blevins has failed to demonstrate a material factual dispute as to her constructive fraud claims under R.S. Mo. § 428.024.1(2), and the Court should enter summary judgment for the Receiver on those claims.

**CONCLUSION**

The extinguishment periods provided by MUFTA cannot be "equitably tolled." The very basis for Blevins' alleged tolling is a stay order she argued never applied to her claims in the first place. Regardless, it had no effect on her ability to attempt to collect her Default Judgment from WWW and discover any information she needed regarding WWW's allegedly fraudulent transfers to The Raizada Group, SJ, or any other parties. Blevins had the requisite knowledge, means, and legal duty to discover the facts surrounding her claims against WWW and SJ years ago. She failed to pursue those means and her claims have been extinguished.

SJ tendered a check for $440,000 to WWW and only received a total of $274,260 in distributions after its investment. If Amit Raizada took that check, endorsed it on behalf of WWW, and then signed it over to The Raizada Group, such an action does not mean SJ did not intend, and did not provide, more than reasonably equivalent value to WWW. It means Blevins should have had even more reason to pursue discovery and claims as to The Raizada Group and Amit Raizada.

She cannot establish a factual dispute as to the value provided by SJ, and the Court should enter summary judgment as to her constructive fraud claims.

Based on the foregoing arguments and authorities and his Suggestions in Support, the Receiver respectfully requests that the Court grants its Motion for Summary Judgment and dismiss Blevins' fraudulent transfer claims against SJ Partners, LLC in their entirety.

Dated: March 13, 2020

Respectfully submitted,

GEIGER PRELL
BUSINESS DISPUTES

By *_/s/ Benjamin Prell_*

Matthew T. Geiger MO # 50071
Benjamin R. Prell MO # 55654
10000 College Blvd., Suite 100
Overland Park, Kansas 66210
913-661-2430 (telephone)
913-362-6729 (facsimile)
mgeiger@geigerprell.com
bprell@geigerprell.com

ATTORNEYS FOR THE RECEIVER

**CERTIFICATE OF SERVICE**

I certify that I electronically filed these Reply Suggestions in Support of the Receiver's Motion for Summary Judgment with the Clerk of the Court on March 13, 2020 using the CM/ECF system, which will serve a copy by electronic means on all counsel of record.

*_/s/ Benjamin Prell_*
Attorney for the Receiver